IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 23-cv-1149

JOHN DOE

    Plaintiff,

v.

JANE ROE

    Defendant.

## MOTION TO RESTRICT PARTY NAMES

Plaintiff John Doe, ("Plaintiff") by his attorney, Laura A. Menninger of Haddon, Morgan & Foreman, and pursuant to D.C. Colo. L. Civ. R. 7.2, hereby seeks authorization to file a Complaint and a Summons in the above-captioned matter with pseudonymous names for himself and Defendant Jane Roe ("Defendant"), restricting access of their true identities to the Court and parties. Plaintiff requests a Level 1 restriction under the rule. He requests that the anonymity of the parties apply to all further proceedings in this case.

The parties' identities should not be made publicly available due to the highly personal, sexually explicit, and defamatory nature of the allegations contained in the Complaint, a copy of which is attached, as Exhibit "A".

Plaintiff is justifiably concerned about acts of reprisal that could further prevent him from proceeding with his college and future endeavors and inflict additional and severe academic, financial and mental harm. Plaintiff further informs the Court that he anticipates later moving for a Protective Order requesting that Defendant be prohibited from ever disclosing his identity.

## THE PARTIES

1. Plaintiff John Doe is an individual citizen of, and residing in, the state of California. During the relevant time period, he was an undergraduate student living in Colorado.

2. Upon information and belief, Defendant Jane Roe is an individual residing in New Orleans, Louisiana, as an undergraduate student who otherwise is a citizen of New York.

## STATEMENT OF FACTS

3. During the events described in the Plaintiff's Complaint, (Exhibit "A") Plaintiff was a student at Front Range Community College ("Front Range") in Boulder, Colorado, intending to transfer to the University of Colorado ("CU"), Boulder.

4. Plaintiff and Defendant previously dated from November 2020 until October 2021 while they were students at Tulane University ("Tulane") in New Orleans, Louisiana.

5. During their relationship, they lived together in an apartment shared with other undergraduate students, and Plaintiff and Defendant had consensual sexual contact.

6. After the couple's October 2021 breakup, Defendant complained that Plaintiff repeatedly contacted her, but Defendant made no allegations of rape or sexual assault as to Plaintiff. Defendant did, however, report to Tulane that another person sexually assaulted her.

7. Plaintiff and Defendant received mutual no-contact orders from Tulane on November 16, 2021.

8. Through her attorney, Defendant obtained a civil protection order against Plaintiff from Orleans Parish. In seeking that order, Defendant checked various boxes related to stalking, harassment, shoving and threats. Although there was a place for her to do so, Defendant did not allege that Plaintiff had "sexually abused" her.

9. An 18-paragraph addendum by Defendant and her attorney included no claim that Plaintiff had "sexually assaulted" or "raped" Defendant.

10. Defendant affirmed under penalty of perjury that the allegations in her petition were "true and correct to the best of [her] knowledge, information and belief."

11. Thereafter, the parties entered into two voluntary agreements. First, Defendant agreed to a Consent Order and Injunction in the Civil District Court in the Parish of Orleans, Louisiana. As a part of that Consent Order, Defendant agreed that the No Contact Order issued by Tulane University of November 16, 2021 "is made permanent." Plaintiff agreed to withdraw from Tulane and not re-enroll until after Defendant was no longer a student there.

12. Second, the parties agreed to engage in the informal resolution process at Tulane. At Defendant's demand, Plaintiff agreed to voluntarily withdraw from Tulane and cease contact with Defendant.

13. Since then, Plaintiff fully complied with all of these stipulated agreements. He withdrew from Tulane, left Louisiana, and refrained from any contact with Defendant.

14. For the avoidance of doubt, Plaintiff John Doe <u>never sexually assaulted</u> Defendant Jane Roe. Likewise, he was <u>never "kicked out of</u>" Tulane.

15. After a period of reflection, Plaintiff enrolled in August 2022 at Front Range, more than 1,300 miles away from Defendant at Tulane and nearly 1,800 miles away from her home in New York.

16. Plaintiff began his course of studies and sought out new male friends, rushing a fraternity at CU. He paid his dues to the fraternity.

17. Just days after his official fraternity bid was received, in late September 2022, Defendant caused a number of false, defamatory and malicious texts to be sent to the fraternity social chairs.

18. In particular, Defendant told the fraternity's social chairs:

    a. "I dated [John Doe] for almost a year and I can say confidently that he is not the kind of person belongs in a frat.  He is an emotionally unstable, aggressive person who made my life a living hell for months."

    b. John Doe "transferred to Boulder because he got kicked out of Tulane."

    c. "During our relationship, [John Doe] sexually assaulted and raped me countless times.  I was basically not allowed to say no to sex, if I said no he would ask and ask and ask until I eventually gave in and said yes just to make him stop asking, even though I did not want to have sex."

    d. "He forced me to have sex with him multiple times a day, everyday, and would guilt me and say there was something mentally wrong with me if I tried to say no."

    e. "I have woken up to him straddling me and masturbating on top of my sleeping body multiple times.  He once told me he preferred when I got drunk because that was the only time I was horny for him which was not true, I never wanted to have sex with him, it was just easier for him to have sex with me because I couldn't put up as much of a fight."

    f. "He forced me into very uncomfortable sexual situations, forcing me to do painful things which I objected to, but he did anyway, despite my clearly saying no multiple times."

      g.    "He was abusive in every way, he has been physically violent with me, threatened my friends and family and attempted to cut me off from every person in my life."

      h.    "I was forced to get a restraining order against him through the state of Louisiana.  That is why he is at Boulder, not through his own choice, but because he was kicked out of Tulane for rape and stalking."

      i.    "If he would do those things to me, he will do them to another girl.  He is a threat to every woman's safety on that campus."

      j.    "I am not seeking to ruin his life….I believe people can change and I hope that one day he does, but given how recent these events are, I do not believe that it is safe for the girls on campus to be around someone like him."

