IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 23-cv-1149

JOHN DOE,

    Plaintiff,

v.

JANE ROE,

    Defendant.

**Objection to Motion to Restrict Party Names**

### Introduction

John Doe is seeking to impose potentially massive damages on Jane Roe for accusing him of sexual assault. Compl. 8. If he succeeds, she may well be financially ruined because of her speech—speech that, if Doe is not correct, is true and therefore constitutionally protected.

Doe is of course entitled to do this, so long as he is able to prevail on his libel claim. But he is not entitled to do this under the cloak of secrecy. Like other libel plaintiffs, and like most other civil plaintiffs and defendants, as well as criminal defendants, he must litigate this case in his own name.

Volokh, as a member of the public, is entitled to objection to Doe's Motion for Leave to Restrict. D.C.COLO.LCivR 7.2(d). Volokh often writes about libel lawsuits in which a plaintiff has alleged that a defendant had falsely accused plaintiff of sexual misconduct.[1] He also writes about

---

[1] *See, e.g.*, Eugene Volokh, *#TheyLied (or #TheyWereNegligent) Libel Claim Based on Allegations of Rape of Third Party Student Can Proceed*, Volokh Conspiracy (Reason) (July 20, 2022), https://reason.com/volokh/2022/07/20/theylied-or-theywerenegligent-libel-claim-based-on-alle-

1

attempts to get injunctions aimed at restricting parties from talking about their adversaries—an attempt that appears likely in this case, given plaintiff's statement "that he anticipates later moving for a Protective Order requesting that Defendant be prohibited from ever disclosing his identity." Mot. to Restrict 1. *See, e.g.*, Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1376 (2022); Eugene Volokh, *Media Outlets Forbidden from Identifying Recently Released Drug Cartel Ex-Boss as Plaintiff in Privacy Lawsuit*, Volokh Conspiracy (Reason) (Oct. 12, 2021), https://perma.cc/SS4V-AJAJ; Eugene Volokh, *Court Orders #MeToo Plaintiff Not to Mention Defendant's Name in Public*, Volokh Conspiracy (Reason) (Oct. 11, 2021), https://perma.cc/8Q86-G5PH.

To be able to write about this case, he wants to be able to have the same sort of broad access that journalists, academics, and ordinary citizens routinely have to most libel cases—the ability to identify the parties, to determine what other cases they have been involved in (e.g., the civil protection order discussed at Mot. to Restrict 2, 3), and to otherwise research the parties to a case. *See, e.g.*, Volokh, *supra*, 73 Hastings L.J. at 1370-71 nn.74-75, 1373 & nn.86-90 (discussing the results

---

gations-of-rape-of-third-party-student-can-proceed/; Eugene Volokh, *#TheyLied Malicious Prosecution / Abuse of Process / Emotional Distress Claim Can Go Forward*, Volokh Conspiracy (Reason) (Nov. 14, 2022), https://reason.com/volokh/2022/11/14/theylied-malicious-prosecution-abuse-of-process-emotional-distress-claim-can-go-forward/; Eugene Volokh, *Important Case About #TheyLied Libel Lawsuits Against Federal Employees*, Volokh Conspiracy (Reason) (July 26, 2022), https://reason.com/volokh/2022/07/26/important-case-about-theylied-libel-lawsuits-against-federal-employees/; Eugene Volokh, *#TheyLied Lawsuit Over Allegedly False Stalking/Assault/Etc. Report to Police Can Go Forward*, Volokh Conspiracy (Reason) (May 19, 2022), https://reason.com/volokh/2022/05/19/theylied-lawsuit-over-allegedly-false-stalking-assault-etc-report-to-police-can-go-forward/; Eugene Volokh, *Court Reinstates $550K Award in #TheyLied Lawsuit*, Volokh Conspiracy (Reason) (Apr. 13, 2021), https://reason.com/volokh/2021/03/13/court-reinstates-550k-theylied-award/.

of his research into *Doe v. Wang*, No. 1:20-cv-02765, 2022 WL 89172 (D. Colo. Nov. 8, 2021), which had been depseudonymized by Magistrate Judge Michael Hegarty).

