**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 23-cv-1149

JOHN DOE

    Plaintiff,

v.

JANE ROE

    Defendant.

---

**REPLY IN SUPPORT OF MOTION TO RESTRICT PARTY NAMES**

---

Plaintiff John Doe, by his attorney, Laura A. Menninger of Haddon, Morgan & Foreman, files this reply in support of his Motion to Restrict Party Names under D.C. Colo. L. Civ. R. 7.2 [Dkt. #2] and asks the Court to grant his Motion over the inapposite objections raised by Eugene Volokh, the *pro se* objector [Dkt. #7], and Defendant Jane Roe [Dkt. #17].

Exceptional circumstances—such as presented in this case—warrant anonymity in judicial proceedings. *See Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). As Defendant concedes (Def. Resp. at 3), the Tenth Circuit has identified such "exceptional circumstances" to include "matters of a highly sensitive and personal nature" and cases where there is either a "real danger of physical harm" or "where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Id.* (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)). Contrary to Defendant and Mr. Volokh's contentions, each of these circumstances is presented here. Accordingly, anonymity should be ordered.

I.  **EXCEPTIONAL CIRCUMSTANCES WARRANT PROTECTION OF THE PARTIES' IDENTITIES.**

   A.  **The parties' past consensual intimate relationship and false allegations of sexual assault constitute "extremely sensitive matters of a personal nature."**

Defendant does not meaningfully dispute that the subject matter at issue involves extremely sensitive and personal facts.  (*See, e.g.*, Complt. ¶ 29 (detailing patently false statements such as "I have woken up to him straddling me and masturbating on top of my sleeping body multiple times," "I never wanted to have sex with him," and he "forc[ed] me to do painful things")); (Def. Resp. at 1 (Defendant referring to herself—falsely—as "the victim of his sexual abuse")) and (Def. Resp. at 7 (defendant "will allege that she was sexually assaulted in her counterclaims" (emphasis omitted))).  No doubt, more private facts are to come in future pleadings.

"Sexual misconduct, including assault, certainly falls under the category of matters of highly sensitive and personal nature." *Doe v. Wang*, No. 20-CV-02765-RMR-MEH, 2022 WL 89172, at *4 (D. Colo. Jan. 6, 2022) (quotations omitted).  "Numerous district courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault." *Doe v. Doe*, No. 5:22-CV-500-D-BM, 2023 WL 115563, at *2 (E.D.N.C. Jan. 5, 2023), *appeal filed* (4th Cir. Jan. 18, 2023).

The natural corollary of this principle is that *false allegations* of "sexual misconduct" or "sexual assault," especially when made by a consenting adult who chose to live with her alleged "rapist" at the time, must be considered a "matter of highly sensitive and personal nature." *See, e.g.*, *A.B. v. C.D.*, No. 2:17-CV-5840(DRH)(AYS), 2018 WL 1935999, at *1-2 (E.D.N.Y. Apr. 24, 2018) (defamation case involved matters of highly sensitive and personal nature based on "allegations of sexual harassment and misconduct"); *Doe v. Purdue Univ.*, 321 F.R.D. 339, 342

(N.D. Ind. 2017) ("[T]his litigation requires the disclosure of information of the utmost intimacy, as demonstrated by the details set out in the Complaint, including … Plaintiff's and Jane Doe's sexual relationship, [and] Jane Doe's allegations of sexual misconduct."); *id.* at 343 (ordering "the parties use the pseudonym 'John Doe' for Plaintiff and the pseudonym 'Jane Doe' to refer to the female complainant . . . ."); *see Doe v. Purdue Univ.*, No. 4:18-CV-72 JVB, 2019 WL 4118659, at *1 (N.D. Ind. Aug. 28, 2019) ("Plaintiff shall be identified on the public docket as Jane Doe."); *see also Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1287960, at *3 (W.D. Va. Mar. 18, 2020) ("[A]busive dating relationships involve sensitive and highly personal facts that can invite harassment and ridicule").  "Plaintiff has been accused of sexual misconduct, the mere accusation of which, if disclosed, can invite harassment and ridicule."  *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016) (hereinafter "*George Mason*"); *id.* (explaining that "plaintiff's choice to engage in a BDSM relationship" did not warrant relief, "[r]ather, what justifies the use of pseudonyms here is plaintiff's status as an accused perpetrator of sexual misconduct—a rapist").

