IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01149-NYW-KLM

JOHN DOE,

    Plaintiff,

v.

JANE ROE,

    Defendant.

## MINUTE ORDER

**Entered by Judge Nina Y. Wang**

    This matter is before the Court on the Motion to Restrict Party Names ("Motion to Restrict" or "Motion"), [Doc. 2, filed May 5, 2023], filed by Plaintiff "John Doe" ("Plaintiff"). Defendant "Jane Roe" ("Defendant") opposes the motion ("Response"), [Doc. 17], and Plaintiff has filed a Reply, [Doc. 20]. Non-party Professor Eugene Volokh ("Professor Volokh") has also filed a pro se Objection to Motion to Restrict Party Names ("Volokh Response"), [Doc. 7]. *See* D.C.COLO.LCivR 7.2(d) ("Any person may file an objection to the motion to restrict."). In the Motion to Restrict, Plaintiff seeks to prosecute this action fully pseudonymously "due to the highly personal, sexually explicit, and defamatory nature of the allegations" involved. [Doc. 2 at 1]. The Court respectfully **DENIES** the Motion.

    ***Background.*** According to the allegations in the Complaint and Jury Demand ("Complaint"), [Doc. 1, filed May 5, 2023], Plaintiff and Defendant dated for nearly a year while enrolled at Tulane University ("Tulane") in New Orleans, Louisiana. [*Id.* at ¶ 7]. After their relationship ended in October 2021, Defendant complained about Plaintiff's behavior to Tulane, which issued mutual no-contact orders the next month. [*Id.* at ¶¶ 11–12, 14]. Defendant also sought a protective order in Louisiana state court, claiming that Plaintiff stalked, harassed, shoved, and threatened her. [*Id.* at ¶ 15]. In both proceedings, Defendant did not claim that Plaintiff sexually assaulted her. [*Id.* at ¶¶ 13, 16]. Plaintiff and Defendant agreed to a state court order, pursuant to which Tulane's no-contact order became permanent, and Plaintiff agreed to withdraw from Tulane and cease all contact with Defendant. [*Id.* at ¶¶ 18–20]. Plaintiff alleges that he never sexually assaulted Defendant, and that he left Tulane voluntarily. [*Id.* at ¶ 22].

    In August 2022, following a "period of reflection," Plaintiff enrolled in Front Range Community College in Boulder, Colorado, although he planned to transfer to the University of Colorado ("CU Boulder") after his first year there. [*Id.* at ¶¶ 23–24]. At CU Boulder, Plaintiff rushed and sought to pledge an unspecified fraternity, and paid its dues. [*Id.* at ¶ 27]. Shortly after the fraternity received his bid in September 2022, Defendant sent text messages to the fraternity's

social chairs claiming, among other things, that Plaintiff transferred schools "not through his own choice, but because he was kicked out of Tulane for rape and stalking"; "sexually assaulted and raped [Defendant] countless times"; "forced [Defendant] into very uncomfortable sexual situations, forcing [her] to do painful things which [she] objected to"; "was abusive in every way"; "ha[d] been physically violent with [Defendant]"; "threatened [Defendant's] friends and family and attempted to cut [her] off from every person in [her] life"; and was "a threat to every woman's safety on [CU Boulder's] campus." [*Id.* at ¶¶ 28–29].

The fraternity "terminated" Plaintiff immediately, based on Defendant's allegedly defamatory claims, and refused to refund a deposit he paid. [*Id.* at ¶¶ 30–31]. Plaintiff's college friends "cancelled him." [*Id.* at ¶ 31]. Additionally, fraternity members "spread [Defendant's] malicious lies to numerous other students on campus, who proceeded to bully and ostracize [Plaintiff]." [*Id.* at ¶ 32]. Plaintiff was ultimately "forced to withdraw" from CU Boulder "and return home to California." [*Id.* at ¶ 33]. Meanwhile, Defendant has returned to Tulane, where she continues to "publish[] her false and malicious lies to numerous students there." [*Id.* at ¶ 34]. Seeking damages, Plaintiff has brought three claims arising out of these allegations: defamation, intrusion on seclusion, and unreasonable disclosure of private facts. [*Id.* at 6–8].

The Complaint identifies the Parties with pseudonyms—"John Doe" for Plaintiff and "Jane Roe" for Defendant. [*Id.* at 1]. A variant of the Complaint filed under Level 1 Restriction uses the Parties' real names, *see* [Doc. 3], as does the restricted Summons, *see* [Doc. 4]. Pursuant to the District of Colorado's Local Rules, Plaintiff has filed the Motion to Restrict, seeking not only to maintain restriction on the aforementioned filings, but also to "request[] that the anonymity of the parties apply to all further proceedings in this case," and their identities remain under Level 1 Restriction throughout this litigation. [Doc. 2 at 1].[1] In her Response, Defendant joins Professor Volokh in opposing pseudonymity and further notes that she "will allege that she was sexually assaulted in her counterclaims," and "is choosing to proceed using her own name so as to ensure that the larger and important issues raised by this case—including ensuring that survivors of sexual assault not lose their voice through shame or the threat of legal action—are advanced." [Doc. 17 at 7 (emphasis omitted)].[2]

***Legal Standard.*** There is a common-law right of access to judicial records, premised on the recognition that public monitoring of the courts fosters important values such as respect for our judicial system. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but access to them may be restricted when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).

