IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01149-NYW-KAS

JACOB LEVY,

    Plaintiff,

v.

HOLLY SHUSTER,

    Defendant.

## MINUTE ORDER

**Entered by Judge Nina Y. Wang**

    This matter is before the Court on the Motion for Relief from July 17, 2023 Order ("Motion for Relief" or "Motion"), [Doc. 36, filed August 17, 2023], filed by Plaintiff Jacob Levy ("Plaintiff" or "Mr. Levy"). Defendant Holly Shuster ("Defendant" or "Ms. Shuster") opposes the motion, [Doc. 53], and Plaintiff has replied, [Doc. 60]. Professor Eugene Volokh ("Professor Volokh") has also filed a pro se Objector's Response to Motion for Relief from July 17, 2023 Order ("Volokh Response"), [Doc. 39], as well as two Notices of Supplemental Authority, [Doc. 74; Doc. 81]. The Motion for Relief seeks reconsideration of the Court's decision ("Pseudonymity Minute Order") that Plaintiff may not prosecute this action pseudonymously. *See generally* [Doc. 25]. The Court respectfully **DENIES** the Motion.

    ***Background.*** According to the allegations in the First Amended Complaint and Jury Demand ("First Amended Complaint"), [Doc. 33, filed August 14, 2023], Plaintiff and Defendant dated for nearly a year while enrolled at Tulane University ("Tulane") in New Orleans, Louisiana. [*Id.* at ¶ 7]. After their relationship ended in October 2021, Defendant complained about Plaintiff's behavior to Tulane, which issued mutual no-contact orders the next month. [*Id.* at ¶¶ 16, 18, 20]. Defendant also sought a protective order in Louisiana state court, claiming that Plaintiff stalked, harassed, shoved, and threatened her. [*Id.* at ¶ 21]. In both proceedings, Defendant did not claim that Plaintiff sexually assaulted her. [*Id.* at ¶¶ 18–19, 22]. Plaintiff and Defendant agreed to a state court order, pursuant to which Tulane's no-contact order became permanent, and Plaintiff agreed to withdraw from Tulane and cease all contact with Defendant. [*Id.* at ¶¶ 24–26]. Plaintiff alleges that he never sexually assaulted Defendant, and that he left Tulane voluntarily. [*Id.* at ¶ 28].

    In August 2022, following a "period of reflection," Plaintiff enrolled in Front Range Community College in Boulder, Colorado, although he planned to transfer to the University of Colorado ("CU Boulder") after his first year there. [*Id.* at ¶¶ 29–30]. At CU Boulder, Plaintiff rushed and sought to pledge an unspecified fraternity, and paid its dues. [*Id.* at ¶¶ 33–34]. Shortly

after the fraternity received his bid in September 2022, Defendant sent text messages to the fraternity's social chairs claiming, among other things, that Plaintiff transferred schools "not through his own choice, but because he was kicked out of Tulane for rape and stalking"; "sexually assaulted and raped [Ms. Shuster] countless times"; "forced [Ms. Shuster] into very uncomfortable sexual situations, forcing [her] to do painful things which [she] objected to"; "was abusive in every way"; "ha[d] been physically violent with [Defendant]"; "threatened [Defendant's] friends and family and attempted to cut [her] off from every person in [her] life"; and was "a threat to every woman's safety on [CU Boulder's] campus." [*Id.* at ¶¶ 35–36].

The fraternity "terminated" Plaintiff immediately, based on Defendant's allegedly defamatory claims, and refused to refund a deposit he paid. [*Id.* at ¶¶ 37–38]. Plaintiff's college friends "cancelled him." [*Id.* at ¶ 38]. Additionally, fraternity members "spread Ms. Shuster's malicious lies to numerous other students on campus, who proceeded to bully and ostracize Mr. Levy." [*Id.* at ¶ 39]. Plaintiff was ultimately "forced to withdraw" from CU Boulder "and return home to California." [*Id.* at ¶ 40]. Meanwhile, Defendant has returned to Tulane, where she continues to "publish[] her false and malicious lies to numerous students there." [*Id.* at ¶ 41]. Seeking damages, Plaintiff has brought three claims arising out of these allegations: defamation, intrusion on seclusion, and unreasonable disclosure of private facts. [*Id.* at 8–10]. Ms. Shuster has filed counterclaims for sexual assault, rape, battery, assault, stalking, cyberstalking, intentional infliction of emotional distress, and statutory violations under state and federal law. [Doc. 57 at 23–29].

