**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 23-cv-1149-NYW-KAS

JACOB LEVY,

    Plaintiff and Counterclaim Defendant,

v.

HOLLY SHUSTER,

    Defendant and Counterclaim Plaintiff.

---

**HOLLY SHUSTER'S RESPONSE IN OPPOSITION TO JACOB LEVY'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING COUNTERCLAIMS 2 THROUGH 9**

---

Defendant and Counterclaim Plaintiff Holly Shuster, through counsel, responds as follows to Plaintiff and Counterclaim Defendant Jacob Levy's Motion for Judgment on the Pleadings Regarding Counterclaims 2 through 9 ("Motion") [Doc. 88, filed Feb. 1, 2024]:

### INTRODUCTION

From 2020 through 2022, while Ms. Shuster and Mr. Levy were students at Tulane University, Mr. Levy engaged in a pattern or sexual assault, battery, stalking and cyber-stalking against Ms. Shuster. After Mr. Levy was required to leave Tulane because of his misconduct, and upon discovering he was attempting to join a fraternity at University of Colorado ("CU Boulder"), Ms. Shuster disclosed Mr. Levy's wrongdoing to the fraternity in order to protect the young women on the CU Boulder campus. The next year, Mr. Levy sued Ms. Shuster in this Court for defamation and related torts.

About six months after receiving Ms. Shuster's amended counterclaims arising from Mr. Levy's misconduct in violation of state and federal law, and well into the discovery period in this matter, Mr. Levy has decided to test the sufficiency of the pleadings by bringing a motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to Ms. Shuster's second through ninth counterclaims. Ms. Shuster's counterclaims are well-pled, and for the reasons described below, Mr. Levy's motion should be denied.

## LEGAL STANDARD

Judgment on the pleadings under Rule 12(c) is a "drastic remedy" that courts should use sparingly. *Aberkalns v. Blake*, 633 F. Supp. 2d 1231, 1233 (D. Colo. 2009). The Court should not grant a motion for judgment on the pleadings "unless the moving party has clearly established that no material issue of facts remains to be resolved and the party is entitled to judgment as a matter of law." *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1285 (D. Colo. 2009). The Court must construe allegations strictly against the movant and take the opposing party's pleadings as true. *Aberkalns*, 633 F. Supp. 2d at 1233.

### I. Ms. Shuster's Second, Fifth, and Sixth Counterclaims Are Based Upon Well-Established Louisiana Tort Law.

With respect to Ms. Shuster's second, fifth and sixth counterclaims, Mr. Levy argues that Ms. Shuster cannot rely upon Louisiana criminal statutes as the basis for her sexual assault (third-degree rape), civil stalking, and civil cyberstalking claims. That is not the legal basis for these claims. These claims are brought pursuant to Louisiana Civil

2

Code Article 2315.[1] That statute, entitled "Of Offenses and Quasi Offenses," authorizes a civil cause of action for "offenses and quasi-offenses" which are infringements of some right personal to the individual or the violation of some duty imposed by law. *Sims v. Orleans Railway & Light Co.*, 134 La. 897, 64 So. 823 (1914). Specifically, Article 2315 states: "every act of man that causes damage to another obliges him by whose fault it happened to repair it."

The scope of Article 2315 is broad and is not tethered to other statutorily enumerated offenses. *See Tuyes v. Chambers*, 81 So. 265, 267 (La. 1919) (explaining that if a plaintiff has suffered a personal injury that "the law can take cognizance of, the right to recover follows"). "Article 2315 does not limit the notion of fault." *Bethea v. Mod. Biomedical Servs., Inc.*, 704 So.2d 1227, 1233 (La. Ct. App. 1997) (quoting *Ardoin v. Hartford Accident & Indem. Co.*, 360 So.2d 1331 (La. 1978)). Rather, Article 2315 may serve as an independent basis for fault, even in the absence of another statute on point. *Bethea*, 704 So.2d at 1233. "The parameters of what constitutes fault in Louisiana reach far and wide in order to hold people accountable for their harmful actions regardless of whether or not their actions are covered by a statutory provision." *Id.* (holding that Article 2315 formed the basis for claims of impairment of a civil claim and civil spoliation of evidence); *see also L.P. v. Oubre*, 547 So.2d 1320, 1324 (La. Ct. App. 1989) (finding causes of action against the Boy Scouts of America under Article 2315 viable despite no similar causes of action in prior law); *Jones v. Child.'s Hosp.*, 58 F. Supp. 3d 656, 669 (E.D. La. 2014) (holding that violations of anti-discrimination laws may be compensable

---

[1] For this reason, Mr. Levy's numerous citations to federal court cases dismissing claims brought under criminal statutes—and not addressing Article 2315—are inapposite.

