IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-01149-NYW-KAS

JACOB LEVY,

    Plaintiff and Counterclaim Defendant,

v.

HOLLY SHUSTER,

    Defendant and Counterclaim Plaintiff.

---

**MR. LEVY'S REPLY IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING COUNTERCLAIMS 2 THROUGH 9**

---

Mr. Levy, through his counsel Laura A. Menninger and Jacob McMahon of Haddon, Morgan and Foreman, P.C., replies as follows to Ms. Shuster's response [Doc. 97 ("Resp.")] to his Motion for Judgment on the Pleadings Regarding Counterclaims 2 Through 9 ("Motion") [Doc. 88 ("Mot.")]:

**LEGAL STANDARD**

"Courts review a motion for judgment on the pleadings using the same standard as a motion under Rule 12(b)(6)." *Aberkalns v. Blake*, 633 F.Supp.2d 1231, 1233 (D. Colo. 2009); *accord Escobar v. Reid*, 668 F.Supp.2d 1260, 1284-85 (D. Colo. 2009).

**DISCUSSION**

**I.   MS. SHUSTER'S SECOND, FIFTH, SIXTH, AND NINTH COUNTERCLAIMS DO NOT PLEAD VALID LOUISIANA CAUSES OF ACTION.**

Ms. Shuster clarifies that her counterclaims for sexual assault (third-degree rape), civil stalking, and civil cyberstalking are not based on the corresponding

Louisiana criminal statutes.  Resp. at 2.  Rather, "[t]hese claims are brought pursuant to Louisiana Civil Code Article 2315."  *Id.* at 2-3.

### A.  Ms. Shuster abandons her ninth counterclaim.

Even if article 2315 allowed Ms. Shuster to allege her criminal counterclaims—and, as shown below, it doesn't—that would still leave her ninth counterclaim, which circularly alleges "Violation of Louisiana Civil Code article 2315."  [Doc. 57 at 29.]  *See* Mot. at 4.  This last counterclaim is an undefined amalgam of Ms. Shuster's prior allegations, including her counterclaim under the Stored Communications Act (SCA), *but see* 18 U.S.C.A. § 2708 (SCA remedies exclusive for nonconstitutional violations).  Because Ms. Shuster makes no argument in defense of her ninth counterclaim, the Court should deem the Motion confessed as to it.  *Cf. Espinosa v. Allstate Fire & Cas. Ins. Co.*, No. 22-CV-2725-WJM-STV, 2022 WL 17454506, at *2 (D. Colo. Dec. 6, 2022) (deeming motion to dismiss confessed where party failed to respond at all).

### B.  Louisiana Civil Code article 2315 does not allow Ms. Shuster's second, fifth, and sixth counterclaims.

Ms. Shuster argues that Louisiana article 2315 allows plaintiffs to use "[a]ny law," including, as alleged here, criminal statutes, to establish a civil tort duty owed under article 2315.  Resp. at 4.  She is incorrect.

As explained in the Motion, this Court should follow the lead of *Morales v. City of New Orleans*, No. CV 21-1992, 2022 WL 2264178, (E.D. La. June 23, 2022), which concluded the Louisiana criminal statute prohibiting hacking did not create a tort for a "social media hacking" by virtue of the catch-all article 2315.  *Id.* at *1, *4-6.  The *Morales* court applied the four-part test articulated in *Cort v. Ash*, 422 U.S. 66 (1975), to

determine whether a statute offers an implicit private remedy. In reply, Ms. Shuster made no argument for implying a private remedy as to these counterclaims based on Louisiana criminal statutes. *Compare id.* at *6 (*applying Cort v. Ash*, 422 U.S. 66 (1975)).

"[A] federal *Erie* court must be careful not to mistakenly invent new state law causes of action or remedies where they were not intended." *Gluck v. Casino Am., Inc.*, 20 F.Supp.2d 991, 993 (W.D. La. 1998); *id.* at 993-94 (concluding Supreme Court of Louisiana would not allow parties to leverage article 2315 to allege violations of age-discrimination laws); *see also Jones v. Child.'s Hosp.*, 58 F.Supp.3d 656, 669-70 (E.D. La. 2014) (dismissing article 2315 claim tethered to anti-discrimination law); *see also Bertaut v. Folger Coffee Co.*, No. 06-2437 GTP, 2006 WL 2513175, at *3 (E.D. La. Aug. 29, 2006) (concluding Louisiana Workers' Compensation Statute provided exclusive remedy for damages caused by an employer's negligence"); Resp. at 3-4 (citing *Jones*).

