IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-01149-NYW-KAS

JACOB LEVY,

    Plaintiff and Counterclaim Defendant,

v.

HOLLY SHUSTER,

    Defendant and Counterclaim Plaintiff.

───────────────────────────────────────────────────────────

**DEFENDANT AND COUNTERCLAIM PLAINTIFF'S MOTION TO COMPEL**

───────────────────────────────────────────────────────────

Defendant and Counterclaim Plaintiff Holly Shuster ("Ms. Shuster"), by and through her undersigned counsel, files this Motion to Compel under Rule 37 of the Federal Rules of Civil Procedure, seeking answers to interrogatories and documents responsive to her requests for production. In support, Ms. Shuster states as follows:

**CONFERRAL**

Undersigned counsel has attempted in good faith, but without success, to confer with counsel for Plaintiff and Counterclaim Defendant Jacob Levy ("Mr. Levy") in efforts to obtain the requested information and documents addressed below. After Ms. Shuster raised these issues in accordance with Judge Starnella's discovery dispute procedures, the Court granted Ms. Shuster permission to file the instant motion. [Doc. 100.]

**BACKGROUND**

This case arises from a violent intimate relationship between Mr. Levy and Ms. Shuster. When Ms. Shuster attempted to end their relationship, Mr. Levy proceeded to

harass and stalk Ms. Shuster, ultimately resulting in a permanent protection order against Mr. Levy and his departure from Tulane University in early 2022.

Mr. Levy asserts claims for defamation and related privacy torts against Ms. Shuster, contending Ms. Shuster mischaracterized facts about the abusive relationship in text messages sent in September 2022 to the FIJI fraternity at CU-Boulder.  Although he was never admitted to CU-Boulder after departing Tulane, Mr. Levy claims the messages prevented him from joining the CU-Boulder community, and specifically that they caused students to "cancel[] him" and his fraternity bid to be revoked.  Ms. Shuster asserts several counterclaims against Mr. Levy, including seven claims based on Mr. Levy's stalking, harassment, and various other tortious behavior directed at Ms. Shuster primarily after she attempted to end their relationship in the fall of 2021.  [Doc. 57 at ¶¶ 75-112] (Counterclaims 3-9).

## ARGUMENT

### A. Mr. Levy is required to produce written communications with third parties that refer or relate to the end of his relationship with Ms. Shuster.

Ms. Shuster's third through ninth counterclaims address a variety of tortious behavior perpetrated by Mr. Levy in the wake of (and fueled by his unwillingness to accept) the end of the parties' relationship in the fall of 2021.  Ms. Shuster accordingly requested all documents and communications that refer or relate to the end of that relationship, and Mr. Levy responded as follows:

> **REQUEST FOR PRODUCTION NO. 17:** Produce copies of all Documents and Communications that refer or relate to the end of Your relationship with Ms. Shuster.

2

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:** Mr. Levy objects to the extent that this request calls for privileged, protected information. He also objects to this request as overbroad and unduly burdensome. It calls, for example, for phone records of every call Mr. Levy made when he discussed the end of his relationship with Ms. Shuster. Given the nature of oral communications spanning years, there would be no practical means to identify all such communications—such as sorting which of Mr. Levy's calls to his parents concerned the breakup—and the request to do so is not proportionate to the needs of the case.

Mr. Levy has construed this request as seeking records of his attempts to communicate with Ms. Shuster. Contemporaneous with this Response, Mr. Levy is producing JL_2661 to JL_2744, which are marked "Confidential" under the Stipulated Protective Order. These documents are his AT&T phone records spanning November 2021 through May 2022. Calls to numbers other than Ms. Shuster's are redacted as non-responsive. With this production, and based on reasonable searches, Mr. Levy responds that he has produced all responsive documents in his possession, custody and control. He is not reproducing responsive documents—such as the parties' text messages surrounding the breakup—that were already produced by the parties or pursuant to third-party subpoenas.

Mr. Levy, through counsel, continues to make a good faith effort to identify and produce all discoverable Documents. He notes that negotiations continue between the parties regarding the search terms for a protocol for the exchange of electronic information. If a protocol is reached and searches reveal additional responsive documents, Mr. Levy will supplement his response.

