IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-01149-NYW-KAS

JACOB LEVY,

    Plaintiff and Counterclaim Defendant,

v.

HOLLY SHUSTER,

    Defendant and Counterclaim Plaintiff.

---

**MR. LEVY'S REPLY IN SUPPORT OF HIS MOTION TO CONDUCT *EX PARTE* INTERVIEWS WITH MS. SHUSTER'S HEALTHCARE PROVIDERS**

---

Plaintiff and Counterclaim Defendant Jacob Levy, through his counsel Laura A. Menninger and Jacob McMahon of Haddon, Morgan and Foreman, P.C., respectfully submits the following reply in support of his Motion to Conduct *Ex Parte* Interviews with Ms. Shuster's Healthcare Providers ("Motion") [Doc. 102-1] and in answer to Ms. Shuster's Response ("Response") [Doc. 112].

## DISCUSSION

### I.   THE CONFERRAL WAS MORE THAN ADEQUATE.

Ms. Shuster contends that the Motion "recounts inaccurately" her opposition, but her Response makes clear that she opposes the Motion.  [Doc. 112 at 2, 4, 8, 10, 12.] And during conferral, her counsel took the position that, "[W]e do not believe you are entitled to conduct interviews with these providers . . . ."  [Ex. A to Doc. 112 at 1.]

Counsel for Mr. Levy and counsel for Ms. Shuster engaged in conferral by phone and over email and exchanged case law, but, as the conferral email attached to Ms. Shuster's Response shows, there was a fundamental impasse on whether the law

allowed provider interviews in these circumstances. [*See id.* at 1-2.] Mr. Levy's counsel argued that interviews were available because Ms. Shuster had waived her privilege as to physical and mental conditions that formed the bases for her counterclaims. [*Id.* at 2.] In the view of Mr. Levy's counsel, the waiver principle and the availability of interviews are trans-substantive. [*Id.*] In other words, they do not turn on what kinds of claims Ms. Shuster is asserting or on the fact that this case is not one for medical malpractice. [*Id.*]

With this understanding of what the background law allowed, Mr. Levy's counsel sought from Ms. Shuster's counsel authority establishing that interviews would be *unavailable* here. [*Id.*] Counsel for Ms. Shuster, working from a contrary understanding that the law did not entitle Mr. Levy's counsel to conduct these interviews, sought from Mr. Levy's counsel specific authority *allowing* interviews outside the medical-malpractice context. [*Id.* at 1.] The conferral reached an impasse because it was an adequate airing of the sides' views. Ms. Shuster's argument that conferral must continue until she is provided with her requested case law or a compromise she finds acceptable is unreasonable.

As for the request by Ms. Shuster's counsel for "a reasonable proposal for interviews of some providers with suitable protection that can be used by both sides," [*id.*] Mr. Levy's reasonable proposal is simply what the law allows to both sides— voluntary provider interviews on reasonable notice to the opposing party.

2

## II. THE MOTION IS PROPERLY BROUGHT AND DOES NOT SEEK MODIFICATION OF THE SCHEDULING ORDER.

Ms. Shuster argues that (1) the Motion raises a discovery dispute and (2) requires an amendment to the Scheduling Order [Doc. 48], for which she contends there is no good cause [Doc. 112 at 4-5]. She is incorrect on both fronts.

First, Mr. Levy's Motion does not present a discovery dispute; rather, it asks the Court to confirm that the law allows counsel for the parties, outside the formal discovery process, to interview the opposing party's healthcare providers about waived conditions. [Doc. 102-1 at 5.] *See Arons v. Jutkowitz*, 880 N.E.2d 831, 838 (N.Y. 2007) ("[T]here are no statutes and no rules expressly authorizing—or forbidding—ex parte discussions with *any* nonparty . . . . Attorneys have always sought to talk with nonparties who are potential witnesses as part of their trial preparation." (footnote omitted)); [Doc. 102-1 at 4 (citing *Arons*)]. Ms. Shuster points to Magistrate Judge Starnella's Discovery Dispute Hearing Procedures [Doc. 112 at 4], but, "[t]h[o]se procedures apply to all discovery disputes before this Court, *except for* those that involve . . . non-parties," Judge Starnella Discovery Dispute Hearing Procedures at 1 (Aug. 9. 2023) (emphasis added).[1] This is not a dispute about the parties' use of the formal discovery tools. Rather, this dispute is about whether the law allows attorneys for the parties to interview non-parties outside the discovery process. Judicial officers in the District of Colorado have resolved similar disputes after parties filed motions. *See, e.g., Ogburn v. Am. Nat'l Prop. & Cas.*

---

[1] Ms. Shuster also cites the District of Colorado's Uniform Civil Practice Standards of the United States Magistrate Judges [Doc 112 at 4], but they became effective on April 1, 2024, after Mr. Levy filed his Motion on March 20, 2024.

