IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01149-NYW-KAS

JACOB LEVY,

    Plaintiff/Counterclaim Defendant,

v.

HOLLY SHUSTER,

    Defendant/Counterclaim Plaintiff.
_____

## MINUTE ORDER
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Defendant's **Unopposed Motion to Restrict Response to Motion to Conduct Ex Parte Interviews (Dkt. 112)** [#113] (the "Motion"). In accordance with D.C.COLO.LCivR 7.2(d), the Motion to Restrict [#113] was publicly posted to allow for any objections to the sealing of the documents. No timely objections were filed.

    Defendant moves for "Level-1 Restricted protection for the documents filed at Dkt. ## 112, 112-1, and 112-2." *Motion* [#113] at 2. These documents are **Defendant's Response to Plaintiff's Motion to Conduct Ex Parte Interviews of Mental Health Providers** [#112] (the "Response"), as well as **Exhibit A** [#112-1] (an email chain among counsel from February 13, 2024, through February 23, 2024) and **Exhibit B** [#112-2] (excerpts from the Mitchell Crist deposition). The stated bases for restriction are that (1) "the response brief and accompanying exhibits identify her mental health providers and contain details regarding party and non-party mental health treatment" and (2) "the deposition transcript excerpts attached as an exhibit were designated confidential on the record because they concern a line of questioning this Court determined at a hearing on the record was inappropriate in its sexual content." *Id.*

    "A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011). The moving party must articulate "a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Id.* at 1135-36.

**A.     The Response [#112] and Exhibit A – February 13-23, 2024 email chain [#112-1]**

Here, the Court finds that Defendant's interest in privacy does not outweigh the presumption of public access to Court files. "[S]tipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction." D.C.COLO.LCivR 7.2(c)(2). Importantly, the parties "do[] not sufficiently explain why restriction of" medical providers' names "is necessary to protect any Party's sensitive . . . information." *All Plastic, Inc. v. SamDan LLC*, No. 20-cv-01318-NYW, 2021 WL 5067405, at *3 (D. Colo. Aug. 26, 2021). Relatedly, the parties do not explain why the Court should consider *the names* of experts and medical providers to be sensitive or private information. The Court could not find cases through its own research where *the identities* of medical providers, as opposed to medical records, were restricted.

The Court finds that several factors weigh heavily against restricting this information. First, these providers have been endorsed as non-retained experts, which means that they may testify at trial, a proceeding that will be open to the public. *See Response* [#112] at 7 ("Each of the four mental health providers Plaintiff seeks to interview has been designated as a non-retained expert witness in this case."). The Court finds that this weighs heavily against redacting their identities.

Second, the Response's [#112] descriptions of these providers are broad and do not reveal any intimate details that could support restriction. *See, e.g., Response* [#112] at 2 (identifying various providers as "Family therapist"; "Treating therapist since September 2022"; "Treating psychiatrist"; and "Former treating therapist for Ms. Shuster prior to her attending Tulane"). The Response does not even identify any specific practice areas and is, therefore, much less detailed than Defendant's own assertions in her counterclaims. *See, e.g.*, *Answer to First Amended Complaint and Amended Counterclaims* [#57], ¶¶ 76-78 (alleging that Plaintiff engaged in harmful and offensive contact with Defendant, "including but not limited to, sexual abuse" and "physical abuse").

The same is true of Exhibit A, the conferral email between counsel. *See Exhibit A* [#112-1]. Most of the exhibit consists of counsel's attempts to schedule conferral discussions, along with defense counsel's legal argument to support her request for ex parte interviews. *Id.* at 1-4. Exhibit A also lists the same four providers by name, but the email chain contains no additional information about the medical care they provided. *See id.* at 4 (naming "the following providers who have seen Ms. Shuster: Glenn Lowe, Lori Evans, Sarah Figueroa, and Allison Taylor"), 1 (stating that some providers, "like Ms. Evans, will have privileged medical information about nonparties" and arguing that Plaintiff is not "entitled to conduct interviews with these providers, particularly Ms. Taylor and Ms. Evans"). The Court does not see any substantial interest in protecting such vague, high-level references to non-retained experts.

Third, Defendant/Counter-Plaintiff has placed her mental or physical condition at issue in this case and, therefore, she has impliedly waived her physician-patient privilege with respect to those conditions. *Alcon v. Spicer*, 113 P.3d 735, 737-39 (Colo. 2005) (holding that a litigant waives physician-patient privilege by putting her physical or mental condition at issue).

