## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-01149-NYW-KAS

JACOB LEVY,

    Plaintiff and Counterclaim Defendant,

v.

HOLLY SHUSTER,

    Defendant and Counterclaim Plaintiff.

---

**MR. LEVY'S RESPONSE TO MS. SHUSTER'S MOTION TO PRECLUDE TESTIMONY OF EXPERT DR. KATHRYN JENS PURSUANT TO FRE 702**

---

Plaintiff and Counterclaim Defendant Jacob Levy, through his counsel Laura A. Menninger and Jacob McMahon of Haddon, Morgan and Foreman, P.C., respectfully responds to Holly Shuster's motion seeking to preclude testimony from Mr. Levy's endorsed rebuttal expert, Dr. Kathryn Jens.  [Doc. 134.]

Dr. Jens is a highly qualified expert in clinical psychology with a specialization in post-traumatic stress disorders who employed the well-respected and reliable methodology of her field.  Ms. Shuster offers nothing but frivolous quibbles about Dr. Jens.  According to Ms. Shuster, the jury should accept the testimony of her expert who unquestioningly believed her, ignored the possibility (and even likelihood) that she is lying about both her symptoms and their cause, and overlooked many scientifically-

validated red flags.  Ms. Shuster's Motion to Preclude, like her false narrative of sexual abuse and trauma, should be denied.[1]

## BACKGROUND

In response to Mr. Levy's claims for defamation and privacy invasion, Ms. Shuster lodged claims for sexual assault, stalking and other assorted torts.  [*See* Doc. 57 at 23- 29 (amended counterclaims).]  To bolster her credibility in the face of the proof supporting this defamation case, Ms. Shuster specially engaged clinical psychologist Donna Peters to opine on "the possible psychological effects and future impact" on Ms. Shuster from the alleged "emotional, physical, and sexual abuse . . . by Jacob Levy that occurred during the relationship" and from his alleged "stalking" after the relationship. [Ex. 2 to Doc. 134 (Dr. Peters' report) at 5; *see also id.* at 6, 19-25, 47-62.]  Dr. Peters apparently accepts without question the reliability of Ms. Shuster's narrative of abuse by Mr. Levy, despite its obvious conflict with the claims and evidence in this case.[2]

Yet, a myriad of other explanations for Ms. Shuster's reported symptoms exist, as Dr. Jens, Mr. Levy's rebuttal expert, reliably explains.  [*See* Ex. 1 to Doc. 134 (Dr. Jens' report).]  For example, Ms. Shuster reported sexual assaults by other individuals

---

[1] Ms. Shuster seeks to "preclude Dr. Jens' testimony in its entirety" [Doc. 134 at 5], but she challenges five specific opinions [*id.* at 7-13]; *see Cereceres v. Walgreen Co.*, 645 F. Supp. 3d 1110, 1117 (D. Colo. 2022) (noting similar discrepancy but declining to consider wholesale exclusion because identified opinions were admissible).

[2] Other people in Ms. Shuster's life also unquestioningly accepted and reinforced her account, as Dr. Jens notes. [Ex. 1 to Doc. 134 at 3.]  When asked during her deposition for *any* documentary evidence to support her claims of daily sexual assault by Jacob Levy over the course of a year, Ms. Shuster could only point to the therapy records of these treating medical professionals to whom she had repeated her lies. [*Id.*].

2

(before and after her relationship with Mr. Levy); her outcries in those cases appear very different from her belated claims against Mr. Levy.  [*Id.* at 1.]  Dr. Peters fleetingly acknowledged the other assaults but nevertheless attributed all of Ms. Shuster's symptoms to Mr. Levy's alleged, unproven conduct.  [Ex. 2 to Doc. 134 at 16-18, 47.].  Dr. Peters also failed to explain Ms. Shuster's test scores which suggest potentially more severe psychopathology inconsistent with a PTSD diagnosis.  [Ex. 1 to Doc. 134 at 4.].

