IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-01149-NYW-KAS

JACOB LEVY,

    Plaintiff and Counterclaim Defendant,

v.

HOLLY SHUSTER,

    Defendant and Counterclaim Plaintiff.

## MOTION TO COMPEL DISCOVERY

Jacob Levy, by and through his counsel, Laura A. Menninger and Jacob McMahon of Haddon, Morgan & Foreman, P.C., hereby moves pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv) to (a) compel responses to certain Interrogatories and Requests for Production of Documents, and (b) to compel production of records pursuant to a subpoena issued to Tulane University for medical records related to treatment of Defendant and Counterclaim Plaintiff Holly Shuster. Mr. Levy further asserts as follows:

### Certificate of Conferral

Counsel for the parties have conferred multiple times, both by email and by telephone, concerning the relief requested herein. Counsel for Ms. Shuster opposes this relief. Mr. Levy submitted a request for an informal discovery dispute hearing on March 4, 2024. Due to difficulties in scheduling a hearing on the issues presented, Judge Starnella granted Mr. Levy permission to file this formal motion to compel on March 20, 2024. (Dkt. 100).

## Background

Mr. Levy filed this action for defamation, intrusion on seclusion, and unreasonable disclosure of private facts on May 5, 2023.  (Dkt. 1)  Ms. Shuster, his former girlfriend at Tulane, caused texts of a salacious, false, and libelous nature to be sent to Mr. Levy's fraternity in Boulder, including *inter alia* that (a) Mr. Levy had "forced [her] to have sex with him multiple times a day, everyday," during their year-long relationship, and (b) Mr. Levy "was kicked out of Tulane for rape and stalking."  (Dkt. 33 at 6-7 (Amended Complaint))  The pair dated from November 2020 until October 2021.  (*Id.* at 2.)

Ms. Shuster doubled down on the false claims in the text messages when she filed her Answer and Counterclaims.  (Dkt. 57)[1]  She therein asserted nine (9) counterclaims against Mr. Levy ranging from "sexual assault-sexual battery" to "third-degree rape" to "assault," "battery," and "intentional infliction of emotional distress," to name a few.[2]

In her Rule 26(a)(1) disclosures, Ms. Shuster seeks "[n]oneconomic damages" for "pain, suffering, emotional distress, humiliation, fear, anxiety, loss of enjoyment of life, and a sense of security and individual dignity. . . .  the value assigned by the jury to the . . . ongoing impacts the sexual, physical and emotional abuse, the stalking, and the other misconduct by Mr. Levy."  (Ex. 1 at 10.)  She also seeks "[e]conomic damages related to past and future treatment for the psychological harm associated with the sexual [etc.] abuse that Ms. Shuster experienced, as well

---

[1] Ms. Shuster originally filed Counterclaims on July 24, 2023, (Dkt. 27) but amended them on September 11, 2023 (Dkt. 57).

[2] All but her first claim are subject to Mr. Levy's Motion for Judgment on the Pleadings filed February 1, 2024.  (Dkt. 88)

2

as costs associated with the impact of this misconduct on her life, education and future opportunities." (*Id.*) Her economic damages include "past therapy and treatment costs" as well as "[f]uture treatment, medical costs and other economic losses." (*Id.*)

In her recently filed Rule 26(a)(2) disclosures, Ms. Shuster has disclosed three retained experts and five non-retained experts. (Ex. 2 at 1-6—Highly Confidential—Attorneys' Eyes Only.) Ms. Shuster hopes to have them testify, in part, as follows:

      1.    <u>Dr. Donna Peters</u>:  Dr. Peters submitted a 62-page opinion, attributing Ms. Shuster's mental (PTSD, anxiety and depression) to Mr. Levy. (Ex. 3—Highly Confidential—Attorneys' Eyes Only.) Dr. Peters included "Posstraumatic Functioning" and "Current Functioning" sections which attribute to Mr. Levy Ms. Shuster's past and present school failures, loss of appetite, weight loss, neglected personal appearance and personal hygiene, sleep disturbances, increased alcohol consumption, avoidance of socializing, her difficulties with intimacy, feelings of being on edge in public places, nightmares, panic attacks, difficulty breathing, tunnel vision, "roaring in her ears," her submissiveness with males, her going to unsafe clubs and her alcohol consumption there. (*Id.* at 26-29.)

