IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-01149-NYW-KAS

JACOB LEVY,

    Plaintiff and Counterclaim Defendant,

v.

HOLLY SHUSTER,

    Defendant and Counterclaim Plaintiff.

---

**DEFENDANT AND COUNTERCLAIM PLAINTIFF HOLLY SHUSTER'S MOTION TO PRECLUDE TESTIMONY OF EXPERT DR. KATHRYN JENS PURSUANT TO FRE 702 - NO HEARING REQUESTED**

---

Defendant and Counterclaim Plaintiff Holly Shuster ("Ms. Shuster"), by and through undersigned counsel, moves to preclude the testimony of Plaintiff and Counterclaim Defendant Jacob Levy's endorsed rebuttal expert, Kathryn Jens, whose opinions are not based on any reliable methodology, verge on impermissible topics such as Ms. Shuster's credibility, and include unfounded speculation that Ms. Shuster does not have PTSD and instead suffers from a "more severe psychopathology" and/or other stigmatizing disorders. In support of this Motion, Ms. Shuster states as follows.

## CONFERRAL

Undersigned counsel has conferred with counsel for Mr. Levy, who opposes the relief sought in this Motion.

## INTRODUCTION AND BACKGROUND

This case arises out of a yearlong physically, sexually, and emotionally abusive relationship between (1) Ms. Shuster and (2) Plaintiff and Counterclaim Defendant

Jacob Levy ("Mr. Levy").  In early 2022, after the relationship had ended but while the parties were still attending Tulane University, Ms. Shuster obtained a temporary restraining order against Mr. Levy, which soon led to entry of a Consent Order and Permanent Injunction.  After Mr. Levy brought his claims in this Court, alleging that Ms. Shuster had allegedly defamed him and violated certain common law privacy rights, Ms. Shuster filed her counterclaims, seeking damages for the extensive abuse she had suffered and the prolonged negative impact that Mr. Levy's abuse has had on her life and well-being.

In support of those claims, on March 18, 2024, Ms. Shuster served her Rule 26(a)(2) disclosures, which included the disclosure and report of Donna Peters, Ph.D., a forensic clinical psychologist.  Dr. Peters, who has been qualified as an expert by federal, state, and military courts in sexual abuse and intimate partner violence cases, performed a forensic psychological evaluation of Ms. Shuster, which included extensive, in-person interviews of Ms. Shuster, review of medical records and relevant case materials, and additional interviews with Ms. Shuster's current providers and immediate family members.  As part of her evaluation and consistent with applicable professional standards, Dr. Peters also administered nine different testing instruments including the Adverse Childhood Experience Questionnaire, the Beck Depression Inventory-2, the Beck Anxiety Inventory, the Post Traumatic Stress Disorder ("PTSD") Checklist for DSM-V with Criterion A, the Minnesota Multiphasic Personality Inventory, Third Edition or "MMPI-3", the Miller Forensic Assessment of Symptoms Test, the Detailed Assessment of Post Traumatic Stress, the Trauma Symptom Inventory-2 and the Personality Assessment Inventory. *See* Exhibit 2, *Peters report*.  Ms. Shuster's results

2

on those tests specifically and consistently revealed that she suffers from trauma-related symptoms associated with PTSD, general anxiety, and depression as defined in the Diagnostic Statistical Manual of Mental Disorders Fifth Edition ("DSM-V").  Dr. Peters' report describes in further detail the methodology she used in developing her opinions in the "Method of Evaluation" and "Opinion" sections.   *See id.* at pp. 8, 47.