19.    Defendant's malicious and false claims had their desired effect:  Plaintiff was terminated immediately from the fraternity based entirely on Defendant's text messages.

20.    The college friends he had made over the previous six weeks "cancelled him" – disallowing him from spending any time with them or at the fraternity.  They refused to return his deposit paid a couple of days earlier.

21.    The fraternity members then spread Defendant's malicious lies to numerous other students on campus, who proceeded to bully and ostracize Plaintiff.

22.    After multiple attempts to clear his name on campus, Plaintiff was forced to withdraw and return home to California.

23.    Defendant has since returned to the Tulane campus and published her false and malicious lies to numerous students there.  Defendant has done so maliciously with an intent to

cause emotional and psychological harm to Plaintiff, especially by targeting his friends at Tulane.

24. Plaintiff has attempted to enroll in college and to move on with his life, however, Defendant's publication of false and defamatory statements has made it exceedingly difficult emotionally to do so.

25. In light of these facts, Plaintiff should be permitted to file the Complaint using pseudonyms. The accompanying Complaint reveals his and Defendant's identities under seal.

## ARGUMENT

26. It is within the district court's discretion to determine whether a plaintiff should be permitted to proceed under a pseudonym. *M.M. v. Zavaras*, 139 F.3d 798, 802-03 (10th Cir. 1998) (concluding denial of party's request to proceed under fictitious name was not an abuse of discretion where plaintiff's claim involved use of public funds and public had valid interest in funds' use).

27. In exercising informed discretion, courts weigh the parties' interest in privacy against the public's interest in access to open court proceedings. *Patton v. Entercom Kansas City, LLC*, No. CIV.A. 13-2186-KHV, 2013 WL 3524157, at *1 (D. Kan. July 11, 2013) (citing *Zavaras*, 139 F.3d at 803).

28. Plaintiff should be permitted to proceed using pseudonyms given the highly sensitive, sexually graphic and personal nature of this litigation. Plaintiff does not merely contend that the revelation of his name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues involved with being falsely linked to an instance of alleged sexual misconduct.

29. Numerous courts have permitted plaintiffs alleging parallel claims against colleges and universities to proceed anonymously. *See, e.g.*, *Doe v. Univ. of Denver*, 1 F.4th 822 (10th Cir. 2021); *Doe v. Univ. of Denver*, 2022 COA 57, *cert. granted in part*, No. 22SC499, 2023 WL 2372557 (Colo. Mar. 6, 2023); *see also Doe v. Univ. of Massachusetts-Amherst*, No. CV 14-30143-MGM, 2015 WL 4306521, (D. Mass. July 14, 2015); *Doe v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-CV-682-T-30EAJ, 2015 WL 3453753, (M.D. Fla. May 29, 2015); *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 764 (E.D. Tenn. 2009). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of sexual misconduct. This case does not feature a university defendant so the public's interest in the university's conduct does not weigh against Plaintiff's request.

30. In addition, Plaintiff should be permitted to proceed using pseudonyms because this matter seeks to remedy exactly the kind of reputational harm that revelation of his identity would exacerbate. Plaintiff's prevailing in this litigation would be undermined if he were required to reveal his identity, allowing the public, through simple online searching, to associate him with these egregious and unfounded lies of sexual misconduct, further damaging his future educational and career endeavors, the very harms which he seeks to remedy in this action.

31. Defendant will not be prejudiced in any way by proceeding anonymously. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendant[] will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, Defendant is

already aware of Plaintiff's identity.  Defendant will thus have an unobstructed opportunity to conduct discovery, present defenses, and litigate this matter.  Plaintiff is not trying to shield his identity from Defendant.  Rather, Plaintiff is "trying to protect [his] identit[y] from interested persons not associated with [Defendant].  Therefore, the fact that [Defendant] may know [his] name[] does not argue against sealing the unredacted complaint." *Doe v. Boulder Valley Sch. Dist. No. RE-2*, No. 11-CV-02107-PAB, 2011 WL 3820781, at *2 (D. Colo. Aug. 30, 2011).

32.  Plaintiff respectfully submits there is nothing about his status that would heighten any public interest beyond the normal public interest in any judicial proceedings.  Anonymizing the parties is a minimal restriction on the public's knowledge because what is alleged to have occurred remains accessible.  There is not a strong public interest in knowing these parties' identities.

33.  Because proceeding anonymously will protect Plaintiff from significant prejudice without hindering Defendant or a legitimate public interest, this Court should grant Plaintiff's request to proceed using pseudonyms.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff John Doe requests that his Motion to Restrict Access Pursuant to D.C. Colo. L. Civ. R 7.2 be granted ordering a Level 1 Restriction on all filings pertaining to this case, including the Complaint and Summons.

Dated this 5th day of May 2023.

Respectfully submitted,


s/ *Laura A. Menninger*
Laura A. Menninger, No. 34444
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone:303.831.7364
Fax: 303.832.2628
Email:  LMenninger@hmflaw.com

*Attorney for John Doe*

**CERTIFICATE OF SERVICE**

I hereby certify that on 5/5/2023, I electronically filed the foregoing *Motion to Restrict Party Names* the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

s/ *Savanna Benninger*
Legal Assistant