## Argument

I. **Parties must generally litigate in their own names, and this is especially important in cases implicating defendants' free speech rights**

"'[T]he public has an important interest in access to legal proceedings,'" including in the names of the parties. *Doe v. Merck & Co., Inc.*, No. 11-cv-02680-RBJ-KLM, 2012 WL 555520, *3 (D. Colo. Feb. 17, 2012) (quoting *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000)). "'Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials.'" *Id.* (quoting *Femedeer*); *Roe v. Heil*, No. 11-cv-01983-WJM-KLM, 2011 WL 3924962, *4 (D. Colo. Sept. 7, 2011) (quoting *Femedeer*). "The public has a legitimate interest in knowing the facts of this case and the parties involved." *Doe v. Wang*, No. 20-CV-02765-RMR-MEH, 2022 WL 89172, *5 (D. Colo. Jan. 6, 2022) (so holding in a libel case).

"We begin with the fundamental presupposition that it is the responsibility of judges to avoid secrecy, in camera hearings and the concealment of the judicial process from public view . . . . Courts are public institutions which exist for the public to serve the public interest. Even a superficial recognition of our judicial history compels one to recognize that secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (so reasoning in rejecting an attempt to proceed pseudonymously), *aff'd*, 139 F.3d 798 (10th Cir. 1998); *Doe v. Regents of Univ. of Colorado*, 603 F. Supp. 3d 1014, 1019 (D. Colo. 2022) (same).

Public access, including the norm of litigating under parties' own names, "allows the citizenry to monitor the functioning of our courts, thereby [e]nsuring quality, honesty and respect for our legal system." *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022) (citation omitted). "Pseudonymous

3

litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants, . . . and disclosing the parties' identities furthers openness of judicial proceedings . . . ." *Doe v. Public Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) (citations omitted). The right of public access "protects the public's ability to oversee and monitor the workings" of the legal system and "promotes the institutional integrity of the Judicial Branch." *Id.* This is important to "[p]ublic confidence in the judiciary," which "cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Id.* (cleaned up).

And public monitoring and confidence are particularly important when a person is trying to use the legal system to impose liability on another person for making an accusation that, if true, would be constitutionally protected and valuable speech. Jane Roe's speech may be punished if it is knowingly or recklessly false—but the public is entitled to supervise the proceedings so it can be confident that the correct result has been reached. Indeed, the need for "[p]ublic confidence in the judiciary," *Public Citizen*, 749 F.3d at 263, is especially strong when someone is being sued over this sort of #MeToo claim. If a decision against Jane Roe is rendered "behind closed doors and then announced in conclusive terms to the public," with details about the plaintiff "sealed from public view," that would understandably increase public skepticism about the fairness of the process. *Id*.

**II.     Risk to reputation does not suffice to justify pseudonymity**

To be sure, in some "exceptional circumstances," *Femedeer*, 227 F.3d at 1246, pseudonymity is allowed. The most common example is litigation involving minors. *See, e.g. Doe v. Woodard*,

4

No. 15-cv-01165-KLM, 2015 WL 13848981, *2 (D. Colo. July 20, 2015). But this is not one such exceptional case.

In particular, Appellant's concerns "that revelation of his identity would exacerbate" "reputational harm" and "damag[e] his future educational and career endeavors" are far from "exceptional." Indeed, libel cases, including ones brought over allegations of sexual assault, are routinely litigated under the parties' own names. *See, e.g.*, *Hockenberry v. United States*, 42 F.4th 1164 (10th Cir. 2022); *Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir. 2022); *Ralston v. Garabedian*, No. CV 19-1539, 2022 WL 3704097 (E.D. Pa. Aug. 26, 2022).