The fact that "Plaintiff does not claim to have been a minor during the events in question" (Def. Resp. at 4) is not dispositive; courts routinely grant anonymity to young adults, *see, e.g.*, *Doe v. Va. Polytechnic Inst., & State Univ.*, No. 7:21-CV-378, 2022 WL 972629, at *1 (W.D. Va. Mar. 30, 2022) (allowing pseudonym for graduate-student plaintiff who was "in his mid-twenties, as opposed to being underage" and concluding age factor was "neutral"); *Doe v. Doe*, 65 N.E.3d 33 (Mass. App. Ct. 2016) (unpublished), 2016 WL 7235165, at *1-2 (affirming denial of Bloomberg L.P.'s motion to modify impoundment order where the parties were nonpublic

figures and young college students); *see also George Mason*, 179 F. Supp. 3d at 594 (noting that when underlying events occurred Doe and Roe were legal adults but "just barely so").

The entire subject matter in this case will revolve around establishing that Defendant lied when she falsely claimed that she was forced to have sex every day over a year long relationship. That alone warrants anonymity.

### B. Plaintiff has identified actual and pervasive harm—to include physical manifestations of emotional harm—already caused by the re-publication of Defendant's falsehoods.

The Defendant attempts to minimize the harm her publication of falsehoods has caused John Doe. (Def. Resp. at 4) (Plaintiff only articulated mere "'concern[]' about potential acts of 'reprisal'"). The Complaint demonstrates otherwise. (Complt. ¶¶ 11, 14, 19-34.) Due to the Colorado and Louisiana spread of Defendant's lies, Plaintiff already has suffered severe emotional harm, including the *physical* and mental effects of bullying and harassment by fraternity members and others to whom they republished Defendant's false claims. (*Id.* ¶¶ 29-34.) Greater bullying and harassment are likely if Defendant's lies are spread nationwide through denial of this Motion and the inevitable public attention that will follow.

Given Defendant's lies included assertions of sexual assault and rape, "it is possible that plaintiff could be targeted for retaliatory *physical* or mental harm based on the accusations alone," *George Mason*, 179 F. Supp. 3d at 593 (emphasis added) (quotations omitted); *id.* (reiterating "the fact that accusations of this sort [sexual misconduct] inspire passionate responses"). Plaintiff here has not experienced physical harm, but as the *pro se* objector has observed in discussing reputational harm, although "it's possible that the lawsuit will draw no publicity, that it will not lead to a written decision, and that no-one will search . . . there is no

4

way of predicting this up front," and "courts can't just proceed non-pseudonymously until there is evidence that the case has indeed caused harm," Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1421 (2022).

This reasoning applies with greater force when it comes to physical harm, made more likely by the attention the *pro se* objector seeks to draw to this case, *see George Mason*, 179 F. Supp. 3d at 593 & n.19 (citing writings of *pro se* objector to note case drew "significant media attention," including some "vitriolic" responses "which [was] not particularly surprising given the highly-charged nature of the accusations"). Plaintiff should not have to wait for physical harm to occur for this Court to allow anonymity here.

### C. Proceeding without pseudonyms exacerbates the injuries complained of because Defendant's lies about Plaintiff concern intimate and intensely stigmatizing, private matters.

Likewise, Plaintiff's claims of defamation, intrusion on seclusion, and unreasonable disclosure of private facts make this is the kind of case "where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Femedeer*, 227 F.3d at 1246 (quotations omitted).

Colorado law recognizes separate torts, and damages, for the claims of "public disclosure of private facts, which concerns the communication or publication to third parties of information or activities which a person has held private" and "intrusion upon seclusion, which focuses on the manner in which information that a person has kept private has been obtained." *See Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1065 (Colo. App. 1998), *cert. denied*, (Colo. Mar. 1, 1999). The elements of "unreasonable disclosure of private facts" include "(1) the fact disclosed was private in nature; (2) the disclosure was made to the public; (3) the disclosure was one which

would be highly offensive to a reasonable person; (4) the disclosed fact was not of legitimate concern to the public; and (5) the one who disclosed the fact did so with reckless disregard of the private nature of the fact disclosed." *Id.*; (Complt. ¶¶ 40-43).