---

[1] Plaintiff states that he "anticipates later moving for a Protective Order requesting that Defendant be prohibited from ever disclosing his identity." [Doc. 2 at 1]. That contemplated relief is not before the Court at this time.

[2] Defendant's response to the Complaint is due July 24, 2023. *See* [Doc. 24].

2

These principles are reflected in D.C.COLO.LCivR 7.2. Local Rule 7.2(c) is quite clear that a party seeking to restrict access must make a multi-part showing. It must: (1) identify the specific document for which restriction is sought; (2) identify the interest to be protected and the reasons why that interest outweighs the presumption of public access; (3) identify a clear injury that would result if access is not restricted; and (4) explain why alternatives to restricted access—such as redaction, summarization, stipulation, or partial restriction—are not adequate. D.C.COLO.LCivR 7.2(c)(1)–(4).

Relatedly, the Federal Rules of Civil Procedure do not contemplate the anonymity of parties. *See M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998). Rather, Rule 10(a) requires that a complaint "name all the parties," and Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 10(a), 17(a)(1); *see also Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) ("Th[e] use of pseudonyms concealing plaintiffs' real names has no explicit sanction in the federal rules. Indeed it seems contrary to [Rule] 10(a) which requires the names of all parties to appear in the complaint."). Absent permission from the court to proceed anonymously, a case filed under a pseudonym can be dismissed for failure to comply with Rule 10(a). *See, e.g.*, *Zavaras*, 139 F.3d at 803–04 (affirming trial court's dismissal of complaint for failure to comply with Rule 10(a) where plaintiff used a pseudonym).

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained that "identifying a plaintiff only by a pseudonym is an unusual procedure, to be allowed only where there is an important privacy interest to be recognized. It is subject to a decision by the judge as to the need for the cloak of anonymity." *Lindsey*, 592 F.2d at 1125. To justify use of a pseudonym, "the risk that a plaintiff may suffer some embarrassment is not enough." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (quotation omitted). The Tenth Circuit has "nevertheless recognized that anonymity in court proceedings may sometimes be warranted, but it is limited to 'exceptional circumstances,' such as cases 'involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Phillips v. Austin Police Dep't*, 828 F. App'x 508, 510 (10th Cir. 2020) (quoting *Femedeer*, 227 F.3d at 1246). Most recently, the Tenth Circuit discussed these standards in considering whether a district court erred in denying a plaintiff's request to proceed under a pseudonym where the underlying circumstances implicated an alleged sexual assault. *See Luo v. Wang*, No. 22-1200, 2023 WL 4307475, at *8–9 (10th Cir. July 3, 2023).

*Analysis.* The Court focuses its discussion on the "exceptional circumstances" identified by the Tenth Circuit, as well as the public and private interests implicated by the Motion. *See Phillips*, 828 F. App'x at 510. Starting with the subject matter of the litigation, the Court recognizes that the allegations at issue are sensitive and personal in nature, in that they involve details of the Parties' sexual relationship. At the same time, the Court recognizes that Defendant opposes pseudonymity, and that she takes the position that the "public has a keen interest in [this case's] subject matter, including in examining the use of litigation by perpetrators of sexual assault to curtail the #MeToo movement and to silence speech about sexual misconduct that has proven so critical in changing norms that have for far too long allowed sexual abuse to continue unabated." [Doc. 17 at 2]. Further, the Complaint does not suggest that either Party was a minor at the time of the events in question. *Cf. Doe v. Woodard*, No. 15-cv-01165-KLM, 2015 WL 13848981, at *1–2 (D. Colo. July 20, 2015).

3

Next, Plaintiff appears to overstate the likelihood of physical harm. The initial Motion to Restrict referred only to the "academic," "financial," "mental," "emotional," "reputational," and "psychological" harm suffered by Plaintiff. [Doc. 2 at 1, 6–7]. Only in his Reply, once confronted with the applicable legal framework, does Plaintiff invoke "physical manifestations of emotional harm," based on alleged bullying and harassment, as well as increased attention to this case. [Doc. 20 at 4–5]. Plaintiff cites several paragraphs of the Complaint to show that he has suffered or will suffer physical harm, [*id.* at 4], but, upon review, the closest the Complaint gets is alleging generally that CU Boulder students "proceeded to bully and ostracize" Plaintiff. [Doc. 1 at ¶ 32]. Even if the Court assumes that the bullying at issue had a physical component—which does not necessarily follow from the surrounding allegations, or the pairing with the word "ostracize"—the Complaint alleges in no uncertain terms that Plaintiff responded by "withdraw[ing] and return[ing] home to California." [*Id.* at ¶ 33]. Plaintiff thus faces no further risk of harm at CU Boulder, physical or otherwise, by his own account.