The Court denied Mr. Levy's initial motion to prosecute this action pseudonymously on July 17, 2023, reasoning that, as Ms. Shuster and Professor Volokh contended, no exceptional circumstances supported pseudonymity. *See* [Doc. 25 at 3–5]. The Motion for Relief followed and is now ripe for decision.[1]

***Standard of Review.*** The Federal Rules of Civil Procedure do not expressly contemplate motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995). Yet, courts retain discretion to consider their interlocutory orders at any time prior to entry of final judgment. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008); Fed. R. Civ. P. 54(b). Though the Court is not bound by the stricter standards set forth in Rules 59(e) or 60(b) of the Federal Rules of Civil Procedure for such motions, the Court may utilize those standards in evaluating a motion for reconsideration. *See Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 212 F. App'x 760, 765 (10th Cir. 2007). Generally, a motion for reconsideration is appropriate only if there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

"Motions to reconsider are generally an inappropriate vehicle to advance 'new arguments, or supporting facts which were available at the time of the original motion.'" *Spring Creek Expl.*

---

[1] The Motion was fully briefed on September 21, 2023. [Doc. 60]. However, on September 23, 2023, Mr. Levy requested that the Court hold the motion in abeyance to facilitate the Parties' mediation efforts. *See* [Doc. 61 at 1–2]. The Court granted this request, as well as subsequent requests to extend the period of abeyance. *See* [Doc. 62; Doc. 73; Doc. 79]. The final extension expired on November 9, 2023, *see* [Doc. 79], so the Court now turns to the Motion.

2

*& Prod. Co., LLC*, No. 14-cv-00134-PAB-KMT, 2015 WL 3542699, at *2 (D. Colo. June 5, 2015) (quoting *Servants of the Paraclete*, 204 F.3d at 1012). And "[t]he Tenth Circuit has made it abundantly clear that a motion for reconsideration is not a vehicle for a losing party to revisit issues already addressed." *Seabron v. Am. Fam. Mut. Ins. Co.*, No. 11-cv-01096-WJM-KMT, 2012 WL 3028224, at *1 (D. Colo. July 24, 2012) (citing *Servants of the Paraclete*, 204 F.3d at 1012). "[T]he decision to grant reconsideration is committed to the sound discretion of the district court." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995).

Plaintiff's arguments on reconsideration largely replicate the arguments that were before the Court, or could have been before the Court, on the Pseudonymity Minute Order. *See* [Doc. 53 at 4 ("[W]hile Mr. Levy repackages some of his prior arguments in a call-and-response format quoting various snippets of the [Pseudonymity Minute] Order, he still relies on much of the same, mostly non-binding authority cited throughout his prior briefing.")]. Mr. Levy makes no argument that there has been an intervening change of law or new evidence that was previously unavailable. *See generally* [Doc. 36]. Thus, Plaintiff's arguments appear focused on whether the Court should reconsider its prior determination based on clear error or to prevent injustice. While this Court concurs with Ms. Shuster that the bulk of Mr. Levy's arguments are simply a re-packaging of his original motion, to assure thorough consideration of these issues, the Court will address each of Plaintiff's contentions in the Motion for Relief.[2]

***Legal Standard for Pseudonymity.*** There is a common-law right of access to judicial records, premised on the recognition that public monitoring of the courts fosters important values such as respect for our judicial system. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but access to them may be restricted when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).

These principles are reflected in D.C.COLO.LCivR 7.2. Local Rule 7.2(c) is quite clear that a party seeking to restrict access must make a multi-part showing. It must: (1) identify the specific document for which restriction is sought; (2) identify the interest to be protected and the reasons why that interest outweighs the presumption of public access; (3) identify a clear injury that would result if access is not restricted; and (4) explain why alternatives to restricted access—

---

[2] The Court does not consider Ms. Shuster's arguments about an attempt by Mr. Levy to "circumvent" a deadline to appeal the Pseudonymity Minute Order. *See* [Doc. 53 at 6–8]. The instant Motion having been filed, the Court will enter a ruling; should Mr. Levy appeal that ruling, Ms. Shuster may challenge the exercise of appellate jurisdiction in the appropriate forum or under the appropriate standard for consideration. In addition, the Court excuses any lack of conferral on the Motion, as identified by Ms. Shuster, *see* [Doc. 53 at 1 n.1; Doc. 60 at 1–2], despite the fact that a party's failure to confer is sufficient grounds for the Court to deny a motion without substantive review, *see, e.g.*, *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 WL 4368158, at *2 (D. Colo. Sept. 30, 2017).