3

even though such statutes "do not themselves give rise to general tort liability" so long as breach of such statutes "meet the definition of 'fault' under Civil Code article 2315").

Under Article 2315, a criminal statute can provide a basis for liability. In practice, Article 2315 functions as a civil tort statute whereby criminal statutes, or other laws, give rise to a duty of care. Any law, "statutory, jurisprudentially or arising from general principles of fault," can establish a duty of care under Article 2315. *Cuevas v. City of New Orleans*, 769 So.2d 82, 85 (La. Ct. App. 2000). As a result, it is well-established that criminal statutes can form the basis for liability under Article 2315. *See Kahoe v. State Farm Mut. Auto. Ins. Co.*, 349 So.2d 1345, 1348 (La. Ct. App. 1977) ("[Criminal statutes] provide guidelines which a court may use in establishing the proper standard of care for determining civil liability."); *Hakim v. O'Donnell*, 144 So.3d 1179, 1188 n.4 (La. Ct. App. 2014) ("[Criminal statutes] may be guidelines for the court in fixing civil liability.").

Mr. Levy relies on a federal court opinion, *Morales v. City of New Orleans*, No. CV 21-1992, 2022 WL 2264178 (E.D. La. June 23, 2022), for his assertion that a criminal statute cannot give rise to civil liability.[2] Mr. Levy points to no state court opinion so holding, and as noted above, state law is directly to the contrary. A federal court's opinion applying Louisiana law is not controlling for purposes of interpreting the scope of Article 2315. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206-07 (5th Cir. 2007).

Under the *Erie* doctrine, in the absence of a final decision from the Louisiana Supreme Court, federal courts applying Louisiana law must apply Louisiana's civilian law

---

[2] While the court in *Morales* briefly acknowledges that the plaintiff's social media hacking claim was brought under Article 2315, it does not consider Article 2315 in its analysis. Instead, the court considers factors to determine whether there is an implicit remedy in the criminal statute, rather than looking to the *explicit* remedy provided in Article 2315. *Morales*, 2022 WL 2264178, at *1, *6.

4

methodology, which requires courts to look primarily to statutes as opposed to common law or the doctrine of *stare decisis*. *Id.*[3] Here, because by its plain terms, Article 2315 has no limitation prohibiting a cause of action when a criminal statute proscribes the same conduct, a court should not graft such a standard onto the statute. Because Mr. Levy cannot identify any decision of the Louisiana Supreme Court holding that Ms. Shuster cannot recover under Article 2315 for sexual assault, civil stalking, and civil cyberstalking, this Court is required to follow Louisiana's civilian law system and look primarily to the text of the statute itself. Nothing in that statute prohibits a civil claim under Article 2315 for sexual assault, civil stalking, and civil cyberstalking, and accordingly the motion should be denied as to these claims. So holding is consistent with *Kahoe* and *Hakim*, cited above, which treat Louisiana criminal law as defining a standard of care for purposes of civil claims under Article 2315.

## II. Ms. Shuster's Counterclaims Are Timely Under Colorado's Counterclaim Revival Statute, Which Supersedes Any Contrary Choice-of-Law Analysis.

Mr. Levy next argues that Ms. Shuster's third, fourth, and eighth counterclaims are untimely under Louisiana's one-year statute of limitations, which he insists should be given effect under Colorado law. These counterclaims' timeliness is governed by the law

---

[3] "To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court. In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case. In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of jurisprudence *constante*, is a secondary source of law in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206-07 (citations omitted).

of the forum, including any conflict-of-law rule that Colorado would apply. In the Motion, when applying that principle, Mr. Levy focuses on the wrong Colorado statute.