Without identifying a single Louisiana court that recognizes her counterclaims, she nevertheless asserts "it is well-established that criminal statutes can form the basis for liability under Article 2315." Resp. at 4. Her cited authorities are inapposite.

In *Kahoe v. State Farm Mut. Auto. Ins. Co.*, a negligence action from an automobile wreck, the court considered traffic laws prohibiting driving on the left, yet judgment was in favor of the defendant because the plaintiff failed to prove the defendant breached the applicable standard of care. 349 So. 2d 1345, at 1347-49 (La. Ct. App. 1977). Statutes illustrating established duties under particular circumstances do not themselves create article 2315 actions. *Accord Ross v. Willard*, No. CV 06-200-

3

A, 2007 WL 9701300, at *2 (M.D. La. Oct. 1, 2007) (explaining reference to article 2315 and traffic statutes helps court "determine the standard of care applicable to the case at bar and communicate it to the jury through proper instruction"); *Ardoin v. Hartford Acc. & Indem. Co.*, 360 So. 2d 1331, 1334-35, 1340 (La. 1978) (explaining medical malpractice statute required assessing specialists "by the degree of care ordinarily practiced by others involved in the same specialty" and concluding lower court erred by imposing additional, locality-based limitation on plaintiff).

Ms. Shuster also cites *Hakim*'s recognition that criminal statutes "may be guidelines for the court in fixing civil liability." Resp. at p. 4 (quoting *Hakim v. O'Donnell*, 144 So. 3d 1179, 1188 n.4 (La. Ct. App. 2014)). *Hakim* was a civil defamation case, where the court affirmed summary judgment for the defendant because the government-reporting privilege applied. *Id.* at 1190-91. While *Hakim*'s footnote found it "interesting" that Louisiana had a criminal defamation statute, *id.* at 1188 n.4, such was not the basis for allowing the civil defamation claim. Rather, *Hakim* recognized, in a part of the sentence Ms. Shuster omitted, that **"[c]riminal statutes are not, in and of themselves, definitive of civil liability and do not set the rule for civil liability[.]"** *Id.* (emphasis supplied).

Ms. Shuster's other authorities similarly fail to support her theory of article 2315. In *Tuyes v. Chambers*, 81 So. 265, 267 (La. 1919), the plaintiff prevailed at trial on slander and libel claims—the defendant essentially called her a deadbeat—and the supreme court affirmed. *Id.* at 266, 269. The court ruled that she sufficiently alleged reputational damage. *Id.* at 267. While her allegations "smack[ed] of . . . blackmail," a

4

felony, the court ruled only that the blackmailed person's mental suffering can supply damages for slander and libel claims, not that article 2315 provided the plaintiff a vehicle to sue for blackmail.

*Bethea v. Modern Biomedical Services, Inc.*, a medical malpractice case, recognized claims for intentional spoliation and impairment of a civil claim. No. 97-332 (La. App. 3rd Cir. Nov. 19, 1997), 704 So. 2d 1227, 1233. The court rejected the defendants' argument that there was no cause of action "where no statutory or contractual duty is imposed." *Id.* "*For purposes of this issue*, th[e] court fail[ed] to see the benefit of making a distinction between a specific statutory duty and the far-reaching duty La.Civ.Code art. 2315 imposes." *Id.* (alterations and emphasis added). *Bethea* does not reach other spoliation claims. *See Reynolds v. Bordelon*, 2014-2362 (La. June 30, 2015), 172 So. 3d 589, 600 (no cause of action under article 2315 for negligent spoliation). It does not support Ms. Shuster's leveraging article 2315 for criminal torts.

In a last-ditch effort to save her claims, Ms. Shuster argues *L.P. v. Oubre*, 547 So. 2d 1320 (La. Ct. App. 1989), shows Louisiana courts will recognize article 2315 actions even where there is "no similar causes of action in prior law." Resp. at 3. Not so. There, the parents of molested boy scouts stated negligence claims against entity defendants, but the duty there arose from "two lines of jurisprudence." *L.P.*, 547 So. 2d at 1324. Neither was novel. First, one who undertakes supervision of a child owes a duty to exercise reasonable care to protect the child from injury, and second, for special relationships, this duty extends to protection from third-party physical harm. *Id.* This

5

evolution of negligence law does not support Ms. Shuster's attempt to copy and paste criminal statutes as torts.