As reflected above, Mr. Levy refuses to produce responsive documents other than "records of his attempts to communicate with Ms. Shuster." Mr. Levy has not produced relevant communications (many of which were likely text or other written messages) with third parties regarding the relationship's end, such as communications with his parents or other third parties about his mental health and instability, his break-in to Ms. Shuster's room, his assault and battery of Ms. Shuster, his repeated calls, messages, and approaches outside of her dorm, his illegal access of her social media, and his receipt and violations of the No-Contact Order—all of which are plainly relevant to Ms. Shuster's counterclaims. *See* [Doc. 57 at ¶¶ 75-112]. Indeed, in response to this Request, Mr.

3

Levy has produced nothing more than (1) a redacted call log spanning only seven months and (2) written communications exchanged between the parties themselves, which Ms. Shuster likewise possessed and disclosed pursuant to Fed. R. Civ. P. 26(a)(1). Mr. Levy's approach contrasts with that of Ms. Shuster, who has endeavored to produce every nonprivileged communication in her possession that even *refers* to Mr. Levy, including but not limited to all such communications discussing their relationship's end.

Moreover, Mr. Levy's objections are insufficient. A generic objection to producing "privileged, protected information" cannot justify the withholding of any responsive document or communication that was neither timely and properly identified in a privilege log nor of such an unquestionably privileged nature (e.g., confidential communications with counsel of record) that no log was required*. See Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 648-49 (D. Colo. 2004) ("A blanket claim of privilege will not suffice. The failure to produce a privilege log or production of an inadequate privilege log may be deemed a waiver of the privilege asserted.").

Further, his objection to this request as "overbroad and unduly burdensome" is explicitly premised on issues related to "oral communications," notwithstanding that this request for production of *documents* encompasses *written* communications with third parties that Mr. Levy refuses to provide. As set forth above, Mr. Levy's responsive communications with third parties about Ms. Shuster likely address numerous topics relevant to Ms. Shuster's counterclaims.

Finally, Mr. Levy cannot withhold full compliance with this request until the parties agree to an ESI protocol. The current discovery deadline is weeks away, *see* [Doc. 48], and the parties have been unable to reach an agreement. In fact, no discussions of an

4

ESI protocol have occurred for more than a month.[1] That the parties never reached a mutual agreement on an electronic search and production protocol does not relieve either party of the obligation to make a good-faith effort to identify and produce documents responsive to the other party's document requests. As Mr. Levy's counsel has asserted in a conferral email, "[d]iscussions over an ESI protocol are not good cause for [a party's] failure to timely produce responsive documents in [the] client's custody and control."

For these reasons, Mr. Levy should be compelled to produce all non-privileged documents and communications responsive to Request No. 17.

**B. Mr. Levy must identify and produce records associated with any prior treatment for medical or physical conditions that Ms. Shuster allegedly caused on a later date.**

According to his Rule 26(a)(1) disclosures, Mr. Levy's claimed damages include "approximately $2,980 [spent] on skin care treatment from a dermatologist for skin conditions caused by Ms. Shuster." [Mr. Levy's Second Supp. Discl. Under Fed. R. Civ. P. 26(E)(1), at 11 (Nov. 27, 2023)]; *accord* [Resp. to Interrogatory No. 9 (Feb. 7, 2024)]. Documents produced by Mr. Levy reveal that he received recurring dermatological treatment for undisclosed skin conditions *before* the alleged defamation in September

---

[1] Ms. Shuster's counsel has not received any response after expressing concerns on February 23, 2024, about the most recent revisions circulated by Ms. Menninger a few days earlier. These concerns included Ms. Menninger's re-insertion of around 130 unhelpful global search terms that were previously considered and rejected—many of them vulgar, including "Masturb[ate]," "Fuck," "balls," "cum," "cock," "tits," "vibrator," "jerk[]," "lube," "condom," "pussy," "blow," and "bj."