3

*Co.*, No. 14-CV-02339-LTB-NYW, 2015 WL 5728801, at *1 (D. Colo. Sept. 30, 2015) ("This civil action is before the court on Defendant American National Property & Casualty Company's ('Defendant') Motion to Meet *Ex Parte* With Certain Medical Providers . . . ."); *Mena v. Costco Wholesale Corp.*, No. 19-CV-02531-LTB-NRN, 2020 WL 13499469, at *1 (D. Colo. Jan. 13, 2020) ("This matter comes before the Court on Defendant Costco Wholesale Corporation's ('Costco') Motion for Independent Informal Meetings with Certain of Plaintiff's Health Care Providers."). The Motion is properly before the Court.

Second, the Motion does not seek to amend the Scheduling Order [Doc. 48]. Ms. Shuster seems to read the Scheduling Order as memorializing an agreement that there would be no informal discovery [Doc. 112 at 4; *see also id.* at 4-5 ("The Scheduling Order itemizes all of the discovery that is to be permitted in this case, and ex parte interviews of treating mental health providers are not included.")], but the Scheduling Order, rather than foreclosing informal discovery, simply reflects that the parties had not made any separate agreements for informal discovery: "**Statement concerning any agreements to conduct informal discovery:** None." [Doc. 48 at 9.] Given Ms. Shuster's opposition to the interviews, there is still no agreement about conducting informal discovery, but the relief requested by Mr. Levy's Motion—an Order allowing his counsel to interview Ms. Shuster's treatment providers about her waived conditions [Doc. 102-1 at 5]—does not require any amendment of the Scheduling Order.

4

### III. THE AVAILABILITY OF REMOTE DEPOSITIONS IS NOT RELEVANT.

Ms. Shuster argues the Court should deny the Motion because "there is no impediment to [Mr. Levy's] counsel conducting deposition of these witnesses . . . ." [Doc. 112 at 7; *see id.* (discussing the efficiency of Zoom depositions).] But as Mr. Levy explained, taking depositions "is costly and more formal." [Doc. 102-1 at 6.] Denying informal interviews—which can help a party decide whether a deposition is worthwhile—channels all efforts to learn about the case into the formal tools of discovery, providing an advantage to the better-resourced party. During this litigation, counsel for Ms. Shuster has claimed to enjoy this advantage, but regardless of who has deeper pockets, allowing both parties informal interviews furthers the aims of the Federal Rules by affording a less expensive mechanism to learn about the case. [*See id.*]

The different procedures for informal interviews and depositions give rise to the formats' relative benefits and drawbacks. Ms. Shuster seeks the deposition format, arguing that it allows her counsel to object and seek Court intervention and even that "it is likely (or at the very least, quite possible) that the scope of permissible questioning would be tested during any examination of these witnesses, whether at deposition or in an informal interview." [Doc. 112 at 7; *see id.* at 8.]

Ms. Shuster's fears of the informal interview are overstated. Mr. Levy seeks voluntary interviews "limited to relevant, non-privileged information" with reasonable notice to the opposing party "to address privilege concerns." [Doc. 102-1 at 3-4.]

Ms. Shuster states that an interview with Dr. Lori Evans in particular risks disclosure of protected information because Dr. Evans has served as "the Shusters'

5

family therapist," [Doc. 112 at 8], but counsel for Mr. Levy has no intention and no incentive to inquire about the conditions of other Shusters because the relevant conditions to the case are Ms. Shuster's. Relatedly, there is no basis for Ms. Shuster's fears that counsel for Mr. Levy "would probe these mental health providers" for unrelated medical or sexual conditions. [*Id.* at 6.] Mr. Levy's interest is in the conditions Ms. Shuster has put at issue. Ms. Shuster further contends that the interviews would be highly intrusive but also that she has already produced the relevant treatment records. [*Id.* at 1, 5.] The disclosure of treatment records undercuts the intrusiveness argument, but it does not obviate the need for interviews, *see Arons*, 880 N.E.2d at 842 ("[I]nformation does not fall outside the waiver merely because it is captured in the treating physician's memory rather than on paper . . . .").

Counsel for Ms. Shuster points to a deposition where, during questioning by Mr. Levy's counsel, the non-party witness's attorney (the witness's mother) found objectionable discussion of graphic text messages. [*See* Doc 112 at 8 & Ex. B.] This led to the Court intervening by phone and prohibiting a line of questioning, but counsel for Mr. Levy honored the Court's ruling. [Ex. B to Doc. 112 at 5.] There is no basis for speculating that Mr. Levy's counsel would not adhere to the limits of Ms. Shuster's waiver in interviewing her healthcare providers. *See Samms v. Dist. Ct., Fourth Jud. Dist. of State of Colo.*, 908 P.2d 520, 528 (Colo. 1995), *as modified on denial of reh'g* (Jan. 8, 1996) ("[I]t must be presumed that both attorneys and physicians will conduct themselves ethically.").