Finally, the District Judge has already ruled that the "sensitive and personal" nature of the allegations neither outweighs the presumption of public access nor entitles the parties to proceed anonymously. *See Minute Order* [#25] at 5 (denying Motion to Restrict Party Names [#2]); *Minute Order* [#82] at 6 (denying reconsideration of the Minute Order [#25] and ordering that all previously restricted documents, including pleadings, would become unrestricted on January 2, 2024). This Court has also ruled that the *names* of medical providers did not merit special protection. *See Minute Order* [#124].

**B.     Exhibit B – Crist Deposition Excerpts [#112-2]**

The Court also finds that the parties have failed to demonstrate any substantial interest that justifies restriction of the Crist deposition excerpts. While Defendant is correct that the Court found a line of questioning in these excerpts was inappropriate, she misunderstood the basis of the Court's concern. *Motion* [#113] at 1. In this line of questioning, a non-party was asked about the interpretation of text messages that he had never seen before, in which the Defendant referenced sexual assault by Plaintiff. *Exhibit B – Dep. of Crist* [#112-2] at 185:1-3 (testifying that he had never seen the communications before). The deponent's counsel objected to questioning her client about his opinion of text messages to which he was not a party, and she called the Court. *Id.* at 186:24-189:17.

Defendant appears to have misunderstood the Court's concern. The Court focused on "when, if ever, did [the deponent] previously see the text messages that he's being asked about?" *Exhibit B – Dep. of Crist* [#112-2] at 194:9-13. Counsel responded that the deponent had not, and the Court stated that "[I]t seems to me the only proper question is, did – is to ask [the deponent] if he saw the text messages. When he testifies that he hasn't seen the messages, that's it. I mean, I don't understand . . . the relevance of his opinions as to what that message means that he's never seen. That message was not directed to him. He's not a psychologist. He's not an expert. So what relevance does it have[?]". *Id.* at 194:21-195:6. The Court later clarified, after hearing back the line of questions, that the deponent had no basis to opine on what the communications suggested because "[h]e's not an expert. He didn't receive those communications. He has no idea." *Id.* at 199:9-10. The protective order was limited to "no questioning—further questioning allowed about what [the deponent] thinks these messages mean or convey about [Defendant's] desire or lack of desire to have sex with [Plaintiff]." *Id.* at 199:22-25. Asked one last time, the Court clarified that "it is inappropriate to ask [the deponent] what he thinks these messages mean. The text speaks for – for itself." *Id.* at 200:24-25.

3

The problem with the deposition excerpts concerns counsel's repeated attempts to elicit a lay witness's opinion on the meaning of text messages which he testified he had never seen before, opinion testimony that could not possibly be relevant or admissible. Just because this line of questioning was inappropriate, and the court granted a protective order, does not mean that the excerpts automatically warrant restriction.

Again, the Court finds no basis to restrict this information. The deponent barely participated in this section of the deposition, which was primarily a dispute between counsel mediated by the Court. The only quoted section of the text messages stated that "He forced me to have sex with him multiple times a day, every day" which is no more detailed or graphic than Defendant's denials in her answer. *See, e.g.*, *Answer to First Amended Complaint and Amended Counterclaims* [#57], Answer at ¶¶ 10 (denying that all sexual contact with Plaintiff was consensual; "rather, on multiple occasions it was coercive, assaultive, and nonconsensual"), 12 (denying that Defendant "initiated or enjoyed the kind of violent sexual encounters that [Plaintiff] consistently pressured her to engage in with him"). The same holds true for another text message discussed during the Crist deposition, which counsel described 'by way of example"—it is no more detailed than allegations in Defendant's counterclaims. *Compare Exhibit B – Dep. of Crist* [#112-2] at 191:25-192:4; *with Answer and Counterclaims* [#57], Counterclaims at ¶ 13.

Finally, as previously stated in Section A, above, the District Judge has already ruled that the "sensitive and personal" nature of the allegations neither outweighs the presumption of public access nor entitles the parties to proceed anonymously.

**C.     Conclusion**

The Court finds that the parties have failed to identify an interest that justifies restriction of this information. *See* D.C.COLO.LCivR 7.2(c)(2). Likewise, the parties have failed to identify a clearly defined and serious injury that justifies restriction of this information. *See* D.C.COLO.LCivR 7.2(c)(3). For the foregoing reasons, the Court does not find that restriction of these documents is warranted. Accordingly,

IT IS HEREBY **ORDERED** that the Motion to Restrict [#113] is **DENIED**.

IT IS FURTHER **ORDERED** that the Clerk of Court is directed to **LIFT RESTRICTION** on the following documents: Defendant's Response to Plaintiff's Motion to Conduct Ex Parte Interviews of Mental Health Providers **[#112]**; Exhibit A – February 23, 2024 email between counsel **[#112-1]**; and Exhibit B – Dep. of Crist **[#112-2]**.

Dated: May 16, 2024

4