Dr. Jens, a fellow psychologist with a specialty in PTSD, notes these and other deficiencies in Dr. Peters' report.  Dr. Peters failed to consider or explain other problems with Ms. Shuster's story, including her exaggerations and misrepresentations and her motives for fabrication, like academic accommodations obtained through reliance on her alleged "trauma" or sympathy gleaned from her social circle.  [*Id.* at 2-3.]  As Dr. Jens notes, malingering and false reporting, never considered by Dr. Peters or Ms. Shuster's treating professionals, must be considered as potential explanations for her reported symptoms; the documentary record would support such findings.  Dr. Jens provides factual support for the deficiencies in Dr. Peters' report.  She notes, for example, that Ms. Shuster texted friends and claimed she needed to leave school because her therapist had diagnosed her with severe PTSD; yet as she acknowledged during her deposition, Ms. Shuster did not even have a therapist at the time.  [*Id.* at 2.]  Nor was she even attending school at the time; she had been academically dismissed months earlier and neglected to mention that to her parents, roommate or friends.  [*Id.*]  As another example, despite claiming Mr. Levy abused her for approximately a year, Ms.

3

Shuster did not know or could not remember details about the first or more significant abuse incidents. [*Id.*.] And, despite extended Eye Movement Sensitization and Reprocessing (EMDR) therapy, Ms. Shuster had not successfully targeted the supposed trauma stemming from Mr. Levy's alleged sexual assaults.[3] [*Id.* at 3.]

Ms. Shuster's challenge to Dr. Jens is not well taken. She looks for diagnostic certainty, but Dr. Jens is not diagnosing Ms. Shuster. Dr. Jens is a rebuttal expert offering reliable opinions questioning the work done by Dr. Peters and Ms. Shuster's treating providers who unquestionably accepted Ms. Shuster's self-reported symptoms, overlooked potential alternative causes, and ignored numerous red flags in her shifting stories about the events in this case. In claiming that Dr. Jens unfairly strays into commentary on Ms. Shuster's credibility, her counsel would like to divert attention away from the fact that they intend to call Dr. Peters, other treaters, and Ms. Shuster herself to put a scientific patina of reliability on her otherwise incredible claims.

## LEGAL BACKGROUND

"As noted by the Advisory Committee when the [FRE 702] was promulgated, '[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge.'" *Stoker v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-03569-NYW, 2021 WL 4201583, at *2 (D. Colo. May 6, 2021) (quoting Fed. R. Evid. 702 Advisory Committee's note to 1937 rule).

---

[3] The possibility that Ms. Shuster has spoliated evidence, although not part of Dr. Jens' assessment, only adds to the concern that Ms. Shuster is not being truthful in her allegations against Mr. Levy. [*See* Doc. 131 (authorizing motion addressing spoliation).]

4

A two-step analysis governs admissibility. *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015). The first question asks "*whether the expert is qualified* 'by knowledge, skill, experience, training, or education' to render an opinion." *Id.* (emphasis added). "Second, the court must determine *whether the expert's opinion is reliable* by assessing the underlying reasoning and methodology, as set forth in *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)]." *Id.* (emphasis added); *see United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008). Only the second question is at issue here. [Doc. 134 at 5.]

"The plaintiff need not prove that the expert is undisputably correct. . . . Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217-18 (10th Cir. 2016) (alteration in original) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)); *see Luciano v. E. Cent. Bd. of Co-op. Educ. Servs.*, 885 F. Supp. 2d 1063, 1069 (D. Colo. 2012) (discussing FRE 702 as liberal standard under which exclusion of expert testimony is the exception rather than the rule).

Dr. Jens' challenged opinions easily clear this lenient standard.

## DISCUSSION

### I. DR. JENS' FIRST OPINION—THAT A PTSD DIAGNOSIS DOES NOT ESTABLISH WHAT CAUSED THE REPORTED SYMPTOMS—IS RELIABLE AND WELL SUPPORTED BY HER TRAINING AND EXPERIENCE.

Ms. Shuster characterizes Dr. Jens' first problematic opinion as follows: "A PTSD diagnosis does not reliably identify the trauma that caused the symptomology especially in the case of multiple traumas where the perpetrator or traumatic event can be

5

misidentified." [Doc. 134 at 7; *see* Ex. 1 to Doc. 134 at 1 ("Even if valid, however, a diagnosis of PTSD does not establish the exact cause of the trauma.").]

Ms. Shuster notes "[a]n opinion that a diagnosis of anything by itself does not identify its cause is relatively generic," but she argues Dr. Jens has insufficiently supported her opinion. [Doc. 134 at 7.]