Dr. Peters also opines that Ms. Shuster's mental health symptoms of PTSD and depression impacted her functioning in several areas, including "emotional and behavioral, social and relationship, and academic functioning." (*Id.* at 53.) Dr. Peters acknowledges that "it is unclear what other factors may have impacted Ms. Shuster's academic performance," but notes that her poor college grades began the same semester she began dating Mr. Levy. (*Id.* at 54.)

3

   2. <u>Dr. Stan Smith</u>:  A University of Chicago economics Ph.D., Dr. Smith submitted a 59-page opinion.  (Ex. 4—Confidential.[3])  Relying on Dr. Peters' report, he estimates Ms. Shuster's total losses based on her poor academic performance, which she attributes to Mr. Levy, to be (a) approximately $6 million in lost wages and employment, (b) her earnings offset to be approximately $3 million, (c)  her average cost of future life care to be $123,000, and (d) the reduction in the value of her life to average $2.3 million.  (*Id.* at 6-10.)

   3. <u>Treating therapists and other professionals</u>:  Ms. Shuster has also endorsed her treating therapist, treating psychiatrist, and family therapist to likewise opine as to her many mental health and physical symptoms, as well as the causes of those symptoms.  (Ex. 2 at 3-6.)  By way of example, when initiating therapy with Dr. Gwenn Lowe (two years after Mr. Levy broke up with her), Ms. Shuster attributed symptoms to Mr. Levy of decreased appetite, difficulty sleeping, low motivation, isolation, fatigue, low self-esteem, depressed mood, tearful, anxiety, fear, hopelessness, panic, headache, and chest pain.  (Ex. 5 at 3—Highly Confidential—Attorneys' Eyes Only (LOWE_0000003).)

**Discovery Requests at Issue**

Mr. Levy propounded his first set of (combined) Interrogatories and Requests for Production of Documents on Ms. Shuster on December 1, 2023.  (Ex. 6.)  Ms. Shuster answered the Interrogatories and objected to the Discovery Requests on January 16, 2024, but did not produce a single document in response to the Requests.  (Ex. 7.)  On February 7, 2024, following

---

[3] Page 6 is Highly Confidential—Attorneys' Eyes Only.

the parties' first conferral, Ms. Shuster supplemented her Responses. (Ex. 8.) On February 16, 2024, Ms. Shuster produced her privilege log. (Ex. 9.)

There are four categories of Interrogatories and Requests for Production at issue in this Motion.

<u>Medical Treatment Providers and Medical Records</u>: Mr. Levy's <u>Second</u> Interrogatory requested disclosure of Ms. Shuster's health care providers over the last five years, including the treatments provided for any physical, mental or emotional condition, dates of treatment, and expenses. (Ex. 6 at 6.) Mr. Levy's <u>Eleventh</u> Interrogatory asked Ms. Shuster to disclose any other sources of physical and/or mental injury she suffered before or after the sexual abuse she has alleged against Mr. Levy, including who caused such injuries. (*Id.* at 7.) Relatedly, Mr. Levy requested production of all communications and documents responsive to these interrogatories. (*Id.* at 8-9 (RFPs 13-14, 19).)

<u>Communications about Plaintiff Jacob Levy</u>: Mr. Levy's <u>Sixth</u> Interrogatory asked Ms. Shuster to identify communications in which she told people he had sexually assaulted or raped her. (*Id.* at 7.) His <u>Seventh</u> Interrogatory asked Ms. Shuster to identify the documents in her possession that that concern Mr. Levy or any sexual assault, rape or stalking, including journals and therapeutic work. (*Id.*) He requested responsive documents, including all communications with the individuals with whom Ms. Shuster talked about him or these allegations. (*Id.* at 8 (RFPs 13-15, 17).)

<u>Communications with Law Enforcement</u>: Mr. Levy's <u>Eighth</u> Interrogatory asked Ms. Shuster to identify her communications with law enforcement, whether as an adult or juvenile, in the capacity of a purported victim, witness, or perpetrator of a crime. (*Id.* at 7.) He also

5

requested production of documents concerning or relating to Ms. Shuster's law-enforcement communications.  (*Id.* at 8 (RFP 20).)

Improper Redactions:  Ms. Shuster's privilege log asserts "[t]hird party privacy rights in unrelated medical matter" as the reason for redacting certain text messages within a conversation between Ms. Shuster and Deanna Robertson of Tulane (Ex. 9 at 2-3), but there is no applicable privilege, and the Court should require production of the complete conversation so that the messages are properly contextualized.  Relatedly, Mr. Levy seeks unredacted versions of other text message conversations and journal entries, identified below, which Ms. Shuster has redacted but not addressed on her privilege log.