On April 19, 2024, Mr. Levy disclosed his rebuttal expert, psychologist Kathryn Jens, Ph.D.  In her accompanying report, Dr. Jens, who did not meet with or conduct a forensic psychological examination of Ms. Shuster, appears to challenge Dr. Peters' (and Ms. Shuster's treating providers') PTSD diagnosis and proposes several alternative hypotheses to both the facts of the case and the PTSD symptoms shown by the testing.  *See* Exhibit 1, *Jens Report*. No methodology for these opinions is given. Although Dr Jens's precise opinions are not easy to discern, it appears that Dr Jens intends to testify to the following opinions:

1. *A PTSD diagnosis does not reliably identify the trauma that caused the symptomology, especially in the case of multiple traumas where the perpetrator or traumatic event can be misidentified.*

2. *The conclusion that Ms. Shuster presented in a fashion consistent with PTSD could be invalid if Ms. Shuster is malingering or false reporting.*

3. *There is reason to doubt that Ms. Shuster suffers from PTSD, as shown* by *Dr. Peters' evaluation, due to asserted "discrepancies" in the case.*

4. *Other hypotheses explaining Ms. Shuster's symptoms could be:*
   a. *Borderline Personality disorder,*
   b. *Histrionic Personality Disorder,*
   c. *Dependent Personality Disorder and/or*
   d. *Alcohol Use Disorder.*

Dr. Jens has issued these sweeping opinions although she has not met with Ms. Shuster, not conducted any psychological testing, and not even requested or reviewed

3

any of the testing data that Dr. Peters used in forming her opinions. Notably, Dr. Jens does not opine that Dr. Peters' results are inaccurate, nor does she conclude, to any degree of psychological certainty, that Ms. Shuster is actually malingering or has made a false report. Nonetheless, without providing any basis for her speculation, Dr. Jens contends that Ms. Shuster might be doing so. Moreover, most of Dr. Jens' analysis appears to be nothing more than an extended and prohibited effort to attack Ms. Shuster's credibility, while failing to provide any methodology or rationale to support her opinions.

Under applicable legal standards, Mr. Levy should be precluded from presenting Dr. Jens' testimony to the jury.

## APPLICABLE LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. *Fed. R. Ev.* 702

Trial courts are directed to serve in a gatekeeping function to ensure that expert opinions meet basic criteria of reliability and relevance under FRE 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–152 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588–89 (1993). When an objection is raised under FRE 702, the Court must determine whether the expert's opinions are both (1) scientifically reliable, and (2) helpful to the jury before allowing the testimony to be presented. *Id.* Mr. Levy, as the

4

proponent of Dr. Jens' testimony, has the burden of proving these foundational requirements.  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). Here, he cannot do so, and the Court should preclude Dr. Jens' testimony in its entirety because (1) Dr. Jens has not shown any of her opinions to be reliable, and (2) Dr. Jens' opinions rest, almost entirely, on prohibited comment on Ms. Shuster's asserted credibility.

In its Rule 702 analysis, the Court begins by considering the expert's qualifications to give the opinions offered.  *Crabbe*, 556 F. Supp. 2d at 1221 (citing *193 Investors I, L.P v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006).  Dr. Jens is a licensed psychologist who previously worked as a school psychologist, has maintained a private practice, and has listed experience in assessing and treating symptoms of trauma.  For the purpose of this Motion, Ms. Shuster does not challenge Dr. Jens' qualifications as a psychologist.

Instead, Ms. Shuster focuses on the second step of the Court's analysis, *see id.*, and challenges the basis and reliability of Dr. Jens' stated opinions.  A "qualified" expert's report may be found to be unreliable where there is no methodology identified to support proffered opinions.  *See Cereceres v. Walgreen Co.*, 645 F. Supp. 3d 1110, 1116 (D. Colo. 2022) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)); *Crabbe*, 556 F. Supp. 2d at 1220.  To assess the reliability of an expert's opinion, courts examine "the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  While an expert may rely on professional experience for

5

proffered opinions, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Gould v. Union Pac. R.R. Co.*, No. 19-CV-02326-PAB-NRN, 2021 WL 4428286, at *1 (D. Colo. Sept. 27, 2021) (quoting *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014)). Although some opinions may not require reference to a precise scientific method,

> [t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, *and the expert must explain how the conclusion is so grounded.*

FRE 702, Advisory Committee's Notes (emphasis added). Dr. Jens does not even attempt to meet these requirements.