This is so because pseudonymity cannot be justified by "economic or professional concerns." *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989); *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249 n.10 (10th Cir. 2017). "That a plaintiff may suffer embarrassment or economic harm is not enough" to justify pseudonymity. *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). That is equally true when the economic harm stems from "potential negative scrutiny from future employers." *D.E. v. Doe*, 834 F.3d 723, 728 (6th Cir. 2016). And courts have expressly applied this reasoning to libel cases:

> The allegations in defamation cases will very frequently involve statements that, if taken to be true, could embarrass plaintiffs or cause them reputation harm. This does not come close to justifying anonymity, however, and plaintiffs regularly litigate defamation claims on the public docket even when the allegedly defamatory statement could, if taken as true, cause them some reputation harm.

*Doe v. Bogan*, 542 F. Supp. 3d 19, 23 (D.D.C. 2021); *see also Doe v. Wash. Post Co.*, No. 1:19-cv-00477-UNA, 2019 WL 2336597, at *1 (D.D.C. Feb. 26, 2019) (rejecting pseudonymity in a libel case); *Roe v. Does 1-11*, No. 20-CV-3788-MKB, 2020 WL 6152174, at *6 (E.D.N.Y. Oct 14,

5

2020) (likewise); *P.D. & Assocs. v. Richardson*, 64 Misc. 3d 763, 767 (N.Y. Sup. Ct. 2019) (likewise). "[I]f courts were to allow mutual pseudonymity in sexual assault-related libel or slander suits, then 'whole areas of the law could become difficult for the media and the public to monitor, outside the constrained accounts of the facts offered up by judges and lawyers.'" *Doe v. Doe*, No. 5:22-CV-500-D-BM, 2023 WL 115563, *4 (E.D.N.C. Jan. 5, 2023) (quoting Volokh, *supra*, 73 Hastings L.J. at 1383), *appeal pending*.

Indeed, many kinds of civil suits and criminal prosecutions (even beyond defamation lawsuits) routinely expose litigants to the likelihood of reputational harm. For example, civil defendants accused of sexual assault typically proceed publicly, even though identifying themselves as someone merely accused could be professionally ruinous. Yet,

> The supposed harm from being the target of a lawsuit alleging sexual abuse is not enough to justify shrouding this case with a veil of secrecy. . . . In nearly all civil and criminal litigation filed in the United States Courts, one party asserts that the allegations leveled against it by another party are patently false, and the result of the litigation may quickly prove that. However, if the purported falsity of the complaint's allegations were sufficient to seal an entire case, then the law would recognize a presumption to seal instead of a presumption of openness.

*Chalmers v. Martin*, No. 21-cv-02468-NRN, 2021 WL 6136179, *2-*3 (D. Colo. Dec. 28, 2021) (cleaned up).

> [I]t is difficult to see how defendant [who is being sued for alleged child molestation] has set himself apart from any individual who may be named as a defendant in a civil suit for damages. It seems to this court that any doctor sued for medical malpractice, any lawyer sued for legal malpractice, or any individual sued for sexual molestation can assert that the plaintiff's allegations will cause harm to his reputation, embarrassment and stress among his family members, and damage to his business as a result of the litigation. Any such doctor or lawyer can also assert that the plaintiff's act of naming him as a defendant is a bad-faith tactic to induce settlement and reap economic gain at the defendant's expense through baseless allegations.

*Doe v. Doe*, 668 N.E.2d 1160, 1167 (Ill. Ct. App. 1996). Despite the "reputational interest at stake" in such cases, defendants are "not entitled to the rare dispensation of anonymity against the world." *Roe v. Doe*, 2019 WL 2058669, *5-*6 (D.D.C. May 7, 2019). Just as defendants seeking to rebut claims of sexual abuse are not pseudonymized, so plaintiffs seeking to rebut such claims should not be either.