The injuries litigated against in the Second and Third Causes of Action are not just the defamatory spread of Defendant's lies, they also involve the very real injury to Plaintiff's seclusion in the Colorado college by Defendant's spread of Plaintiff's private facts, of no legitimate public concern, regarding his withdrawal from Tulane and his emotional state at the time. Plaintiff's voluntary withdrawal from Tulane was *confidential* pursuant to that school's student misconduct rules and FERPA. Defendant publicized Plaintiff's withdrawal from Tulane to the Colorado community. Mr. Volokh now hopes to publicize that withdrawal to the rest of his blogging community, which includes nationwide readers at academic and private institutions. Rather than a simple defamation case, this is the very injury that *Doe v. High-Tech* recognizes, and any additional publication of Plaintiff's name will certainly exacerbate the harmed intrusion into his seclusion and publication of his private facts.

Plaintiff is not a public figure. Defendant, who knows his identity, does not even argue that he is. Nor has his case or the facts underlying them—yet—been publicized in any newspapers or online fora. *Cf. Doe v. F.B.I.*, 218 F.R.D. 256, 257-60 (D. Colo. 2003) (denying pseudonymity to plaintiff, a sitting Colorado state court judge, while noting release of damaging information about his role as confidential informant in drug investigation did not feature matters of extremely sensitive and personal nature nor would disclosure exacerbate injury litigated against because, based on newspaper reports, "this cat has been out of the bag for quite a while"). Rather, Plaintiff is a private person who, despite moving thousands of miles from Defendant,

6

continues to be harmed by her malicious lies.  Proving the falsity of Defendant's defamatory statements, which concern intensely personal and private matters carrying significant social stigma, would only intensify his injury if the Court reveals the parties' identities.  *See Purdue Univ.*, 321 F.R.D. at 342 ("[I]f Plaintiff is successful in proving that the charges of sexual misconduct against him were unfounded and that Defendants' procedures violated his due process rights, the revelation of Plaintiff's identity would further exacerbate the emotional and reputational injuries he alleges." (quotations omitted)); *George Mason*, 179 F. Supp. 3d at 593-94 ("If plaintiff is ultimately found not responsible as to Roe's new accusations of sexual misconduct . . . then he should not have his name forever associated in the public mind with an accusation that carries a significant social stigma.").

Denying parties anonymity in cases like this one risks under-enforcement of the laws on which Plaintiff's claims are based because future plaintiffs will be reticent to seek recompense for privacy harms if the only way to do so is to make their publicity problems worse.  *See* Volokh, *supra*, at 1394-95 (acknowledging this risk).  Defendant here should not be permitted to leverage the ordinarily public nature of court proceedings to deter claims addressing her intensely private defamatory statements, her intrusion into Plaintiff's seclusion, or her unreasonable publication of private facts.

## II.     THUS FAR, THE PARTIES' ASSOCIATION WITH THIS LITIGATION REMAINS PRIVATE.

This is not a case for which pseudonymity is weakened or eliminated because the litigants have already been publicly revealed.  *See* Volokh, *supra*, at 1394; *e.g.*, *Femedeer*, 227 F.3d at 1246 (acknowledging party's "interest in attempting to prevent disclosure of his status as a sex offender" but observing "such disclosure has presumably already occurred in the underlying

conviction"); *cf. Doe v. Boulder Valley Sch. Dist. No. RE-2*, No. 11-CV-02107-PAB, 2011 WL 3820781, at *2 (D. Colo. Aug. 30, 2011) ("Because the plaintiffs' identities have not been publicly revealed, their privacy interests are substantial.").

Pointing to a Louisiana proceeding, Defendant attempts to argue that "there is already a publicly-available record that describes—and issues an order regarding—Plaintiff's behavior toward Defendant that incorporates their real names." (Def. Resp. at 4-5.) But the existence of a state protective order does not automatically defeat anonymity in federal litigation. *See George Mason*, 179 F. Supp. 3d at 593 & n.20 (continuing to grant plaintiff anonymity in case where "the record disclose[d] that Roe proceeded against plaintiff in a state court action to obtain a protective order, such that a search of Virginia state court records for plaintiff's name would disclose Roe's identity").