With regard to the public discourse, Plaintiff speculates that denial of pseudonymity will result in "inevitable public attention," which will make physical harm likely. [Doc. 20 at 4]. However, Plaintiff does not explain why that is so, and the case Plaintiff cites for support is distinguishable. In it, the court observed that the threat of harm to the movant was "all the more serious given that this case has drawn significant media attention, which means many people across the country are aware of Roe's accusations against plaintiff," and "some responses to the media's reporting on this case have been vitriolic." *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016). Here, in contrast, Plaintiff recognizes (albeit in supporting a different argument) that the subject matter of this case has not been "publicized in any newspapers or online fora," [Doc. 20 at 6], and "there is nothing about his status that would heighten any public interest beyond the normal public interest in any judicial proceedings." [Doc. 2 at 8].

Third, Plaintiff does not seek injunctive relief in the Complaint, *see* [Doc. 1 at 8], and the alleged injury involving his time at CU Boulder has already occurred. *See Luo*, 2023 WL 4307475, at *9 (district court did not abuse its discretion in "concluding that the injury [plaintiff] litigated against—[defendant's] previous alleged defamation and disclosure of her private information—would not be incurred because of the disclosure of her identity"). Plaintiff seeks damages for past conduct by Defendant. *See* [Doc. 1 at 8]. Plaintiff's argument that "prevailing in this litigation would be undermined if he were required to reveal his identity," [Doc. 2 at 7], ignores that by prevailing in this litigation, Plaintiff will have proven the defamatory nature of Defendant's previous statements and will likely want to publicize his own name. As the United States District Court for the Eastern District of North Carolina observed, "[i]t would be fundamentally unfair for [a] plaintiff to be able to 'clear his name' and wield a potential judgement against [his accuser] to his advantage but hide under a shield of anonymity if unsuccessful." *Doe v. Doe*, No. 5:22-CV-500-D-BM, 2023 WL 115563, at *3 (E.D.N.C. Jan. 5, 2023).

The Court also acknowledges that pseudonymity could potentially prejudice Defendant in light of her stated intention to litigate a counterclaim for sexual assault "using her own name so as to ensure that the larger and important issues raised by this case—including ensuring that survivors of sexual assault not lose their voice through shame or the threat of legal action—are advanced." [Doc. 17 at 7]. Indeed, unlike other cases, Plaintiff is not seeking to proceed pseudonymously so

4

as to match his accuser's pseudonymous status. *See, e.g.*, *Doe v. Doe*, No. 20-CV-5329(KAM)(CLP), 2020 WL 6900002, at *4 (E.D.N.Y. Nov. 24, 2020).

For all these reasons, this Court concludes that Plaintiff's arguments supporting pseudonymity fail to overcome the strong presumption of public access. *Chalmers v. Martin*, No. 21-cv-02468-NRN, 2021 WL 6136179, at *2 (D. Colo. Dec. 28, 2021) ("The supposed harm from being the target of a lawsuit alleging sexual abuse is not enough to justify shrouding this case with a veil of secrecy."). As the Volokh Response points out, libel cases concerning sexual assault are routinely brought in plaintiffs' own names. *See, e.g.*, *Hockenberry v. United States*, 42 F.4th 1164 (10th Cir. 2022); *see also* [Doc. 7 at 5]. Although, in some respects, Plaintiff's "desire [to proceed under a pseudonym] is understandable, our system of dispute resolution does not allow it." *Doe v. Fedcap Rehab. Servs., Inc.*, No. 17-cv-8220 (JPO), 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018) (employment discrimination). Plaintiff has not satisfied his burden to proceed pseudonymously by showing that exceptional circumstances exist, so based on this Court's weighing of the public and private interests involved, the Motion to Restrict is respectfully **DENIED**.[3] As Defendant notes, *see* [Doc. 17 at 7], the denial of pseudonymity in this action does not prevent the Court from permitting restricted or redacted filings in the future in this case upon motions to restrict supported by sufficient cause, consistent with the Local Rules. *See* D.C.COLO.LCivR 7.2.

Accordingly, **IT IS ORDERED** that:

(1)   Plaintiff's Motion to Restrict Party Names [Doc. 2] is **DENIED**; and

(2)   This Order is **STAYED** up to and including **August 18, 2023, or further order of the Court**.

DATED: July 17, 2023

---

[3] The Court's decision is not based on the asserted publicity of the prior proceeding involving the Parties in Louisiana state court, so the Court need not reach Plaintiff's arguments about how those court records do not counsel denial of the Motion. *See* [Doc. 17 at 4; Doc. 20 at 7–10].