3

such as redaction, summarization, stipulation, or partial restriction—are not adequate. D.C.COLO.LCivR 7.2(c)(1)–(4).

Relatedly, the Federal Rules of Civil Procedure do not contemplate the anonymity of parties. *See M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998). Rather, Rule 10(a) requires that a complaint "name all the parties," and Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 10(a), 17(a)(1); *see also Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) ("Th[e] use of pseudonyms concealing plaintiffs' real names has no explicit sanction in the federal rules. Indeed it seems contrary to [Rule] 10(a) which requires the names of all parties to appear in the complaint."). Absent permission from the court to proceed anonymously, a case filed under a pseudonym can be dismissed for failure to comply with Rule 10(a). *See, e.g.*, *Zavaras*, 139 F.3d at 803–04 (affirming trial court's dismissal of complaint for failure to comply with Rule 10(a) where plaintiff used a pseudonym).

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained that "identifying a plaintiff only by a pseudonym is an unusual procedure, to be allowed only where there is an important privacy interest to be recognized. It is subject to a decision by the judge as to the need for the cloak of anonymity." *Lindsey*, 592 F.2d at 1125. To justify use of a pseudonym, "the risk that a plaintiff may suffer some embarrassment is not enough." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (quotation omitted). The Tenth Circuit has "nevertheless recognized that anonymity in court proceedings may sometimes be warranted, but it is limited to 'exceptional circumstances,' such as cases 'involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Phillips v. Austin Police Dep't*, 828 F. App'x 508, 510 (10th Cir. 2020) (quoting *Femedeer*, 227 F.3d at 1246). Most recently, the Tenth Circuit discussed these standards in considering whether a district court erred in denying a plaintiff's request to proceed under a pseudonym where the underlying circumstances implicated an alleged sexual assault. *See Luo v. Wang*, 71 F.4th 1289, 1296–97 (10th Cir. 2023).

***Analysis.***   First, Plaintiff argues that the Court's Pseudonymity Minute Order "understate[d] the case's sensitivity," as this case is not just about a sexual relationship, but about false allegations of sexual misconduct. [Doc. 36 at 3]. Pointing to criminal prosecutions and civil suits filed by assault victims, Professor Volokh responds that "courts routinely decide, without pseudonyms, cases in which someone claims that allegations related to sexual misconduct are false." [Doc. 39 at 2]; *see also* [Doc. 7 at 5 (citing libel cases)]. Ms. Shuster agrees. *See* [Doc. 53 at 9]. Plaintiff has not provided any binding authority for the proposition that cases implicating allegations of sexual assault that may be false must proceed pseudonymously, and the Court remains unconvinced that the subject matter of this case inherently compels pseudonymity. *See* [Doc. 25 at 3].

Relatedly, Plaintiff contends that, "unlike [cases] involving pure allegations of assault or rape," this litigation "will . . . entail exploration of differing understandings of sexual encounters over a year-long relationship," including "requests by Defendant for rough sex, BDSM, and role play." [Doc. 36 at 3–4]. But that contention has minimal weight in light of Plaintiff's choice to bring this action in federal court and Defendant's "staunch opposition to being forced to litigate this dispute under the shroud of secrecy." [Doc. 53 at 4]. Plaintiff seems to recognize that this

argument turns largely on "requests by Defendant" for certain sexual conduct. [Doc. 36 at 4]. As Defendant points out, "the alleged statements by Ms. Shuster about her own sexual preferences overwhelmingly implicate her own privacy interests rather than Mr. Levy's and, in light of her opposition to pseudonymity," [Doc. 53 at 6], this Court remains unpersuaded that these allegations warrant reconsideration of its original determination that the circumstances of this case are not exceptional.

Next, Plaintiff contends that he faces a substantial risk of physical harm due to Professor Volokh attempting to publicize the subject matter of this litigation. *See* [Doc. 36 at 5–6]. Professor Volokh responds that any risk of physical harm is prohibitively "speculative." [Doc. 39 at 3]. The Court agrees. As Ms. Shuster notes, "Mr. Levy still does not identify a single specific harm that he is likely to face." [Doc. 53 at 9]. Mr. Levy thus provides no basis for reconsidering the Court's ruling. *See DL v. JS*, No. 1:23-cv-01122-RP, 2023 WL 8102409, at *3 (W.D. Tex. Nov. 21, 2023) ("Because [p]laintiff has failed to provide the [c]ourt with any specific claims of potential retaliation or harassment, the [c]ourt does not find at this time that [p]laintiff faces anything more than a general 'threat of hostile public reaction to [the] lawsuit.'" (last alteration in original) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981))).