In this case, Colorado's borrowing statute, C.R.S. § 13-80-110, is expressly trumped by the (neighboring and simultaneously enacted) counterclaim revival statute, C.R.S. § 13-80-109. *See Jenkins v. Panama Canal Railway Co. (Jenkins II)*, 208 P.3d 238, 240 (Colo. 2009), *aff'g sub nom. Jenkins v. Haymore (Jenkins I)*, 208 P.3d 265 (Colo. App. 2007). The revival statute excepts compulsory counterclaims from "the limitation provisions of this article [80 of Title 13]," allowing such counterclaims to be brought if "commenced within one year after service of the complaint by the opposing party and not thereafter." *Id.* Accordingly, Ms. Shuster's counterclaims—brought within one year after Mr. Levy's complaint—are timely under Colorado law regardless of whether they would have been time-barred in Louisiana.

As Mr. Levy recognizes, a federal court sitting in diversity begins by applying the substantive law of the forum state, including any choice of law principles it would apply. [Doc. 88 at 5] (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Thus, a federal court in a diversity case must apply the same statutes of limitations that a state court of the forum state would apply to the case." *Chemiti v. Kaja*, No. 13-CV-00360-LTB-KMT, 2015 WL 585594, at *2 (D. Colo. Feb. 11, 2015).

The Colorado borrowing statute, C.R.S. § 13-80-110, is the exclusive conflict-of-law rule that determines when Colorado law gives effect to another jurisdiction's shorter statute of limitations. *See Jenkins II*, 208 P.3d at 240. In light of the borrowing statute, this inquiry is not subject to any other choice-of-law analysis, such as the "limitations act," C.R.S. § 13-82-104, *repealed by implication as recognized in Jenkins II*, 208 P.3d 238,

6

which is advanced by Mr. Levy. Indeed, despite citing *Jenkins II*, *see* [Doc. 88 at 5 n.1, 6], Mr. Levy ignores its actual holding: that the later-enacted borrowing statute repealed the limitations act "by implication." *Jenkins II*, 208 P.3d at 243-44 ("In general, we hesitate to repeal a statute by implication. . . . However, as discussed above, we assume the General Assembly is aware of its enactments[] . . . . Because the conflict between these statutes cannot be resolved on specificity and the borrowing statute is the more recent enactment, we hold the borrowing statute applies to Jenkins's claims in this case.").

Indeed, "borrowing statutes have traditionally been regarded as choice of law provisions," and subjecting them to another layer of choice-of-law analysis "would increase the possibility of an 'eternal renvoi'—a situation in which two jurisdictions' statutes create an endless loop by indicating that the other's law should apply." *Jenkins I*, 208 P.3d at 268; *see also Wyatt v. United Airlines, Inc.*, 638 P.2d 812, 813 (Colo. App. 1981) (holding that borrowing statute preempts application of common law conflict-of-law rule to statute of limitations issue).[4] Accordingly, the borrowing statute exclusively determines whether any shorter Louisiana limitations period must be given effect under Colorado law.

---

[4] Some practitioners and courts have overlooked that the borrowing statute is the controlling conflict-of-law test for whether a shorter out-of-state limitations period is given effect under Colorado law. *See, e.g.*, *Chemiti*, 2015 WL 585594, at *2 (assuming, without analysis, common law conflict-of-law rule governs same); *Lehman Bros. Holdings v. Universal Am. Mortg. Co., LLC*, 660 F. App'x 554, 558 n.2 (10th Cir. 2016) (unpublished) (citing limitations act as controlling test for same, with no explicit analysis or recognition of *Jenkins II*); *contra. Wyatt*, 638 P.2d at 813; *Jenkins II*, 208 P.3d at 243-44. Although Mr. Levy does not contend otherwise, *see* [Doc. 88 at 5-7], Ms. Shuster also notes that the common law rule applied in *Chemiti* is inapplicable where, as here, a statutory conflict-of-law directive is dedicated to the issue. *See Wyatt*, 638 P.2d at 813; Restatement (Second) of Conflict of Laws § 6(1).