Finally, the slip-and-fall plaintiff in *Cuevas v. City of New Orleans*, 1999-2542 (La. App. 4th Cir. June 21, 2000), 769 So. 2d 82, simply failed to show a breach of the City's duty to reasonably maintain its property from dangerous conditions.  *Id.* at 86. And in *Sims v. New Orleans Ry. & Light Co.*, 64 So. 823 (La. 1914), the plaintiff alleged she was hurt when the car she was exiting suddenly moved, but the Supreme Court of Louisiana ordered her tort action dismissed as untimely. *Id.* at 824.

Ms. Shuster cites *no* Louisiana case allowing her counterclaims or cases allowing criminal theories under article 2315 more generally.  By contrast, sister Louisiana federal courts have recognized that article 2315 does *not* create causes of actions simply based upon criminal statutes.  The Court should grant Mr. Levy judgment on Ms. Shuster's second, fifth, sixth, and ninth counterclaims.

## II. MS. SHUSTER'S THIRD, FOURTH, AND EIGHTH COUNTERCLAIMS ARE UNTIMELY AND NOT REVIVED BY C.R.S. § 13-80-109.

Ms. Shuster agrees this Court applies Colorado's choice-of-law rules.  Resp. at 6.  The Motion demonstrated that Colorado looks to Louisiana's limitations period and that the counterclaims for assault, battery, and intentional infliction of emotional distress ("IIED") are untimely.  Mot. at 6-10.  Ms. Shuster does not dispute the applicable Louisiana limitations period nor that her claims are untimely under Louisiana law. Instead, she relies exclusively on Colorado's counterclaim revival law.  It does not save her stale claims.

The Colorado counterclaim revival statute generally allows a compulsory counterclaim brought within one year of the complaint.  *See* C.R.S. § 13-80-109.  But Colorado's borrowing statute, situated in the very next section of the same statutory scheme provides:

> If a cause of action arises in another state . . . and, by the laws thereof, an action thereon cannot be maintained in that state . . . by reason of lapse of time, the cause of action shall not be maintained in this state.

C.R.S. § 13-80-110.

The question then becomes which of the two statutes applies in this scenario: the general counterclaim revival statute, or the more specific provision that excludes untimely causes of action that "arise in another state" and which cannot be "maintained in that state"?  Colorado rules of statutory interpretation weigh entirely in favor of the second, more specific, statute.

Two general principles apply.  "First, the specific provision prevails over the general provision." *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009) (citing C.R.S. § 2-4-205).  "Second, the statute with the more recent effective date prevails." *Id.* at 242 (citing C.R.S § 2-4-206).  Here, recency is no tiebreaker because both laws were passed as S.B. 69, effective July 1, 1986, *see also* Resp. at p. 9.  Thus, rule one resolves the matter in this instance.

The borrowing statute is the more specifically applicable provision as compared with the more general counterclaim revival statute.  "A general provision, by definition, covers a larger area of the law.  A specific provision, on the other hand, acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance." *Martin v. People*, 27 P.3d 846, 852 (Colo.

7

2001).  While Colorado state court litigation typically concerns claims and counterclaims arising from Colorado events, in the more unusual case of out-of-state claims, Colorado applies a narrower, neutral rule:  equal treatment as the home state would provide.  C.R.S. § 13-80-110.

Allowing Ms. Shuster to resurrect her stale Louisiana counterclaims through section 13-10-109 would defeat Louisiana's limitations period and Colorado's policy of respecting its expiration.  *See Hamilton v. Cunningham*, 880 F.Supp. 1407, 1413 (D. Colo. 1995) (discussing Restatement (Second) Conflict of Laws and stating that "where maintenance of a claim would serve no substantial interest of the forum and the claim would be barred by the statute of limitations of a state with a more significant relationship to the parties and the occurrence, courts may decline to apply a forum statute of limitations permitting the claim and instead apply the other state's statute barring it")); *see also Gibson v. Parish*, 360 F. App'x 974, 978 (10th Cir. 2010) ("Fed.R.Civ.P. 13(a), the federal rule regarding compulsory counterclaims, 'reflects no federal policy on' the tolling or revival of counterclaims" (quoting *Fed. Deposit Ins. Corp. v. Palermo*, 815 F.2d 1329, 1340 (10th Cir. 1987))).  The borrowing statute is thus the more specific, governing rule.  *See* C.R.S. § 2-4-205; *Jenkins*, 208 P.3d at 241.

Statutory structure reinforces the conclusion.  In *Jenkins*, the Colorado Supreme Court treated the subsequent statutory rule as reserved for resolving more exceptional cases.  *See* 208 P.3d at 241-44 (beginning analysis with section 2-4-205's "the specific provision prevails" rule before resorting to section 2-4-206's "the more recent effective date prevails" rule).  The borrowing statute's placement after the counterclaim revival

law shows it is more specific. Further, the Colorado Court of Appeals has deemed the counterclaim revival statute a general provision when compared to a more specific arbitration rule. *See Pacitto v. Prignano*, 2017 COA 101, ¶ 14 (describing section 13-80-109 as "the more general limitation period . . . which applies to any civil suit").