5

2022, including in January 2022 while he was attending in-person classes at Tulane. *E.g.*, JL_2421–2433, JL_2599–2600.[2]

Mr. Levy has not identified any Louisiana-based dermatologist (or one based elsewhere) or the basis, nature, and course of his prior treatment, nor has he provided any related treatment records, in response to multiple discovery requests—two interrogatories and one request for production—from Ms. Shuster:

> **INTERROGATORY NO. 10:** Identify by name, address and profession each medical provider, including without limitation all doctors, therapists, psychiatrists, psychologists, and counselors, who have examined and/or treated you for all injuries that you allegedly suffered as a result of Ms. Shuster's alleged defamation or any other alleged misconduct.
> **RESPONSE TO INTERROGATORY NO. 10:** [Omitted.][3]
>
> **INTERROGATORY NO. 11:** List all physical, mental, and emotional conditions for which you have been treated since September 2017 (five years prior to the date that you allege that Ms. Shuster defamed or otherwise harmed you) to the present. Include without limitation the nature of the condition for which you received treatment; a description of the treatment; the dates you received treatment; the names, addresses and telephone numbers of all health care providers who treated you; all counseling you received; and all medications prescribed to you, including dosage information.
> **RESPONSE TO INTERROGATORY NO. 11:** [Omitted.]
>
> **REQUEST FOR PRODUCTION NO. 10:** Produce all documents and communications that refer or relate to your alleged damages in this case.
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:** Mr. Levy has produced all such documents in his possession, custody and control.
> **Supplemental Response:** Since the date of his original response, Mr. Levy has obtained additional documents responsive to this request.

---

[2] These documents, which have been designated highly confidential by Mr. Levy, will be submitted under restriction by Ms. Shuster if requested by the Court or if this fact is disputed by Mr. Levy's response.

[3] Because Mr. Levy's responses to Interrogatory Nos. 10 and 11 are designated highly confidential and were attached with Ms. Shuster's discovery dispute chart on March 6, 2024, they are not reproduced here.

Even if Mr. Levy's prior skincare treatment is subject to the physician-patient privilege (which is doubtful in the case of any unprescribed services performed by an esthetician), any responsive information or records related to that prior treatment is not shielded from discovery here. To be sure, Ms. Shuster does not seek any "wholly unrelated" medical information or records and agrees that the above requests should be narrowed accordingly. It is well-settled that a litigant "maintains the privilege for medical records wholly unrelated to h[is] injuries and damages claimed," and that "relevance alone cannot be the test for waiver of the physician-patient privilege." *E.g.*, *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 281 (D. Colo. 2022) (Wang, J.) (citations omitted) (applying Colorado law). But where, as here, "a party has put a particular physical condition at issue, such as through claiming a specific personal injury and/or *damages for such injury*, []he has waived h[is] physician-patient privilege as to the treatment related to such conditions . . . ." *Id.* (emphasis added). Accordingly, by seeking damages "for skin conditions caused by Ms. Shuster," Mr. Levy waived any applicable privilege as to his prior treatment that relates to those conditions. *See id.* at 282-83 (compelling production of plaintiff's prior IVF treatment records for almost-five-year period preceding start of plaintiff's IVF treatment by defendants).

Finally, if, as his supplemental response suggests, Mr. Levy has withheld responsive documents obtained after the "date of his original response," these documents also must be produced. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party who has . . . responded to an interrogatory, request for production, or request for admission[ ]must supplement or correct its disclosure or response[] . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . .").

7

## CONCLUSION

For the foregoing reasons, Ms. Shuster respectfully requests that this Court order Mr. Levy to provide (1) all non-privileged documents and communications responsive to Request for Production No. 17 and (2) complete answers to Interrogatory Nos. 10 and 11, as well as all records of prior treatment responsive to Request for Production No. 10.

Dated: April 3, 2024

Respectfully Submitted,

*s/ Matthew A. Simonsen*
Kimberly M. Hult
Daniel D. Williams
Matthew A. Simonsen
**Hutchinson Black and Cook, LLC**
921 Walnut Street, Suite 200
Boulder, CO 80302
Telephone: (303) 442-6514
Facsimile: (303) 442-6493
Kimberly.Hult@hbcboulder.com
Dan.Williams@hbcboulder.com
Matt.Simonsen@hbcboulder.com