6

In one of the cases Ms. Shuster cites, *Smith v. Davis*, [Doc. 112 at 12], the court rejected arguments that attorneys for the party seeking physician interviews would "exert undue influence on the physician witnesses" because "physicians are sophisticated witnesses"; the physicians were not litigants; and the "attorneys are constrained by their own ethical obligations to conduct witness interviews in an appropriate manner." No. 1:18-CV-02883-RM-STV, 2019 WL 1045883, at *4 (D. Colo. Mar. 5, 2019); *see id.* (permitting defense counsel to interview certain physicians outside the presence of the plaintiff and his counsel).

Ms. Shuster also downplays the procedural protections available from informal interviews, which are by design limited in scope and voluntary. *See Arons*, 880 N.E.2d at 838 ("In sum, an attorney who approaches a nonparty treating physician (or other health care professional) must simply reveal the client's identity and interest, and make clear that any discussion with counsel is entirely voluntary and limited in scope to the particular medical condition at issue in the litigation."); *id.* at 842 ("[I]t bears repeating that the treating physicians remain entirely free to decide whether or not to cooperate with defense counsel."); *see also Smith*, 2019 WL 1045883, at *4. The availability of depositions should not prohibit interviews about Ms. Shuster's waived conditions.

**IV. THE COURT HAS AUTHORITY TO AND SHOULD AUTHORIZE MR. LEVY TO CONDUCT VOLUNTARY INTERVIEWS WITH MS. SHUSTER'S HEALTHCARE PROVIDERS ON REASONABLE NOTICE TO HER COUNSEL.**

"Discovery in federal court is governed by the Federal Rules of Civil Procedure, regardless of whether jurisdiction is based on a federal question or diversity of citizenship. Where, as here, the case is based upon a state cause of action, state law

7

controls the determination of privileges." *Zander v. Craig Hosp.*, 267 F.R.D. 653, 658 (D. Colo. 2010) (alterations, citations and quotations omitted); *see also Ogburn*, 2015 WL 5728801, at *2.  Here, Ms. Shuster does not make any arguments about underlying state-law privilege, and, as she acknowledges, this Court has allowed interviews with medical providers in appropriate cases [Doc. 112 at 10].

Ms. Shuster asks that, if the Court allows interviews, it limits them to relevant, non-privileged information and requires reasonable notice to the opposing party.  [*Id.* at 10-11.]  This is what Mr. Levy requested.  [Doc. 102-1 at 3-4.]  Relatedly, Mr. Levy already acknowledged that such interviews require counsel to make clear that the medical provider's participation is voluntary.  [*Id.* at 4-5; *see* Doc. 112 at 12.]

By contrast, the Court should not indulge Ms. Shuster's request that her "counsel *must* be present for any interview."  [Doc. 112 at 11 (emphasis added).]  The reasonable-notice requirement is sufficient and allows Ms. Shuster's counsel to participate, to the extent they are available at a time that is mutually agreeable for Mr. Levy's counsel and the interview subject, while preventing scheduling difficulties on the part of Ms. Shuster's counsel from foreclosing interviews with willing subjects.  *See Samms*, 908 P.2d at 529 ("[A] trial court has authority to permit a defense attorney to conduct informal interviews with a plaintiff's treating physicians *in the absence of the plaintiff or the plaintiff's attorney* about matters not subject to a physician-patient privilege *so long as the plaintiff is given reasonable notice* of such interviews to permit the plaintiff or the plaintiff's attorney to attend or to take other appropriate steps to ensure that privileged information will not be discussed." (emphases added)).

The Court should grant Mr. Levy's Motion and permit his counsel to interview the four identified providers about the conditions Ms. Shuster has put at issue in this litigation.

## CONCLUSION

The Court should grant the Motion.  [Doc. 102-1.]

DATED this 29th day of April, 2024.

Respectfully submitted,

*s/ Jacob McMahon*
Laura A. Menninger, No. 34444
Jacob McMahon, No. 48784
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone:303.831.7364
Fax: 303.832.2628
Email: LMenninger@hmflaw.com

*Attorneys for Jacob Levy*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2024, I electronically filed the foregoing *MR. LEVY'S REPLY IN SUPPORT OF HIS MOTION TO CONDUCT* EX PARTE *INTERVIEWS WITH MS. SHUSTER'S HEALTHCARE PROVIDERS* with the clerk of court using the CM/ECF system, which will send notification of such filing to all parties of record.

*s/ Holly Rogers*