Contrary to Ms. Shuster's assertion that Dr. Jens provided "[n]o methodology" for her opinions [*id.* at 3], Dr. Jens' applied understanding of the generic scientific truth that identifying an effect does not identify the effect's cause is, as her report states, based on her specialized experience with post-traumatic stress disorders, including in victims of sexual assault [Ex. 1 to Doc. 134 at 1]. She practices the reliable methods of clinical psychology. *See Luciano*, 885 F. Supp. 2d at 1068-70, 1072-73 (denying motions to preclude testimony by clinical psychologists with differing opinions). "Once a court is satisfied that the methodology is generally reliable, suggestions that the witness should have engaged in additional testing to achieve certainty in his or her conclusions are matters going to the weight of the opinion, not its admissibility." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008); *see Stoker*, 2021 WL 4201583, at *3 ("[T]he district court should focus on an expert's methodology rather than the conclusions it generates.").

Ms. Shuster questions how this generic opinion will help the jury. [Doc. 134 at 7.] But when causation is disputed, expert testimony about alternatives can be crucial. For example, in *Clark By & Through Clark v. Heidrick*, 150 F.3d 912 (8th Cir. 1998), parents alleged a doctor's negligent delivery injured their infant son, but the trial court allowed

6

the defendant doctor to testify as an expert, and the jury found for the defendant. *Id.* at 913-14. The Eighth Circuit rejected the parents' argument that the doctor's testimony violated FRE 702. *Id.* at 914-15. By giving the jury "a global understanding of possible causes of brachial plexus injuries," the doctor's testimony challenged causation and "rebutted the implicit suggestion that the [parents'] explanation for the injuries was the only explanation." *Id.* at 915. The testimony relied on a scientifically valid method for determining causation: "list the possible causes and eliminate as many as possible." *Id.*

Dr. Jens' general opinion as to the existence of alternative causation in psychology is reliable and helpful here because the cause of Ms. Shuster's reported symptoms is disputed. Allowing Dr. Jens to testify to her first opinion will help the jury avoid the fallacy that, if Ms. Shuster has PTSD, Mr. Levy must have caused it. The Court should allow this testimony. *See Gould v. Union Pac. R.R. Co.*, No. 19-CV-02326-PAB-NRN, 2021 WL 4428286, at *6 (D. Colo. Sept. 27, 2021) (declining to preclude expert opinion "that is it difficult to prove causation simply with medical diagnoses" because it did not deal with the jury's credibility function).

## II. DR. JENS' SECOND, FOURTH, AND FIFTH OPINIONS ARE RELIABLE, SPECIFIC EXAMPLES OF HER FIRST OPINION.

Ms. Shuster's challenges to Dr. Jens' second, fourth, and fifth[4] opinions are considered together here.

---

[4] Ms. Shuster identifies "Jens Opinions 1-4" but refers to the fifth opinion as "Dr. Jens' Alternative Hypothesis." [Doc. 134 at 7-13.]

The second opinion Ms. Shuster challenges states, "The assessment that Ms. Shuster presented in a fashion consistent with PTSD could be invalid if Ms. Shuster is malingering or false reporting." [Doc. 134 at 7; *cf.* Ex. 1 to Doc. 134 at 1 ("Sometimes the diagnosis of PTSD is not valid due to malingering or false reports.").]

The fourth opinion that Ms. Shuster challenges is that "[a]nother hypothesis explaining [her] symptoms could be that she suffers from a 'different, undiagnosed mental health disorder,'" such as Borderline Personality Disorder, Histrionic Personality Disorder, Dependent Personality Disorder and/or Alcohol Use Disorder. [Doc. 134 at 12; *see* Ex. 1 to Doc. 134 at 4.]

The fifth opinion that Ms. Shuster challenges posits the possibility "that two young adults in the duress of leaving home and adjusting to college during a pandemic, form a relationship, an unhealthy and volatile but not assaultive one, and that both are upset and traumatized by its ending." [Doc. 134 at 13; Ex. 1 to Doc. 134 at 4.]

These opinions are reliable. They are instantiations of Dr. Jens' first opinion that a PTSD diagnosis does not establish a particular past trauma as the cause of the reported symptoms. One specific reason for this could be, as Dr. Jens' second opinion holds, that the PTSD diagnosis stems from the subject's malingering or false reporting. Another reason, as her fourth opinion holds, is that the subject's reported symptoms stem not from PTSD but a different disorder, such as one of the four disorders she mentioned. Finally, as Dr. Jens' fifth opinion points out, a PTSD diagnosis stemming from the subject's relationship with a particular person does not establish that the

person assaulted the subject; it could stem from ordinary but still upsetting life events, like a relationship's end.