**Tulane Subpoenas at Issue**

On December 1, 2023, Mr. Levy also served a subpoena *duces tecum* on Tulane University for records related to Ms. Shuster.  (Ex. 10)  Included among the requests were "[a]ll [d]ocuments reflecting any treatment for Holly Shuster from any counseling, medical, mental health facility at Tulane."  (*Id.* at ¶ 5.)  A few days later, Ms. Shuster's counsel copied that subpoena, and likewise served one on Tulane for Mr. Levy's records, including:  "All Documents reflecting any treatment for Jacob Levy from any counseling, medical, or mental health facility at Tulane."  (Ex. 11 at ¶ 5.)

Consistent with Rule 45, both parties provided notices of their subpoena on one another. (*See* Ex. 12 and Ex. 13.)  Tulane requested to serve each party with their own Tulane records, and then have the party produce the records to the opposing party.  (*See* Ex. 14 at 2 (Letter dated January 10, 2024, from Tulane to counsel for both parties).  Counsel for Ms. Shuster did not

6

object to the Tulane documents to Mr. Levy, nor did counsel for Mr. Levy object to the Tulane subpoena served by Ms. Shuster.

Unbeknownst to Mr. Levy, however, Ms. Shuster's counsel had sent an email to Tulane objecting to their production of any of Ms. Shuster's medical records in response to the subpoena. (*See* Ex. 15—Confidential (Jan. 2, 2024 email).) Ms. Shuster's counsel did not copy Mr. Levy's counsel on that objection and apparently produced it on January 24, 2024, with 647 other Tulane documents. Ms. Shuster's counsel brought it to the attention of Mr. Levy's counsel on February 27, 2024, in their conferrals.[4]

Because it appears that Tulane has failed to produce the medical records from Ms. Shuster's on-campus medical visits, Mr. Levy is asking this Court to compel Ms. Shuster to withdraw her objection to the Tulane subpoena.

## ARGUMENT

I.  **MS. SHUSTER HAS PLACED HER MEDICAL AND MENTAL HEALTH AT ISSUE AND CANNOT SELECTIVELY REFUSE TO PRODUCE RELEVANT RECORDS.**

Repeatedly, from her Counterclaims, through to her Rule 26 disclosures, including her expert disclosures, Ms. Shuster has blamed numerous mental and physical health conditions on Mr. Levy and the purported years-long daily sexual assaults. She has thus waived her privilege both with respect to any treatment for the actual symptoms, but also for any alternative causes for her symptoms (both physical and mental) that are not attributable to Mr. Levy. In defending

---

[4] On February 26, 2024, Mr. Levy served a second subpoena *duces tecum* on Tulane, this time to the "Tulane University Medical Center" (Ex. 16), having been advised that their records custodian is separate from Tulane University's campus health services. No documents were received. It is unknown whether Ms. Shuster objected to this second subpoena.

7

against Ms. Shuster's counterclaims, he is "permitted to seek and offer evidence regarding alternative sources of [her] emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." *Ledezma v. Young Life*, No. 20-CV-01896-NYW, 2021 WL 2823261, at *7 (D. Colo. Jan. 8, 2021) (quotations omitted).

In *Ledezma*, the plaintiff alleged that a co-worker grabbed her genital area, and she brought a vicarious claim against the employer for sexual assault. *Id.* at *1-2. The plaintiff tried to prevent the defendant from seeking third-party discovery into her past trauma, arguing that "her unrelated past trauma is irrelevant to both liability and damages issues." *Id.* at *5. As to liability, the court agreed, *id.* at *5-6, but the plaintiff's prior trauma was relevant to her damages, *id.* at *7. The plaintiff's willingness to testify about her past trauma did not prevent the defendant from seeking information from other sources. *Id.* at *7, 9. The court explained that the plaintiff "waived her psychotherapist-patient privilege by asserting more severe emotional distress than ordinary pain and suffering." *Id.* at *8; *id.* ("Other courts in this District discuss a plaintiff waiving the privilege by claiming a specific particular psychological impact or offering a therapist as an expert."); *see id.* at *9 (noting plaintiff had already disclosed past, non-sexual trauma); *see also Vreeland v. Fisher*, No. 13-CV-02422-PAB-KMT, 2016 WL 363808, at *1 (D. Colo. Jan. 29, 2016) ("[A] plaintiff who makes a request for emotional distress damages places his psychological state in issue and entitles a defendant to his mental health records." (citing *Fisher v. Sw. Bell Telephone Co.*, 361 F. App'x 974, 978 (10th Cir. 2010))).