Additionally, even a scientifically reliable opinion must be legally relevant, meaning it must assist the trier of fact. "Relevant expert testimony must 'logically advance[ ] a material aspect of the case' and be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alteration in original) (citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)). Here, Dr. Jens' report is riddled with comments about Ms. Shuster's credibility, all of which are irrelevant and should be excluded.

6

## DR. JENS' OPINIONS LACK RELIABILITY AND INCLUDE PROHIBITED COMMENT

Each of Dr. Jens' opinions is objectionable for the reasons set forth below.

***Jens Opinion 1***   *A PTSD diagnosis does not reliably identify the trauma that caused the symptomology especially in the case of multiple traumas where the perpetrator or traumatic event can be misidentified.*

An opinion that a diagnosis of anything by itself does not identify its cause is relatively generic, but Dr Jens still fails to provide any source for her statement. Dr. Jens also does not provide any explanation for the process she used to arrive at her conclusion in this case or even whether she is purportedly basing this opinion on her prior professional experience. Even if she later seeks to attribute her opinion to her prior experience, she has not provided an explanation as to "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts of the case." *See Gould*, 2021 WL 4428286, at *1. Put simply, Dr. Jens' report does not make any effort to establish the reliability of the opinion as applied to this case or how this generic statement benefits the jury. Therefore it must be excluded.

***Jens Opinion 2***   *The assessment that Ms. Shuster presented in a fashion consistent with PTSD could be invalid if Ms. Shuster is malingering or false reporting.*

This opinion fails to meet the necessary legal standards for both reliability and relevance. First, once again, there is no discussion of the basis for her opinion, her reasoning, or her methodology. And should Dr. Jens intend to rely upon her prior experience, she has neither indicated that nor provided any explanation to satisfy any of the *Gould* requirements for opinions based upon an expert's experience. There is,

7

therefore, no way to test and establish the reliability of Dr. Jens' asserted opinion, and it must be excluded.

Moreover, Dr. Jens does not even appear to be offering an expert opinion to a reasonable degree of psychological certainty but is instead actually seeking to testify on Ms. Shuster's credibility. Dr. Jens does not opine that this is in fact a case of malingering or false reporting, nor could she:  She has not met Ms. Shuster, has not conducted any testing, and has not even reviewed the testing data collected by Dr. Peters.  Instead, Dr. Jens suggests only that *if this were a case of malingering*, that would be inconsistent with a PTSD diagnosis.  This speculative "opinion" is not only highly prejudicial, but with this "opinion," Dr. Jens seems to be seeking an end run around the legal bar on any attempt to opine both on Ms. Shuster's credibility and on whether Ms. Shuster's report that Mr. Levy repeatedly sexually assaulted her is true or false.

What Dr. Jens seeks to do is not permitted as a matter of law, as it is well established that "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony" in large part because it "usurps a critical function of the jury," is generally unhelpful to the factfinder, or is highly prejudicial and unduly influences the jury. *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993). The Tenth Circuit has long held that an expert's testimony on the credibility of an individual violates FRE 702 because "the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) (internal quotations and citation omitted); *see also Carter v. Monger*, No. 19-CV-03555-GPG, 2022 WL 1115225, at *6

8

(D. Colo. Apr. 13, 2022). In sum, any suggestion by Dr. Jens that Ms. Shuster *could be* falsely reporting an assault by Mr. Levy is not legally relevant to any issue that would be appropriate or helpful to the jury, usurps the role of the jury, and is legally impermissible.