Similarly, criminal defendants accused of possessing child pornography would surely prefer to proceed pseudonymously in order to minimize the reputational harm posed by such a serious accusation. Yet they too must proceed publicly, for if the nature of child pornography and child sexual abuse offenses "could qualify [a defendant] for the use of a pseudonym, there would be no principled basis for denying pseudonymity to any defendant convicted of a similar sex offense." *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008). Indeed, most defendants accused of any crime would likely prefer to proceed pseudonymously, given the stigma associated with criminal proceedings. Still, the legal system demands that they defend themselves publicly and openly.

Plaintiffs in employment disputes may also often want to protect their professional reputation and employment prospects by using pseudonyms. For example, an employment discrimination plaintiff who alleges she was improperly fired might prefer to sue pseudonymously, fearing that suing publicly (1) would identify her as a litigious employee, and (2) would air the employer's purported (but, she argues, pretextual) reasons for firing her. Yet despite these quite rational fears, employment discrimination plaintiffs are still required to proceed publicly. *See Southern Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (denying pseudonymity to plaintiffs, partly because they "face no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and

7

not anonymously, have filed sex discrimination suits against large law firm") (quoted favorably in *Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 417 (10th Cir. 1982)).

> No doubt lots of parties would prefer to keep their disputes private. For example, a plaintiff alleging he was discriminated against by his employer when his employment was terminated typically will have to disclose the employer's reason for terminating the plaintiff's employment—a reason that the plaintiff disputes is the real reason and which is often embarrassing or even damaging to his or her reputation. But there is no suggestion that such a plaintiff may proceed under a pseudonym to protect his or her reputation.

*Doe v. Milwaukee Cty.*, No. 18-cv-503, 2018 WL 3458985, at *1 (E.D. Wisc. July 18, 2018). "At bottom, Plaintiff wants what most employment-discrimination plaintiffs would like: to sue their former employer without future employers knowing about it. But while that desire is understandable, our system of dispute resolution does not allow it." *Doe v. Fedcap Rehab. Servs., Inc.*, No. 17-cv-8220-JPO, 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018).

To be sure, on occasion a few courts have allowed pseudonymity in situations where other courts would have denied it. Thus, for instance, *B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689 (E.D. Va. Mar. 10, 2020), *aff'd as to other matters*, 17 F.4th 485 (4th Cir. 2021), allowed pseudonymity not just for the sexual assault plaintiff (such plaintiffs are often allowed to proceed pseudonymously) but also for the defendants, because "the Court does find it fundamentally unfair that Plaintiff be permitted to use a pseudonym while the Defendants lie vulnerable to publicly litigating such a sensitive matter," *id.* at *26. Likewise, another District Court case allowed pseudonymity for a defendant accused of sexual assault as well as for his accuser, on the grounds that,

> if the plaintiff is allowed to proceed anonymously, as both parties agree she should be able to do, it would serve the interests of justice for the defendant to be able to do so as well, so that the parties are on equal footing as they litigate their respective claims and defenses.

*Doe v. Doe*, No. 20-cv-5329, 2020 WL 6900002, at *4 (E.D.N.Y. Nov. 24, 2020).

But the analyses in *B.R.* and *Doe v. Doe* seem questionable. *B.R.*, for instance allowed pseudonymity even for the government body defendant, a school board (which is now identified in the case as "F.C.S.B."), as well as some school officials who were accused of failing to properly protect the plaintiff from sexual assault; that seems hard to justify. And *Doe v. Doe* relied in part on the fact that the defendant there was "a partner of a well-known law firm in New York and an adjunct law school instructor," 2020 WL 6900002, at *3—yet surely any reputational protection offered defendants must be the same regardless of their professional position. *See Stern v. Stern*, 66 N.J. 340, 349 (1975) (overturning trial court's grant of pseudonymity in a divorce case, where the husband was found guilty of adultery, on the grounds that "we do not approve . . . [of] throw[ing] the protective cloak of anonymity over a successful and well-known member of the bar, as would appear to have been the case here"). In any event, the dominant view is contrary to the one expressed in those few cases.