More to the point, the Louisiana proceeding, which was based solely on Defendant's uncorroborated *ex parte* filing, lacks the essential characteristics that this one possesses, namely, allegations concerning sex and intrusion of seclusion and publicity of private facts. In the Louisiana proceeding, Defendant obtained a civil protection order related to stalking and harassment. (*See* Complt. ¶ 15.) Although there was a place for her to do so, Defendant did ***not*** allege that Plaintiff had "sexually abused" her, and Defendant's 18-paragraph addendum, prepared with the assistance of counsel, included ***no*** claim that Plaintiff had "sexually assaulted" or "raped" Defendant. (*See id.* ¶¶ 15-16.) As Defendant all but concedes, the Louisiana proceeding did not concern the same subject matter as this litigation. (Def. Resp. at 4 n.1.)

The case is principally about Defendant's lies that Plaintiff committed sexual assault and rape, and thus this subject matter is significantly more sensitive than that of the Louisiana

8

proceeding. Defendant points to no evidence publicly linking the parties to this litigation. In defamation cases where the plaintiff moves to proceed anonymously, courts have "considered the *degree* of public disclosure that has already occurred." *Roe v. Does 1-11*, No. 20-CV-3788-MKB-SJB, 2020 WL 6152174, at *4 n.2 (E.D.N.Y. Oct. 14, 2020); *id.* at *4 (ultimately denying anonymity but finding this factor neutral where plaintiff did not allege the online "communications or identification have been non-public"); *see Roe v. Doe*, No. CV 18-666 (CKK), 2019 WL 1778053, at *2 (D.D.C. Apr. 23, 2019) (considering lack of evidence that the media identified party by name or connected party to the lawsuit); *Doe #1 v. Syracuse Univ.*, No. 518-CV-0496(FJS/DEP), 2018 WL 7079489, at *8 (N.D.N.Y. Sept. 10, 2018) (concluding that, although unblurred videos featuring plaintiffs were already on YouTube, the plaintiffs' linkage to the videos "only extends to the people who already know or recognize plaintiffs" and counting "fact that the University and news publications have not published plaintiffs' names, even though some University students did release their names on social media," as favoring anonymity), *report and recommendation adopted*, No. 518-CV-00496(BKS/ML), 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020).

It is not unusual for slanders and libels to "reach[] only a limited audience, especially if they aren't in Google-searchable media, or at least don't appear high up in Google search results," and thus "[a] plaintiff's lawsuit may cause the alleged defamation to be seen by a much broader audience." Volokh, *supra*, at 1419 n.325. That is the case here because, rather than posting on the internet, Defendant texted her defamatory statements to the social chairs of Plaintiff's fraternity to have him terminated and bullied. (*See* Complt. ¶¶ 28-33.) Foreseeably, fraternity members then spread those lies around the University of Colorado Boulder campus,

and Defendant also published her lies to students at Tulane University.  (*See id.* ¶¶ 32-34.) Despite the substantial damage to Plaintiff, Defendant's lies have not reached a level of public disclosure that would result from the Court's denial of Plaintiff's request to proceed with pseudonyms.  This is not a case where the lies have already reached the broad public. *Cf. Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790, at *1-3 (S.D.N.Y. Mar. 28, 2023) (describing defamation case involving former president defendant who "issued a statement that was published on Twitter by the press" and "made other statements to reporters").

In *Doe v. Wang*, 2022 WL 89172, (D. Colo. Jan. 6, 2022), cited by Defendant, (Def. Resp. at 3), the court denied the plaintiff use of a pseudonym, but there, "Defendant [was] not accused of being the one to sexually assault Plaintiff," 2022 WL 89172, at *5; *id.* (finding "the need to divulge any details about the assault will be minimal, if not nonexistent").  And there, party identity directly played into the defendant's contention that the plaintiff was a vexatious litigant.  *See id.* *5; *see also, e.g.*, *Femedeer*, 227 F.3d at 1246 (reasoning that revealing party's identity was important "to apply legal principles of res judicata and collateral estoppel"). Further, in *Doe v. Wang*, there was reason to believe plaintiff had previously contacted the media before proffering the growing media attention as necessitating anonymity.  2022 WL 89172, at *4-5. Plaintiff here, by contrast, has strenuously avoided media attention.