Because the First Amended Complaint now explicitly seeks injunctive relief, Plaintiff contends that disclosing his identity will result in the injury he is litigating against. *See* [Doc. 36 at 6–7]; *see also* [Doc. 33 at 10 (seeking "[a] permanent injunction preventing Ms. Shuster from engaging in the conduct complained of")]. But, as the Court reasoned in the Pseudonymity Minute Order:

> Plaintiff's argument that "prevailing in this litigation would be undermined if he were required to reveal his identity," [Doc. 2 at 7], ignores that by prevailing in this litigation, Plaintiff will have proven the defamatory nature of Defendant's previous statements and will likely want to publicize his own name. As the United States District Court for the Eastern District of North Carolina observed, "[i]t would be fundamentally unfair for [a] plaintiff to be able to 'clear his name' and wield a potential judgement against [his accuser] to his advantage but hide under a shield of anonymity if unsuccessful." *Doe v. Doe*, No. 5:22-CV-500-D-BM, 2023 WL 115563, at *3 (E.D.N.C. Jan. 5, 2023).

[Doc. 25 at 4]. The Court respectfully concludes that effectively ameliorating the reputational injury litigated against in this action *requires* Plaintiff's identity to be disclosed. *See Doe v. Doe*, 85 F.4th 206, 217–18 (4th Cir. 2023) ("If [a]ppellant were successful in proving defamation, his use of a pseudonym would prevent him from having an order that publicly 'clears' him.").

Mr. Levy also argues that pseudonymity will not prejudice Ms. Shuster. [Doc. 36 at 7–8]. Ms. Shuster forcefully responds that she "is opposed to the squelching of her voice, and silencing her over her objection may very well amount to an unconstitutional prior restraint." [Doc. 53 at 10]. The Court does not discern a basis in Plaintiff's arguments for revisiting the prejudice analysis in the Pseudonymity Minute Order. In any case, the potential prejudice to Ms. Shuster from proceeding under a pseudonym, while not irrelevant, did not control the Court's finding that no exceptional circumstances exist here. *See* [Doc. 25 at 3–5].

Finally, Mr. Levy contends that the Pseudonymity Minute Order assigned too much weight to the public interest in disclosure; in his view, "[t]he public interest is fully served here by allowing the parties to litigate using pseudonyms." [Doc. 36 at 9]. Plaintiff stresses that, without a university involved in this case, "the presence of exclusively private parties favors anonymity here." [*Id.*]. Ms. Shuster takes the opposite view, however, suggesting that litigation resulting from university Title IX proceedings more frequently receives pseudonymous treatment. *See* [Doc. 53 at 10]. Ms. Shuster is correct. *See, e.g.*, *Doe*, 85 F.4th at 217 (distinguishing Title IX challenges from private libel litigation). The Court has adequately considered the Parties' identities and the litigation dynamics in its Pseudonymity Minute Order. *See* [Doc. 25 at 3–5]. The Court will not now disturb that analysis on the basis of supposedly overstating a public interest that the Tenth Circuit deems "presumptively paramount." *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) (quotation omitted).

The Court thus agrees with Professor Volokh that pseudonymity is unavailable "in cases where plaintiffs seek to gag sexual assault accusers." [Doc. 39 at 5]. If Plaintiff is categorically correct that "fundamental unfairness comes from requiring an innocent defamation plaintiff to litigate under his own name, further publicizing and associating himself with the false information the defendant has spread," [Doc. 60 at 5], then all libel litigation would be conducted pseudonymously, which it is not, and all legal authorities would favor Plaintiff, which they do not. The Pseudonymity Minute Order will not be reconsidered, as nothing has meaningfully changed, and no exceptional circumstances support Plaintiff's opposed request for pseudonymity. The Motion for Relief is respectfully **DENIED**.

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Relief from July 17, 2023 Order [Doc. 36] is **DENIED**; and

(2) This Order is **STAYED** up to and including **January 2, 2024, or further order of the Court**. When the stay expires, the Court will unrestrict all documents in this case. <u>Should any Party seek to restrict any docket filing in this action on any basis other than the pseudonymity previously sought by Plaintiff, a proper motion to restrict must be filed before the stay expires.</u>

DATED: November 28, 2023

6