7

To "prevent forum shopping," *Jenkins II*, 208 P.3d at 243, the borrowing statute imports any shorter limitation period of another jurisdiction where a cause of action arises. C.R.S. § 13-80-110. Notably, however, a defending party's compulsory counterclaims—which pose no forum-shopping concerns—are ***expressly excepted*** from the "limitations provisions of this article [80 of Title 13]" and revived for "one year after service of the complaint by the opposing party" under the immediately preceding statutory section, C.R.S. 13-80-109. *See Makeen v. Hailey*, 381 P.3d 337, 341 (Colo. App. 2015) ("[T]his section permits otherwise time-barred claims to be filed as counterclaims, if compulsory, within one year of service of the complaint that includes the claim that gives rise to the counterclaims."). This "counterclaim revival" statute provides:

> *Except for causes of action arising out of the transaction or occurrence which is the subject matter of the opposing party's claim,* the limitation provisions of this article shall apply to the case of any debt, contract, obligation, injury, or liability alleged by a defending party as a counterclaim or setoff. *A counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter.*

C.R.S. § 13-80-109 (emphasis added). Colorado courts have broadly construed this statute in favor of revival to protect defending parties like Ms. Shuster. *See, e.g.*, *Makeen*, 381 P.3d at 342-43.

Although Ms. Shuster is unaware of any case addressing whether the counterclaim revival statute supersedes the borrowing statute, its plain language, its purpose, and the analytical framework set forth in *Jenkins II* uniformly reflect that it does. The counterclaim revival statute's plain language makes clear that there is no conflict between these two statutes, as it unqualifiedly eschews all other "limitations provisions of this article [80]," including the very *next section of that article*. This interpretation also aligns with both

8

statutes' objectives—put simply, while a defending party has little ability to pick her forum, it deters gamesmanship by her opponent that would force her to litigate with one hand tied behind her back. *E.g.*, *Duell v. United Bank of Pueblo, N.A.*, 892 P.2d 336, 343 (Colo. App. 1994) (Tursi, J., concurring) ("[The] party with a greater time frame in which to file . . . is prevented from waiting until opposing party's claim becomes stale before instituting an action.").[5] "Further, since there is little evidence that the facts surrounding the transaction would be unavailable to either party, fairness is achieved by allowing the defensive use of a counterclaim" as well. *Id.* Under the framework in *Jenkins II*, 230 P.3d at 241-42, any conflict between the application of the counterclaim revival statute and the borrowing statute in this case would, under Colorado law, resolve in favor of the revival statute as it (1) is equally, if not more, specific, *cf. id.* at 243; (2) was enacted simultaneously, *see* Ch. 114, sec. 1, §§ 13-80-109 to -110, 1986 Colo. Sess. Laws. 695, 700, *available at* http://hdl.handle.net/10974/session:19392; and (3) provides the longer limitations period, *see Jenkins II*, 238 P.3d at 242 ("If neither specificity nor recency can resolve a conflict between two different statutes of limitations, . . . the statute providing the longer limitations period prevails.").

Finally, each of the challenged counterclaims qualifies for revival. Under C.R.S. § 13-80-109, which tracks C.R.C.P. and Fed. R. Civ. P. 13(a), "revival turns on whether

---

[5] In light of this unfairness to defending parties, even if the (implicitly repealed) limitations act applied here, *contra. Jenkins II*, 230 P.3d at 243-44, Colorado's substantially different limitations period under the counterclaim revival statute—enacted to remedy that unfairness—would still supersede any shorter Louisiana limitations period, *see id.* at 243 ("[T]he limitations act contains an 'escape' clause, which assigns Colorado's limitations period to cases otherwise subject to another limitations period when that other limitations period would be unfair.") (citing C.R.S. § 13-82-106).

the counterclaim was a compulsory one." *Plains Metro. Dist. v. Ken-Caryl Ranch Metro. Dist.*, 250 P.3d 697, 702 (Colo. App, 2010). Under Colorado law,

> [a] counterclaim is compulsory if it is "logically related" to the subject matter of the opposing party's claim. Logical relationship "is a broad, flexible, and practical standard, which prevents the filing of a multiplicity of actions and encourages the resolution of all disputes arising out of a common factual matrix in a single lawsuit." A counterclaim may be compulsory where the factual and legal issues in both it and the complaint are "offshoots" of the same controversy.

*Id.* (citations omitted); *see also Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007) ("[W]e look to state law to determine if a claim is a compulsory counterclaim . . . .").