The fact that Ms. Shuster finds herself litigating in Colorado and asserting Louisiana counterclaims that are older than Mr. Levy's claims is a predicament of her own making. She already brought litigation in Louisiana state court against Mr. Levy but did not assert these counterclaims. The parties are litigating in Colorado, and Ms. Shuster has a timeliness problem, because long after the relationship, after Mr. Levy moved far away from her, she intruded on his new life in Colorado and defamed him.[1]

There is no *renvoi*. *Cf.* Resp. at 7. The third, fourth, and eighth counterclaims arose in Louisiana and are barred by Louisiana Civil Code article 3492, so Colorado's borrowing statute bars them here, C.R.S. § 13-80-110.

### III. MS. SHUSTER'S SEVENTH COUNTERCLAIM FAILS FOR A LACK OF ACTUAL DAMAGES UNDER THE SCA.

Ms. Shuster contends her emotional distress damages count as "actual damages" under the Stored Communications Act, but again she fails to find support in the law to support her argument. The cases she cites address other statutory frameworks, and she makes no argument why they should extend to the SCA. *See*

---

[1] The timeliness issue also arises because Colorado allows for revival based on a nexus between the claim and the counterclaim, whereas Louisiana only allows 90 additional days to file an unexpired counterclaim following the "main demand." *See* Mot. at 10 (discussing La. at p. 10 (discussing La. Code Civ. Proc. art. 1041).

Resp. at 11-12.  And even if emotional damages were cognizable, Ms. Shuster has not plausibly alleged them.

When the Tenth Circuit interpreted the SCA in *Seale v. Peacock*, 32 F.4th 1011 (10th Cir. 2022), it found persuasive the Supreme Court's reading of the Privacy Act of 1974.  *See* 32 F.4th at 1022, 1025-26 (looking to *Doe v. Chao*, 540 U.S. 614 (2004)).  When *Doe* was before the Fourth Circuit, the panel assumed without deciding that the Privacy Act allowed emotional distress damages because the plaintiff's claim still failed at summary judgment.  *Doe v. Chao*, 306 F.3d 170, 181-82 (4th Cir. 2002), *aff'd on other grounds*, 540 U.S. 614 (2004).  The *Doe* plaintiff had his Social Security Number compromised and testified to the "devastating" consequences he feared for himself and his wife; he was torn "all to pieces."  *Id.* at 181.  Neither a legal violation nor conclusory statements that the plaintiff suffered emotional distress supports emotional distress damages, however.  *Id.* at 180-82.  The *Doe* plaintiff did not connect the disclosure to impacts on his behavior or physical consequences.  *Id.* at 181.  The Fourth Circuit concluded this fell "far below" the level required to survive summary judgment. *Id.*; *see Hovanec v. Miller*, 831 F. App'x 683, 684 (5th Cir. 2020) (per curiam) (affirming summary judgment against plaintiff's SCA claim where plaintiff's affidavit claiming emotional distress damages failed to connect those damages to the hacking incident).

*Seale* affirmed a Rule 12(b)(6) dismissal of the plaintiff's SCA claim because he did not connect his alleged economic harms to the alleged hack.  32 F.4th at 1027.  Similarly here, Ms. Shuster has not alleged specific losses or connected them to Mr.

10

Levy's alleged unauthorized account access.  The Court should dismiss her SCA claim for actual and statutory damages.  *See* Mot. at 12; Resp. at 13-14.

## CONCLUSION

The Court should grant Mr. Levy judgment on the pleadings with respect to Ms. Shuster's second through ninth counterclaims.

DATED this 25th day of March, 2024.

Respectfully submitted,

*s/ Laura A. Menninger*
Laura A. Menninger, No. 34444
Jacob McMahon, No. 48784
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone: 303.831.7364
Fax: 303.832.2628
LMenninger@hmflaw.com,
JMcMahon@hmflaw.com

*Attorneys for Jacob Levy*

## CERTIFICATE OF SERVICE

I hereby certify that on, March 25 , 2024, I electronically filed the foregoing *Mr. Levy's Reply in Support of his Motion for Judgment on the Pleadings Regarding Counterclaims 2 through 9* with the clerk of court using the CM/ECF system, which will send notification of such filing to all parties of record.

*s/ Holly Rogers*