Ms. Shuster does not seem to dispute that a PTSD diagnosis could be warped by malingering or false reporting, misattributed to a different disorder, or stem from conduct that does not give rise to liability.  In other words, she neither disputes the possibility of alternative causation generally or that the specific alternative causes Dr. Jens identifies in her second, fourth, and fifth opinions could explain Ms. Shuster's PTSD diagnosis.

Ms. Shuster's challenge looks for diagnostic certainty from Dr. Jens but loses sight of Dr. Jens' status as a rebuttal expert.  While "[a]ffirmative opinions of causation must be valid and reliable to be admitted," *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d 680, 696 (S.D. Ohio 2016), Dr. Jens is not opining that Ms. Shuster is malingering, has a different disorder, or is merely traumatized by the end of her relationship with Mr. Levy.

"[A] rebuttal expert is permitted to rebut by merely offering alternative causes to contradict the plaintiff's expert."  *Drips Holdings, LLC v. Teledrip LLC*, No. 5:19-CV-02789-JRA, 2022 WL 17718291, at *7 (N.D. Ohio Aug. 30, 2022).  A rebuttal expert practicing reliable science "need not give an alternate causal factor within a reasonable degree of medical certainty." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d at 696; *see id.* (explaining that, where one party's expert opines that the party's injury had a particular cause, the opposing party's expert may testify that the cause of the injury cannot be determined); *see Luciano*, 885 F. Supp. 2d at 1073 (noting that rebuttal expert planned "to comment on the quality of the work done and

conclusions reached by another expert in his field . . . . That is what 'rebuttal' experts often do"); *see also Carter v. Monger*, No. 19-CV-03555-GPG, 2022 WL 1115225, at *7 (D. Colo. Apr. 13, 2022) (precluding expert from opining that plaintiff was malingering where he did not so conclude but allowing him to opine on whether plaintiff's medical record supported claimed injury).

Dr. Jens uses her expertise to critique the reliability of a claim that Mr. Levy is responsible for Ms. Shuster's symptoms; she is not diagnosing Ms. Shuster herself. *See In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 3:07-CV-00088, 2010 WL 3522753, at *4 (M.D. Ga. Sept. 1, 2010) (rejecting attempt to preclude testimony from defense rebuttal experts who would opine that plaintiffs' expert did not adequately identify and rule out alternative causes of plaintiffs' injuries and explaining "their testimony simply offers potential alternative causes and does not purport to offer an affirmative specific causation opinion"); *id.* (noting plaintiffs did not seriously contest that the rebuttal experts were "familiar with the factors that are capable of causing the injuries"). Based on her specialized experience in clinical psychology, Dr. Jens should be permitted to testify about the alternative causes she identified in her second, fourth, and fifth opinions.

Dr. Peters, Ms. Shuster's expert, *may* have reliable testimony to offer the jury—it seemingly comes down to the reliability of Ms. Shuster's claims and the reasonableness of accepting those claims wholesale—but reliable does not mean correct, and a ruling that an expert's testimony is reliable "does not necessarily mean that contradictory expert testimony is unreliable." Fed. R. Evid. 702 Advisory Committee's note to 2000

amendments; *see, e.g., Luciano*, 885 F. Supp. 2d at 1068-70, 1072-73 (declining to preclude testimony from psychologists with differing views and explaining that, just because an expert's opinions are relevant and reliable, "[t]hat does not mean that they are not fair game for criticism by another professional in the field").

As Dr. Jens points out, Dr. Peters' opinions may not be so reliable based on, among other things, the EMDR therapy's lack of efficacy. [Ex. 1 to Doc. 134 at 3.] The rule allows "testimony that is the product of competing principles or methods in the same field of expertise." Fed. R. Evid. 702 Advisory Committee's note to 2000 amendments. "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts," but the rule's requirement for "sufficient facts or data" does not require "a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *Id.* Dr. Jens' opinions derive from her reliable methodology of clinical psychology, even if Ms. Shuster disputes her conclusions.