Ms. Shuster has waived her medical and mental health privileges, but she has refused to provide complete answers to Mr. Levy's Second and Eleventh Interrogatories, unilaterally deciding what other medical and mental health treatment is relevant. The Court should order

8

complete disclosures because these other sources undermine her claimed damages and the opinions of her experts.  The other potentially emotionally destabilizing events in Ms. Shuster's life, both prior to and subsequent to her relationship with Mr. Levy, are extensive.  In May 2021, while dating Mr. Levy, Ms. Shuster asked for academic accommodations at Tulane ▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇  Mr. Levy requests complete answers to his Interrogatories about Ms. Shuster's health care treatment and the other potential sources of her claimed mental and medical injuries.

Further, the Court should order Ms. Shuster to withdraw her objection to Tulane-related medical centers producing her counseling, medical, and mental health records pursuant to Mr. Levy's subpoenas.  This will allow the relevant providers to produce responsive documents to Ms. Shuster's counsel, who may then, consistent with the Court's Protective Order (Doc. 55), designate them as confidential or highly confidential before producing them to Mr. Levy.  Alternatively, to the extent the providers have already supplied such records to Ms. Shuster, the Court should order them produced to Mr. Levy with appropriate confidentiality designations.

9

## II.     MS. SHUSTER MUST DISCLOSE HER COMMUNICATIONS ABOUT MR. LEVY.

Besides being central to her credibility and mental state, Ms. Shuster's answers to Mr. Levy's Sixth and Seventh Interrogatories, and her production of responsive documents, directly concerns his defamation claim.  Proving a defamation claim under Colorado law requires showing, *inter alia*, that the defamatory statement was "published to a third party."  *DeRito v. United States*, 851 F. App'x 860, 863 (10th Cir. 2021) (quotations omitted); *see also Melville v. Third Way Ctr., Inc.*, 405 F. Supp. 3d 917, 927 (D. Colo. 2019) (noting that, to prevail on a claim for unreasonable publicity to one's private life, a plaintiff must show, *inter alia*, public disclosure of a private fact).  Although Ms. Shuster has provided a list of persons with whom she communicated (Ex. 8 at 8-9), the Court should require her to identify the dates of the communications, the means and form of the communications, and any other parties to the communications.  Such answers and responsive documents may also bear on Ms. Shuster's mental state regarding the falsity of her claims to the Boulder fraternity.

The Court should order Ms. Shuster to provide complete answers to Mr. Levy's Sixth and Seventh Interrogatories and produce responsive documents.

## III.    MS. SHUSTER'S REDACTIONS ARE IMPROPER GIVEN THE BROAD SCOPE OF DISCOVERY AND THE RULE OF COMPLETENESS.

Rule 26 of the Federal Rules of Civil Procedure "makes clear that evidence need not be admissible to be discoverable."  *Ledezma*, 2021 WL 2823261, at *2.  Rule 106 of the Federal Rules of Evidence partially codifies the common law rule of completeness, which requires that, when a party admits a portion of a statement, the adverse party may require introduction of other parts of the statement, which in fairness should be contemporaneously considered.  *See United States v. Lopez-Medina*, 596 F.3d 716, 734 (10th Cir. 2010); *see, e.g.*, *People v. McLaughlin*,

2023 CO 38, ¶ 28 (rejecting government's attempt to present video that made defendant look guilty by snipping out his answers to officer's questions).

Here, at the discovery phase, Ms. Shuster has produced partially redacted conversations. The Court should order her to produce the complete exchanges listed on lines 14-25 of her privilege log (Ex. 9 at 2-3) so that Mr. Levy has the context for these texts between Ms. Shuster and Deanna Robertson of Tulane.  Ms. Shuster's privilege log states these redactions were made for "[t]hird party privacy rights in unrelated medical matter," (*id.*) but, as discussed, Ms. Shuster waived her privilege with respect to her communications with her mental health provider.  There is no "privilege" for "third-party privacy concerns."  Ms. Shuster's statements to Ms. Robertson about other people's medical matters may directly bear on her credibility.  In what Ms. Shuster has produced, she puts off Ms. Robertson with a variety of excuses.  (*See, e.g.*, Ex. 21 at 1-5—Highly Confidential—Attorneys' Eyes Only (HS_0003716-20) (missed email while moving, stuck in traffic, in the hospital, awful cell service, lost Ms. Robertson's email address).)  The Court should reject Ms. Shuster attempt to decide unilaterally what counts as relevant context within these produced communications.