**Jens Opinion 3**   *"In the case of Ms. Shuster, there are a number of patterns that are inconsistent with what one typically sees with persons validly diagnosed with PTSD. While individuals diagnosed with PTSD show variability, the number of discrepancies in this case are of concern."*

In support of her opinion, Dr Jens lists eleven asserted "discrepancies" that again seem more designed to question the credibility of Ms. Shuster than to rebut the PTSD diagnosis supported by Ms. Shuster's treating providers, interviews with Dr. Peters, and psychological testing results. As with her other opinions, Dr. Jens again gives no explanation or reasoning as to how these "discrepancies" are inconsistent with a PTSD diagnosis or how she arrived at her conclusion. The alleged "discrepancies" identified by Dr. Jens – nearly all of which are strongly disputed, taken out of context or entirely baseless – include the following:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

d. Ms. Shuster engaged in heavy drinking and had bad grades which predated her relationship with Mr. Levy.

e. Ms. Shuster was unable to give detailed descriptions of being abused by Mr. Levy.[1]

---

[1] Dr. Jens cites to two publications after she identifies this "discrepancy," but her citations are simply to the "Statement Validity Assessment" with no further explanation.

9

    f.  It is unusual for a victim to have no contact with her offender and then call his fraternity and disclose the abuse.

    g.  Ms. Shuster repeatedly "lied and exaggerated" in her deposition.

    h.  Ms. Shuster had "powerful motives for fabrication".

    i.  Ms. Shuster's therapist could have suggested the idea of rape to her.

    j.  Individuals with PTSD respond well to therapy.[2] Ms. Shuster did not respond well to therapy so she may not have PTSD.

    k.  Dr. Peters noted some testing scores that indicated a more severe psychopathology and thus might be considered inconsistent with a PTSD diagnosis, but failed to explain those inconsistencies.

Turning to Dr. Jens' last "more severe psychopathology" suggestion, Dr. Jens' testimony promises to confuse the jury more than it will assist it. More specifically, Dr. Jens opines that "Dr. Peters noted some testing scores that indicated a more severe pathology." But Dr. Jens does not indicate what testing scores she is referencing, the nature of the more severe psychopathology she is referencing, and, most importantly, on what scientific or psychological basis she relies for the proposition that the unnamed testing scores are "inconsistent with a PTSD diagnosis." In the absence of any basis or identified methodology to assess Dr. Jen's assertion, this opinion is not admissible.

---

This citation is not included in Dr. Jens' reference list. Instead, the only two publications that Dr. Jens cites relate to tools in conducting and assessing the validity of Child Forensic Interviews, which has no application in this case. Ms. Shuster was an adult at the time of all disclosures at issue and there was no Child Forensic Interview conducted in this case.

[2] In support of this assertion, Dr. Jens lists two sources, which, while not exactly clear, appear to be listed only as support only for her specific contention that certain treatment modalities are helpful to trauma survivors and not for the remainder of her conclusions or the broader statement that individuals with PTSD respond well to therapy.

10

More generally, Dr. Jens' list of "discrepancies" is little more than an unsubstantiated series of comments on the case and on Dr. Peters' report that plainly lack any methodology, reasoning, or explanation for the Court to assess and weigh their reliability. She has not identified any scientific process in arriving at her apparent opinions. Indeed, of the eleven alleged "discrepancies," Dr. Jen provides a source for only one of them, paragraph (e) above, to suggest its relevance. And even then, the source that Dr. Jens offers speaks to weighing the credibility of statements made in child forensic interviews, which is neither factually relevant in this case nor legally relevant as it comments on a witness's credibility.

By contrast, when assessing the reliability of mental health expert opinions, courts have looked to and approved the use of psychological testing tools as well as the application of the DSM-V (and its earlier editions) to support psychological opinions, precisely the methods used by Dr. Peters.[3] Though not the only methodology for reliable expert mental health opinions, "[t]he use of the DSM criteria to diagnose PTSD is widely accepted both within the field of psychology and by courts engaging in the *Daubert* gatekeeping role." *Ngatuvai v. Lifetime Fitness*, No. 2:16-CV-39-JNP-DBP, 2020 WL 5441442, at *6 (D. Utah Sept. 10, 2020); *see also Braxton v. DKMZ Trucking, Inc.*, 2015 WL 630297, at *3 (E.D. Mo. Feb. 13, 2015) ("These two factors, the use of established diagnostic criteria [such as the DSM criteria] in a manner not specific to the

---

[3] It is not irrelevant that Dr. Jens' unsupported opinions are a stark departure from Dr. Peters' conclusions, which were the product of, among other information and data, a lengthy battery of psychological testing and gave results based upon those tests *and* criteria found in the DSM-V. Rebutting and contradicting such heavily tested and reasoned opinions with absolutely no scientific basis highlights the need for judicial scrutiny.