Doe argues that pseudonymity is necessary "to remedy exactly the kind of reputational harm that revelation of his identity would exacerbate." Mot. to Restrict 7. But, as in *Doe v. Wang*, Doe is not suing "to prevent the disclosure of [his] private matter; rather, [he] is suing for compensation for a disclosure that has already happened." 2022 WL 89172, at *5 (cleaned up). Thus, this is not a case "where the injury litigated against would be incurred as a result of the disclosure of the [Doe's] identity," *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006), because he "seeks monetary compensation for a disclosure that has already occurred," *id.* at 812 n.2; *see also Doe v. F.B.I.*, 218 F.R.D. 256, 260 (D. Colo. 2003). (To the extent that plaintiff anticipates getting a gag order on Roe in this litigation, Mot. to Restrict 1, that is not

9

a remedy that is expressly sought in the Complaint, Compl. 8; and in any event, the request for such a presumptively unconstitutional prior restraint would itself merit close public scrutiny.)

### III. Unlike Title IX cases in which plaintiffs are granted pseudonymity when suing universities, Appellant's suit is a simple defamation case against a private individual

One of the rare situations in which courts have usually determined that there were "exceptional circumstances" justifying pseudonymity arises in Title IX cases, where plaintiffs sue a university for how it conducted a Title IX investigation. *See* Volokh, 73 Hastings L.J. at 1441-48 (collecting cases). Courts have generally concluded that "the confidentiality of a Title IX disciplinary proceeding may sometimes . . . furnish grounds for finding an exceptional case warranting pseudonymity." *Doe v. MIT*, 46 F.4th 61, 74 (1st Cir. 2022). This is because confidentiality is an "important aspect" of Congress's procedural requirements mandating that federally funded universities "adopt policies guaranteeing 'a prompt, fair, and impartial investigation and resolution' [of sexual assault claims] and giv[e] certain procedural rights to both 'the accuser and the accused.'" *Id*; *see also Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("[T]he accused colleges and universities recognize the highly personal and sensitive nature of these cases as well as the limited value of forcing plaintiffs to reveal identities when seeking to vindicate their federal rights."). And the remedy often sought—re-enrollment, or a clean academic record—is closely tied to the confidentiality concerns underlying Title IX proceedings. *See Doe v. MIT*, 46 F.4th at 74. Doe's specific examples of where pseudonymity has been granted involve such Title IX cases brought against universities. Mot. to Restrict 7.

But these concerns justifying pseudonymity in Title IX lawsuits do not extend to libel lawsuits, whether or not the lawsuit originates from a complaint brought by a classmate. While Congress

has set up a system for confidentiality in university proceedings, nothing within that system suggests a decision to provide pseudonymity to libel plaintiffs.

John Doe did not bring a lawsuit against a university. Instead, he sued his accuser based on her speech, and is indeed planning to seek an order further restraining her speech, Mot. to Restrict 1. That his lawsuit stems from the accuser's speech to a university does not make it any different from a lawsuit based on speech to the police, or to an employer, or on Twitter. John Doe is suing Jane Roe for defamation. He should have no greater rights than any other defamation plaintiff.

## Conclusion

John Doe should be treated like other libel plaintiffs are routinely treated, and like most other litigants are routinely treated: He should have to litigate this case in his own name.

That is the way to preserve the public's ability to supervise the judicial system when an accused is suing an accuser, seeking damages based on the accuser's speech. And it is the way to provide maximum public confidence that, if the accuser is indeed subjected to a massive damage award, this will have been done fairly and correctly.

Respectfully Submitted,

s/ Eugene Volokh
Pro se objector
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu
(Institutional affiliation listed for identification and address purposes only)

May 7, 2023

## Certificate of Service

I hereby certify that on May 7, 2023, I electronically filed this Objection with the Clerk of Court using the CM/ECF system, which will send notification of such filing to John Doe's counsel. Because Jane Roe has not yet appeared in this case, and is identified only by pseudonym, I am unable to serve her.

s/ Eugene Volokh

Pro se