### III.    DEFENDANT WILL SUFFER NO PREJUDICE FROM PSEUDONYMITY.

Despite a footnote reference to "the impact on the private defendant," (Def. Resp. at 6-7 n.4), Defendant does not identify an "impact" that will befall her from both parties proceeding with their identities protected.  *See Doe v. Va. Polytechnic Inst., & State Univ.*, 2022 WL 972629, at *3 (reasoning defendants' knowledge of Doe's identity and failure to describe what

unfairness would result from use of pseudonym favored anonymity). Indeed, Defendant fails to contest Plaintiff's assertion that she "will not be prejudiced in any way by proceeding anonymously." (Mtn. at 7.)

Defendant also makes much of the fact that there is no university defendant in this case, (Def. Resp. at 5-6), but that fact makes anonymity more, not less, compelling, *see Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) ("The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation."). According to Defendant, federal case law suggests that, where a case exclusively features private parties, this "weighs against confidentiality." (Def. Resp. at 6-7 n.4 (citing *Doe v. Va. Polytechnic Inst., & State Univ.*, 2022 WL 972629, at *3)). But in Defendant's cited case, the court found "the fact that Doe has filed this lawsuit against a public university, is *neutral* regarding whether he should be allowed to proceed anonymously." 2022 WL 972629, at *3 (emphasis added).

The presence of exclusively private parties favors anonymity because the public has a greater interest in monitoring litigation involving the conduct of public institutions and the use of public funds than private people's sex lives. Defendant does not contest Plaintiff's assertion that "there is nothing about his status that would heighten any public interest beyond the normal public interest in any judicial proceedings." (Mtn. at 8.)

In *George Mason*, the court acknowledged the public's "especially compelling interest in the underlying litigation" against "government officials sued in an official capacity," yet the court still found the nature of the sexual-misconduct allegations "sufficiently severe that they rise to the level of an 'extraordinary circumstance' in support of the use of a pseudonym." 179 F. Supp. 3d at 594 (alterations and quotations omitted); *id.* (finding that "use of a pseudonym is an

appropriately tailored means of protecting plaintiff's and Roe's interests without unduly restricting public access to the litigation materials").

In *Doe v. Weber State University*, No. 1:20-CV-00054-TC-DAO, 2021 WL 5042849 (D. Utah Oct. 29, 2021), the court denied the plaintiff's request to proceed as "Jane Doe" partly because the case was "a level removed from the allegations of sexual assault.  Ms. Doe's claims are against Weber State, not against her alleged assailant." *Id.* at *4; *see also M.M.. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (denying pseudonym where "claim to relief clearly involve[d] the use of public funds, and the public certainly ha[d] a valid interest in knowing how state revenues [were] spent"); *cf. Doe v. Regis Univ.*, No. 121CV00580DDDNYW, 2021 WL 5329934, at *2-3 (D. Colo. Nov. 16, 2021) (finding *Zavaras* inapplicable where the case did "not concern how, when, or the manner in which Defendants [spent] their federal funds" and concluding plaintiff was adequately protected by proceeding by initials).

Plaintiff here is not raising constitutional issues of great public import.  *Cf. Femedeer*, 227 F.3d at 1246 (recognizing public's particular interest in accessing legal proceedings "attacking the constitutionality of popularly enacted legislation").  He seeks to vindicate statutory rights protecting his good name and privacy.  He brings his claims against a former sexual partner who defamed him, invaded his privacy, and unreasonably disclosed private facts about him.

Defendant argues no case permits "a private individual plaintiff to proceed pseudonymously *solely* against a private individual defendant," (Def. Resp. at 5) (emphasis added), but one example is *Roe v. Doe*, 2019 WL 1778053, at *1, *4 (D.D.C. Apr. 23, 2019), where Plaintiff alleged nonconsensual sex, and the Defendant sought anonymity, albeit with the

12

Plaintiff's agreement on reconsideration. The court considered the parties' consensus but did not rest on it and granted the motion after analyzing the issue. *Id.* at *2-4.