Here, Ms. Shuster's counterclaims are "logically related" to Mr. Levy's claims. *Plains Metro Dist.*, 250 P.3d at 702. The parties' controversy concerns the very nature of their prior relationship—specifically, whether Mr. Levy sexually assaulted and otherwise abused Ms. Shuster, as well as the circumstances that led to his departure from Tulane. Accordingly, each of her counterclaims premised on Mr. Levy's abuse during and after that relationship—which, if successful, tend to demonstrate that her statements alleged by Mr. Levy to be defamatory were substantially true—are plainly compulsory and therefore revived by C.R.S. § 13-80-109. *See E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 40-41 (Colo. App. 2010) (deeming counterclaims compulsory and revived under C.R.S. § 13-80-109 where, if counterclaimant "were to prevail," plaintiff "would be unable to establish" its claim).

### III. Ms. Shuster has Stated a Claim Under the Stored Communications Act.

Finally, Mr. Levy argues he should be granted judgment on the pleadings as to Ms. Shuster's seventh counterclaim, for violations of the Stored Communication Act ("SCA").

10

This counterclaim arises out of Mr. Levy's admitted and repeated efforts to access Ms. Shuster's private social media accounts for months after the couple's relationship had ended.

Mr. Levy seeks dismissal based on his theory that Ms. Shuster cannot show "actual damages." In making this argument, Mr. Levy suggests that actual damages are "necessary" to allege a violation of the SCA. *See* [Doc. 88 at 12]. That is incorrect, and in making this argument, Mr. Levy has mischaracterized controlling law and ignored key portions of the Tenth Circuit's findings in *Seale v. Peacock*, 32 F.4th 1011, 1021-22 (10th Cir. 2022).

In *Seale*, the Tenth Circuit, like other circuit courts of appeal that have addressed the issue, found that to qualify for statutory damages of a minimum of $1,000 under the SCA, a plaintiff must show that she suffered "actual damages." *Id.* at 1027. The Tenth Circuit did not find, however, that emotional distress damages, as alleged in Ms. Shuster's counterclaim, are insufficient as a matter of law to constitute "actual damages" sufficient to support a statutory damages award. While courts in this District have not addressed this specific issue under the SCA, courts have repeatedly held under other federal statutory frameworks that likewise involve private parties that emotional distress damages qualify as "actual damages." *See, e.g.*, *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1183 (10th Cir. 2013) (emotional distress damages constitute actual damages under Fair Credit Reporting Act ("FCRA")); *Villanueva v. Acct. Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1078 (D. Colo. 2015) (citing cases and finding that although specific economic damages may be difficult for a Fair Debt Collection Practices Act ("FDCPA") plaintiff to quantify, one may recover actual damages for personal humiliation,

11

embarrassment, mental anguish, or emotional distress); *Christensen v. Johnson Smith & Assocs.*, No. 2:19-CV-00676-BSJ, 2021 WL 66550, at *3 (D. Utah Jan. 7, 2021) (citing numerous cases and finding that courts interpret "actual damages" to include damages for mental anguish or emotional distress under FDCPA); *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1199 (D. Utah 2019) (same).

In her Answer to First Amended Complaint and Amended Counterclaims [Doc. 57], Ms. Shuster has alleged that after the couple's relationship ended in early November 2021, Mr. Levy relentlessly texted, called and stalked her, and began to sign into and unlawfully access her social media accounts to monitor and track her activities and private messages. *See* [*id.* at ¶¶ 36-37]. Due to Mr. Levy's harassment, stalking and cyberstalking, Ms. Shuster became increasingly afraid of him and began to spend more and more time off campus, which negatively impacted her ability to attend classes, study, and interact with professors, school administrators, and other students. Despite repeated requests by Ms. Shuster that Mr. Levy stop contacting her, he persisted in calling, texting, and otherwise trying to reach Ms. Shuster electronically, and also entered her dormitory illegally and broke into her room. In response to Mr. Levy's mounting stalking and harassment, Ms. Shuster went to the Tulane administration and sought a No Contact Order, which Mr. Levy then repeatedly violated over the course of several weeks. As Mr. Levy continued to physically and electronically harass and stalk Ms. Shuster, unlawfully accessing her private social media well into January 2022, Ms. Shuster was forced to retain private counsel to seek and obtain a Temporary Restraining Order and Consent Orders and Injunction. *See, e.g.,* [*id.* at ¶¶ 38, 48-49, 54-65]. She has specifically alleged that along with the abuse she endured during the parties' relationship, Mr. Levy's pattern