Ms. Shuster's complaints that Dr. Jens has not sufficiently explained the basis for her opinions are without merit. Ms. Shuster discusses "the *Gould* requirements for opinions based upon an expert's experience." [Doc. 134 at 7.] *See Gould v. Union Pac. R.R. Co.*, No. 19-CV-02326-PAB-NRN, 2021 WL 4428286 (D. Colo. Sept. 27, 2021). But *Gould* imposes no requirement to relate particular clinical experiences to the opinion. "It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant." *Gould*, 2021 WL 4428286, at *1. Here, Dr. Jens'

11

method is simply the scientific method, applied within her field of psychology, of ruling out alternatives before attributing causation, and the particular alternative causes of concern here are based on her treatment experience in posttraumatic stress disorders, as her report makes clear [Ex. 1 to Doc. 134 at 1]. The opinions are reliable, and Dr. Jens should be allowed to testify. *See ADT Sec. Servs., Inc. v. Swenson*, 276 F.R.D. 278, 313-14 (D. Minn. 2011) (allowing psychologist to offer rebuttal expert testimony on alternative possibilities and stating that "observations coupled with expertise generally may form the basis of an admissible expert opinion").

At trial, Ms. Shuster can explore in greater detail why Dr. Jens' experiences brought her to her conclusions.[5] *See Daubert*, 509 U.S. at 596 (discussing opportunity for cross-examination). Further, in the unlikely event that Mr. Levy fails to lay a proper foundation, the Court could entertain a renewed motion to exclude Dr. Jens' testimony. *See Meek v. Allstate Fire & Cas. Ins. Co.*, No. 17-CV-00606-NYW, 2018 WL 3744045, at *4 (D. Colo. Aug. 7, 2018) (declining to bar doctor's opinion about right hip pain as unreliable where challenging party argued opinion was unsubstantiated by medical records but inviting motion during trial depending on foundation).

Ms. Shuster also erroneously argues that raising alternative causes for a PTSD diagnosis amounts to impermissible comment on her credibility. [Doc. 134 at 8.] Dr. Peters' reliance on Ms. Shuster's self-reported symptoms in diagnosing her with PTSD does not make her work immune from critique by a rebuttal expert like Dr. Jens. *See*

---

[5] Ms. Shuster has not timely noticed a deposition of Dr. Jens.

12

*Luciano*, 885 F. Supp. 2d at 1073, *see also, e.g.*, *Chatman v. City of Chicago*, No. 14 C 2945, 2018 WL 11426158, at *3-6 (N.D. Ill. Oct. 30, 2018) (noting, in false-confession case, legal bar to expert opinion as to the believability of testimony while allowing rebuttal expert in forensic psychiatry to "offer his critiques" of work by expert in psychology, including on disputed issue of whether contamination occurred); *Bachiocchi v. S. New England Tel. Co.*, No. 3:02-CV-908 (CFD), 2008 WL 11375363, at *8 (D. Conn. July 2, 2008) (finding rebuttal expert testimony relevant "because it goes to the appropriate probative value and weight to be given to [the expert's] testimony"); *Alberts v. Wickes Lumber Co.*, No. 93 C 4397, 1995 WL 557473, at *2-3 (N.D. Ill. Sept. 15, 1995) (allowing rebuttal expert to help jury resolve credibility issue of whether to believe expert's conclusions and explaining that "*Daubert* in no way limits a party from attacking the use of a methodology or technique by the opponent's expert on the grounds that the expert did his or her job badly"). Ms. Shuster again cites *Gould*, but the court there rejected the argument that, because the expert was opining "that the medical evidence [was] inconsistent with plaintiff's injuries, he must be commenting on her credibility." 2021 WL 4428286, at *8; *id.* ("[H]e simply is commenting on the medical evidence and plaintiff's claimed injuries.").

    Dr. Jens' opinions as to alternative causes are reliable and based on her experience as a clinical psychologist. They are not impermissible comments on Ms. Shuster's credibility. The Court should permit her testimony.

### III. DR. JENS' THIRD OPINION—THAT MS. SHUSTER EXHIBITS PATTERNS INCONSISTENT WITH TYPICAL, VALID PTSD DIAGNOSES—IS RELIABLE AND BASED ON HER CAREER EXPERIENCE AND THE CITED LITERATURE.

Ms. Shuster seeks to preclude the third opinion from Dr. Jens: "In the case of Ms. Shuster, there are a number of patterns that are inconsistent with what one typically sees with persons validly diagnosed with PTSD. While individuals diagnosed with PTSD show variability, the number of discrepancies in this case are of concern." [Doc. 134 at 9; *see* Ex. 1 to Doc. 134 at 1.]