To the extent that the redactions concern truthful, sensitive information about other people, the Court's Protective Order (Doc. 55) allows Ms. Shuster to restrict access to the unredacted documents by designating them "Highly Confidential—Attorneys' Eyes Only."  The parties agreed such designation is appropriate where "review . . . by an opposing party or third party would cause the producing <u>or another party</u> serious harm[.]"  (*Id.* at ¶ 5 (emphasis added).)

Besides the complete exchange between Ms. Shuster and Ms. Robertson, Mr. Levy also seeks the unredacted communications between Ms. Shuster and **(1)** Clare Arnold (Ex. 22,

11

HS_0002296-2309—Confidential); **(2)** Jonathan Browne (Ex. 23, HS_0002310-2326—Confidential); **(3)** Ms. Arnold and Liberty Morris (Ex. 24, HS_0002327-2472—Confidential); **(4)** Ms. Morris (Ex. 25, HS_0002473-2533—Confidential); **(5)** "Kat" and "Ruby Rose" (Ex. 26, HS_0003506-3523—Confidential); **(6)** Calli Snyder (Ex. 27, HS_0003739-3741—Confidential); **(7)** Ms. Arnold and "Jordan" (Ex. 28, HS_0003742-3745—Confidential); **(8)** "Kat" (Ex. 29, HS_0003746-50, HS_0004012-4014, HS_0004333-4337—Confidential); **(9)** "Keenan" (Ex. 30, HS_0003752-3756, HS_0003849-3859, HS_0003958-3961, HS_0004061-4066—Confidential); **(10)** "Shreya" (Ex. 31, HS_0003801-3803—Confidential); **(11)** Devin Ankeney (Ex. 32, HS_0003804-3810, HS_0003991-3998, HS_0004118-4122, HS_0004343-4366, HS_0004379-4380—Highly Confidential—Attorneys' Eyes Only); **(12)** Ms. Snyder, "Jordan," and Caitlyn Sleeman (Ex. 33, HS_0003829-3830—Confidential); **(13)** "Amelia" (Ex. 34, HS_0003831-3832—Confidential); **(14)** "Deerock" (Ex. 35, HS_0003833-3834—Confidential); **(15)** "Ellie," Ms. Arnold, and Ms. Morris (Ex. 36, HS_0003835-3838, HS_0003939-3945—Confidential); **(16)** "Ellie" (Ex. 37, HS_0003839-3848, HS_0003946-3950, HS_0004008-4009, HS_0004045-4051, HS_0004324-4332—Confidential); **(17)** Ms. Morris, "Ellie," and "Keenan" (Ex. 38, HS_0003860-3863—Confidential); **(18)** Luke Swatland (Ex. 39, HS_0003864-3865—Confidential); **(19)** "Mandy" (Ex. 40, HS_0003866-3868, HS_004067-4069—Confidential); **(20)** Ms. Sleeman (Ex. 41, HS_0003933-3934, HS0003937-3938, HS_0004006-4007, HS_0004340-4342—Confidential); **(21)** Ms. Sleeman and "Jordan" (Ex. 42, HS_0003935-3936, HS_0004001-4005, HS_0004338-4339—Confidential); **(22)** "Jordan" (Ex. 43, HS_0004059-4060, HS_0004382-4384—Confidential); **(23)** Ms. Morris, "Jordan," Ms. Arnold, Ms. Snyder, Ms. Sleeman, and "Fran" (Ex. 44, HS_0004367-4369—Confidential), and **(24)** Ms. Arnold, Ms.

Morris, Ms. Sleeman, "Jordan," Autmn Pyka, "Fran," Azur Pour, and Eliza Griggs (Ex. 45, HS_0003824-3825—Confidential).  Ms. Shuster's privilege log does not address these redactions.  She appears to have redacted messages surrounding communications related to Mr. Levy, but the full context should be provided so the comments about Mr. Levy are properly understood.  Even if the now-redacted messages do not concern Mr. Levy directly, they often surround messages about him and may change the context of what has been disclosed.  (*See, e.g.*, Ex. 24 at 8 (HS_0002334) (black boxes surrounding "ur done Jacob!!!!!!").)  And Mr. Levy's Request for Production Number 17 sought all communications with those individuals with whom Ms. Shuster had either discussed Mr. Levy or the underlying facts of this case.