11

litigation context, are sufficient to establish the reliability of [the expert's] testimony."); *Jones v. Halliburton Co.*, 2011 WL 1841148, *3 (S.D. Tex. May 13, 2011) ("Courts have refused to exclude the expert opinion of mental health professionals whose diagnoses of PTSD and other mental disorders are based upon the criteria outlined in the DSM–IV (and prior editions).").

Here, Dr. Jens' opinions are not supported by testing methods, the DSM-V, nor any other established source. In essence, Dr. Jens has simply identified many of the disputed allegations in this case and characterized her view of them (based upon her assessment of Ms. Shuster's credibility) as supporting her opinion that Ms. Shuster may not have PTSD after all. That is not legally permitted under FRE 702.

**Jens Opinion 4.** *Another hypothesis explaining Ms. Shuster's symptoms could be that she suffers from a "different, undiagnosed mental health disorder." By example, Dr. Jens offers:*
  a. *Borderline Personality disorder,*
  a. *Histrionic Personality Disorder,*
  b. *Dependent Personality Disorder and/or*
  c. *Alcohol Use Disorder.*

Dr. Jen's fourth opinion is again wholly unsupported by any discussion of the basis for her opinion, her methodology, or her reasoning. Dr. Jens raises the specter that Ms. Shuster suffers from one of four stigmatizing personality disorders but fails to provide any explanation, much less one that is subject to a reasonable degree of psychological certainty, about how these disorders may relate to the facts of this case or any of the testing results identified and discussed by Dr. Peters. This potentially highly prejudicial opinion is particularly troubling as Dr. Jens apparently seeks to tell a jury that Ms. Shuster may suffer from a severe personality disorder in the absence of any identified basis or rationale to reach any kind of reasoned diagnosis. It could be that Dr.

12

Jens believes that one or more of these four potential disorders or perhaps the unnamed "more severe psychopathology" that she references in her report, is relevant to this case in some fashion.  But Dr. Jens does not develop any sort of analysis or identify any reliable methodology or rationale for doing so.  When unsupported "expert" opinions cannot be assessed for reliability but have the potential to improperly prejudice the jury, they must be excluded from the jury's view.

### *Dr. Jens' Alternative Hypothesis*

Finally, Dr. Jens also offers an alternative fact pattern to explain this entire case. She suggests that "[o]ne hypothesis is that two young adults in the duress of leaving home and adjusting to college during a pandemic, form a relationship, an unhealthy and volatile but not assaultive one, and that both are upset and traumatized by its ending." Exhibit 1 at p 4.  Dr Jens does not offer any explanation or reasoning for this non-psychological theory of the case– and apparently has not even considered or reviewed any medical records for Mr. Levy, much less conducted a forensic (or any) psychological examination of either party.  Federal law does not permit an expert to tender such an unreliable and unsubstantiated opinion under FRE 702.

## **CONCLUSION**

For the foregoing reasons, Ms. Shuster respectfully requests that this Court issue an Order striking Dr. Jens' report and barring testimony regarding her purported opinions as inadmissible under FRE 702.

13

Dated: May 20, 2024

        Respectfully submitted,

        *s/ Kimberly M. Hult*
Kimberly M. Hult
Daniel D. Williams
Matthew A. Simonsen
**Hutchinson Black and Cook, LLC**
921 Walnut Street, Suite 200
Boulder, CO 80302
Telephone: (303) 442-6514
Facsimile: (303) 442-6493
Kimberly.Hult@hbcboulder.com
Dan.Williams@hbcboulder.com
Matt.Simonsen@hbcboulder.com