Even if Defendant's characterization of the case law were accurate, it would stand more as trivia than a reasoned description of the law, especially considering *Doe v. United States*, No. 1:20-CV-3553, 2022 WL 14760938 (D.D.C. Oct. 25, 2022). There, the court allowed pseudonyms for plaintiff "Jane Doe," a former employee of the Federal Bureau of Investigation, who alleged the pseudonymous defendant, "John Smith," engaged in a variety of sexual and criminal misconduct towards her. *Id.* at *1 & n.1. Doe sued Smith individually as well as Attorney General Garland (as head of the FBI's parent agency), so this case wasn't *solely* between private individuals. *Id.* at *1. The public had a great interest in knowing who Doe was since "[t]he FBI eventually terminated [her] for lying to investigators about the nature of her relationship with Defendant Smith," *id.*, but despite the case's touching on misconduct inside the government, the court allowed these public servants to enjoy anonymity in their litigation, *id.* at *1 n.1. The case for pseudonyms is much stronger here as the public interest is nowhere near as compelling.

## IV. FAIRNESS IS BEST SERVED BY PROTECTING BOTH PARTIES' IDENTITIES.

Defendant argues, "[T]here is no threat of unfairness to Plaintiff since Defendant will also be named in the proceeding" (Def. Resp. at 5), but "[o]f course, the fairness concern could [also] be satisfied by allowing both parties to be pseudonymous," Volokh, *supra*, at 1382; *see id.* at 1382-83 nn.139-140 (citing cases where court allowed both parties to use pseudonyms); *see also id.* at 1409 (observing that some courts allow pseudonymity for the alleged attacker as well

13

as the alleged victim of sexual assault where they are "relatives or ex-spouses or ex-lovers" since identifying one would, at least for people who know them, identify the other).

No party here argues for one-sided anonymity. *Cf. Doe v. Wang*, 2022 WL 89172, at *5 ("Defendant will be substantially prejudiced, if he were forced to defend himself publicly while Plaintiff is permitted to hurl her accusations from behind a cloak of anonymity." (alternations and quotations omitted)). "[T]he fact that the pending motion now seeks to protect the identities of *both* parties, *both* of whom are young, shifts the balance closer to equipoise, if not the movant's favor." *Roe v. Doe*, 2019 WL 1778053, at *3.

## V.     GRANTING THE MOTION WILL NOT IMPAIR THE PUBLIC'S INTEREST.

Allowing pseudonyms in this case would not hamper the public's ability to monitor this litigation. "In principle, pseudonymity is less of a burden on public access than is sealing, or even redaction." Volokh, *supra*, at 1369. "Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Id.* (quoting *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)). Other courts have addressed the public's interest by permitting the use of initials rather than pseudonyms. *See Doe v. Regis Univ.*, 2021 WL 5329934, at *3 (finding "that requiring Plaintiff to proceed by his initials adequately protects his concerns regarding his reputation and addresses any concern by Defendants that their investigation might appear to have involved more than one individual accused of sexual misconduct").

Allowing the parties to proceed pseudonymously makes it less likely that they will need to request confidentiality of pleadings and motions that detail sexual acts, and thus the public will have more rather than less access to the facts of the case.

## CONCLUSION

Allowing the parties to proceed anonymously will protect Plaintiff from significant prejudice without hindering Defendant or a legitimate public interest, and thus this Court should grant Plaintiff's request to proceed using pseudonyms for the reasons stated in the Motion, this Reply, and such other reasons as may appear just to the Court.

Dated this 26th day of May 2023.

Respectfully submitted,

*s/ Laura A. Menninger*
Laura A. Menninger, No. 34444
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone: 303.831.7364
Fax: 303.832.2628
Email: LMenninger@hmflaw.com

*Attorney for John Doe*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I electronically filed the foregoing *Reply in Support of Motion to Restrict Party Names* the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

s/ *Holly Rogers*
Legal Assistant