12

of harassment and stalking, including his unlawful access of her social media accounts, caused her substantial emotional distress, negatively impacted her life and education and caused other damages. [*Id.* at ¶ 65.][6]

Even if this Court is persuaded, however, that Ms. Shuster's emotional distress and related damages (such as the alleged impacts to her life and education) did not constitute the "actual damages" needed to support an award of statutory damages, that should not lead to dismissal of her claim for violation of the SCA. The Tenth Circuit did not hold in *Seale* that actual damages are necessary to state a legally cognizable claim under the SCA. To the contrary, the Tenth Circuit held that allegations or proof of "actual damages" are ***not*** required to support a civil claim under the SCA: it found that under "the plain language of the SCA," several forms of recovery are available even in the absence of actual damages: A "court could award actual damages/profits made by the violator/statutory damages, punitive damages, ***and/or*** costs and attorney's fees in a successful SCA action." 32 F.4th at 1025 (emphasis added). As the Tenth Circuit explained:

> [u]nlike statutory damages, the text of the SCA does not connect an award of punitive damages with a showing of actual damages. 18 U.S.C. § 2707(c). Instead, under the statute punitive damages are contingent on the "willful or intentional" nature of the SCA violation. ***SCA plaintiffs, therefore, may recover punitive damages regardless of whether they suffered any actual damages***.

*Id.* at 1028 (emphasis added). The Tenth Circuit emphasized that the availability of this alternative relief was intentional and significant in the statute: "the punitive damages

---

[6] If the Court determines that Ms. Shuster's factual allegations are deficient as to one or more of the claims, she respectfully requests that any order dismissing the claim(s) be issued without prejudice so that Ms. Shuster may then seek leave to amend her claim(s).

13

provision 'allows the statute to serve as a deterrent to would-be violators even when they think their violations will inflict no actual damages and it permits victims to recover in an appropriate case ***even when they can prove no actual damages***." *Id.* at 1026-27 (emphasis added).[7]

Consistent with the relief available under the SCA, Ms. Shuster has, in addition to actual damages, sought punitive damages and an award of her attorneys' fees for Mr. Levy's SCA violations. *See* [Doc. 57 at ¶¶ 102-103]. Mr. Levy's effort to dismiss this claim is, therefore, unsupported by Tenth Circuit law and should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Levy's Motion for Judgment on the Pleadings Regarding Counterclaims 2 through 9 should be denied.

DATED this 11th day of March, 2024.            Respectfully submitted,

  *s/ Matthew A. Simonsen*
Kimberly M. Hult
Daniel D. Williams
Matthew A. Simonsen
**Hutchinson Black and Cook, LLC**

---

[7] The Tenth Circuit's holding is consistent with decisions from numerous other federal courts, including the Fourth, and Eleventh Circuit Court of Appeals and numerous district courts. *See, e.g., Vista Marketing, LLC v. Burkett*, 812 F.3d 954, 978 (11th Cir. 2016) (regardless of whether a party can recover "actual damages" or a "violator's profits," a plaintiff may still recover punitive damages and/or attorneys' fees and costs); *Van Alstyne v. Elec. Scriptorium Ltd.*, 560 F.3d 199, 209 (4th Cir. 2009) (SCA does not connect an award of punitive damages with a showing of actual damages); *Abu v. Dickson*, No. 20-10747, 2023 WL 3668515 at *9 (E.D. Mich. May 25, 2023) (absence of actual damages does not preclude recovery under SCA for punitive damages and attorneys' fees); *Kowalski v. Camden Co. Historical Society*, No. 22-cv-4183-NKL, 2023 WL 2762031 at *5 (W.D. Mo. April 3, 2023) (even when plaintiff was not entitled to statutory damages, "[t]hat does not end the damages inquiry" as punitive damages remain available); *Benz v. PHB Realty Co.*, No. 2:22-cv-02081-HLT-TJJ, 2022 WL 3098597 at *2 (D. Kan. Aug. 4, 2022) (denying motion to dismiss as a finding or allegation of actual damages is not necessary to recover punitive damages).

921 Walnut Street, Suite 200
Boulder, CO 80302
Telephone: (303) 442-6514
Facsimile: (303) 442-6493
Kimberly.Hult@hbcboulder.com
Dan.Williams@hbcboulder.com
Matt.Simonsen@hbcboulder.com

15