Dr. Jens' report lays out the discrepancies and explains why they are relevant. [Ex. 1 to Doc. 134 at 1-4; *see id.* at 4 ("One or two of these discrepancies might be consistent with a PTSD diagnosis with a clear perpetrator. Here there are so many discrepancies.").]

Ms. Shuster contends Dr. Jens' list of discrepancies "is little more than an unsubstantiated series of comments on the case and on Dr. Peters' report that plainly lack any methodology, reasoning, or explanation for the Court to assess and weigh their reliability" [Doc. 134 at 11]. Not so; Dr. Jens offers reliable opinion testimony. In her career, Dr. Jens has seen variability in individuals diagnosed with PTSD, but she opines that the number of discrepancies in Ms. Shuster's records raise concerns about her PTSD diagnosis with a clear perpetrator. [Ex. 1 to Doc. 134 at 1-4.] Assessing the various ways individuals with PTSD present and comparing this diversity to Ms. Shuster's behavior is a reliable method, and Dr. Jens' report explains why the discrepancies matter [*see, e.g., id.* at 3 (flagging that, despite EMDR therapy sessions, Ms. Shuster remains unable to access alleged sexual assaults by Mr. Levy)]. Dr. Jens'

14

opinions derive from her reliable methodology of clinical psychology.  "The reliability prong requires the court to determine whether the expert's opinions are supported by sound reasoning and methodology."  *Wells v. Kawasaki Motors Corp., U.S.A.*, 854 F. App'x 242, 246 (10th Cir. 2021) (quotations omitted); *see Stoker*, 2021 WL 4201583, at *3 ("[T]he district court should focus on an expert's methodology rather than the conclusions it generates.").

Ms. Shuster argues that because she made her allegations against Mr. Levy as an *adult*, Dr. Jens erroneously relied on literature addressing *child* forensic interviews. [Doc. 134 at 9-11 & n.1.]  But Ms. Shuster offers no reason for thinking that that the proposition cited by Dr. Jens—that ability to report details is a factor to assess the validity of abuse allegations—does not hold true for outcries by children and young adults.  Moreover, Ms. Shuster has emphasized her claim that she was under 18 years old when the alleged abuse began.  [*See* Doc. 57 at 1, 29.]

Ms. Shuster also takes issue with the last discrepancy, arguing Dr. Jens has not explained her suggestion of a "more severe psychopathology."  [Doc. 134 at 10.]  But there should be no confusion.  Dr. Peters, who examined Ms. Shuster, noted test scores indicative of more severe psychopathology that were potentially inconsistent with PTSD, and Dr. Jens expressed concern that Dr. Peters failed to explain those inconsistencies. [Ex. 1 to Doc. 134 at 4.]  Thus, neither the test scores nor the scientific basis that they could be inconsistent with PTSD should come as a surprise to Ms. Shuster since they are based on the report of her own expert, Dr. Peters, which Dr. Jens reviewed.  [*See* Ex. 1 to Doc. 134 at 4 (noting review of Dr. Peters report); Ex. 2 to Doc. 134 at 41 (Dr.

15

Peters' report noting, with respect to test result, that "some caution is warranted when considering Ms. Shuster's reported level of psychopathology"); *see also id.* at 45 (reiterating caution in testing summary).]

Dr. Jens' opinion that discrepancies between Ms. Shuster and the variable presentations of others with valid PTSD diagnoses is reliable, and it undercuts the reliability of the claim that Ms. Shuster's reported PTSD symptoms stem from Mr. Levy. The Court should allow it.

## CONCLUSION

The Court should deny Ms. Shuster's Motion and permit Dr. Jens' testimony.

DATED this 10th day of June, 2024.

Respectfully submitted,

*s/ Jacob McMahon*
Laura A. Menninger, No. 34444
Jacob McMahon, No. 48784
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone:303.831.7364
Fax: 303.832.2628
Email: LMenninger@hmflaw.com

*Attorneys for Jacob Levy*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I electronically filed the foregoing *MR. LEVY'S RESPONSE TO MS. SHUSTER'S MOTION TO PRECLUDE TESTIMONY OF EXPERT DR. KATHRYN JENS PURSUANT TO FRE 702* with the clerk of court using the CM/ECF system, which will send notification of such filing to all parties of record.

*s/ Holly Rogers*