Further, Ms. Shuster has improperly redacted items from her journal immediately before and after references to Mr. Levy.  (Ex. 46, HS_0004123-4141—Highly Confidential—Attorneys' Eyes Only.)  The Court should require an unredacted production of the journal, especially because Ms. Shuster claims she already shared the journal with Mr. Levy.  During her deposition, Ms. Shuster said that a page containing a "To-Do" list and a crude drawing were written by Mr. Levy.  (Ex. 19 at 377.)  Ms. Shuster's privilege log does not address her journal redactions.

Redactions may or may not be appropriate come trial, but at this stage of the litigation, the Court should require complete productions of the documents identified herein so that the parties may intelligently stake their positions on what is and is not relevant context.  *See* FRE 106.

### IV. MS. SHUSTER MUST DISCLOSE HER OTHER COMMUNICATIONS WITH LAW ENFORCEMENT.

Ms. Shuster objected to Mr. Levy's Eighth Interrogatory, which requested identification of her communications with law enforcement, as overbroad and as seeking un-discoverable information, such as, she claimed, communications in her capacity as a witness to criminal activity. (Ex. 8 at 9-10.) The request is not overbroad and bears directly on Ms. Shuster's credibility, relevant both to Mr. Levy's defamation claim and the criminal counterclaims she attempts to assert against him. Such communications about her other instances of claimed victimization by others also bear on her truthfulness.

Although she does not expressly invoke it, Ms. Shuster's objection to disclosing her witness statements suggests reliance on the law-enforcement privilege, but it is not hers to claim. *See In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, 693-94 (D. Colo. 1993) (explaining "the Bank may not assert the qualified privilege relating to law enforcement materials for its own benefit" since government privileges "cannot be claimed by a private party"); *see also id.* at 693 (noting that the privilege, even when claimed, can be overridden by the movant's substantial need for the materials and inability to secure their substantial equivalent by other means).

While reserving her objection, Ms. Shuster identified her December 17, 2021, communication with the Tulane Police Department regarding Mr. Levy. (Ex. 8 at 9-10; *see also* (Ex. 47 (texts from Dec. 17, 2021), HS_0003681 ("I think I will call the police . . . ."); HS_0004091 ("Just called, I'm meeting with an officer later today[.]"); HS_0002305 ("Please thank Emma again for me I feel so bad that the police came to her house[.]"))—Confidential.)

Other discovery suggests Ms. Shuster had other communications with law enforcement, however, and the Court should require her to disclose these and any other law-enforcment

communications and produce responsive documents.  In a November 9, 2021, message to her parents, Ms. Shuster stated she was going to file a report with campus police after her classes were over that day.  (Ex. 48, HS_0003968-69—Confidential.)  In a January 5, 2022, text message to Ms. Morris, Ms. Shuster stated Ms. Arnold was present "when the police came the second time[.]"  (Ex. 25, HS_0002500).  In a January 8, 2022, text message, Ms. Arnold said, "remember what that [sic] police officer was so rude," and Ms. Shuster expressed agreement.  (Ex. 24 at 113-14, HS_0002439-2440.)  On January 13, 2022, Ms. Shuster texted her friends that she had filed "4 different concern reports and 2 police reports[.]" (*Id.* at 123, HS_0002449).  On January 25, 2022, she told Jonathan Browne, "I had to leave to talk to the police . . . ." (Ex. 23 at 6, HS_0002315).  On April 26, 2022, she told him, "I had to sit with the police today . . . ." (*Id.* at 9, HS_0002318); *see also* (Ex. 49, HS_0000120 ("Kk we're going to the police today[.]" (undated)).

Ms. Shuster must provide a complete answer to Mr. Levy's Eighth Interrogatory and produce responsive documents regarding her law-enforcement communications.

## CONCLUSION

The Court should grant Mr. Levy's Motion to Compel Discovery.

DATED this 3rd day of April, 2024.

15

Respectfully submitted,

*s/ Jacob McMahon*
Laura A. Menninger, No. 34444
Jacob McMahon, No. 48784
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone: 303.831.7364
Fax: 303.832.2628
Email:  LMenninger@hmflaw.com

*Attorneys for Jacob Levy*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2024, I electronically filed the foregoing *MOTION TO COMPEL DISCOVERY* with the clerk of court using the CM/ECF system, which will send notification of such filing to all parties of record.

*s/ Holly Rogers*

16