**KATHRYN S. JENS, Ph.D.**
6065 S. Quebec St., Suite 202
Greenwood Village, CO 80111
303-773-8991
jenskathryn@gmail.com

*Jacob Levy v. Holly Shuster*, Case No. 1:23-cv-01146-NYW-KAS

<u>**Summary of Expert Witness Opinions by Kathryn S. Jens, Ph.D**</u>
<u>**Dated April 17, 2024**</u>

Kathryn Jens, Ph.D. is a clinical psychologist whose psychotherapy practice specializes in posttraumatic stress disorders, including treating victims of sexual assault and domestic violence.

Dr. Jens will testify that a person can meet the criteria for a diagnosis of Post-Traumatic Stress Disorder (PTSD) which may be helpful to treatment planning. Even if valid, however, a diagnosis of PTSD does not establish the exact cause of the trauma. Sometimes the perpetrator or the traumatic event is misidentified, particularly in cases of multiple traumas. Sometimes underlying personality pathology can lead a person to exaggerate their victimization to gain support and attention from others and to gain the benefit of being excused from life demands. Sometimes the diagnosis of PTSD is not valid due to malingering or false reports.

In the case of Ms. Shuster, there are a number of patterns that are inconsistent with what one typically sees with persons validly diagnosed with PTSD. While individuals diagnosed with PTSD show variability, the number of discrepancies in this case are of concern. Thay are as follows:



1

**EXHIBIT 1**

b. Ms. Shuster was already showing poor adjustment before her relationship with Mr. Levy began. She had incidents of heavy drinking, and her poor grades began in her first semester at Tulane even though she did not begin dating Mr. Levy until late October 2020. She was in New York, and Mr. Levy in California, from Thanksgiving 2020 through January 2021.

c. Ms. Shuster is unable to give detailed descriptions of being sexually abused by Mr. Levy, including to her therapists ( "[S]he has little memory of the events that happened after she reported." Lowe 0009—Highly Confidential—Attorneys' Eyes Only).  When asked in deposition about the first and most significant abusive incidents (Depo. Tr. 221-22), she responded that she didn't know or remember and she was unable to provide any details about the alleged events. Being able to report details, especially extraneous details, is one of the factors that should be considered in assessing validity of victims' statements about alleged abuse (Statement Validity Analysis) (O'Donohue & Fanetti, 2016; Stellar, Raskin *et al.*, 1989).

d. It is unusual for a victim who has had no contact with an alleged perpetrator for eight months and has a mutual no contact order to call a university fraternity to allege said male student sexually assaulted her when there had been no police report.

e. Ms. Shuster acknowledged under oath, a number of incidents in which she lied, omitted or exaggerated events such as:

- Depo. Tr. 154-55—Highly Confidential—Attorneys' Eyes Only (represented to Tulane when seeking academic accommodation that her difficulties stemmed from her roommate ███████ but now alleges that was false and actually caused by Mr. Levy).

- Depo. Tr. 310-11—Confidential (texted friends she had "been diagnosed [by a therapist] with severe PTSD and she wants me to start intensive treatment which I was going to do here but my parents want me to do at home," prior to ever having a therapist).

- Depo. Tr. 90-93—Confidential (moved to New Orleans after academic dismissal and unable to remember when she shared with her family and friends that she had been dismissed when disclosure was much later in time).

- Depo. Tr. 358-59—Highly Confidential—Attorneys' Eyes Only (acknowledged making up excuses not to meet with case manager at Tulane); Tr. 360—Highly Confidential—Attorneys' Eyes Only ("roofied" may be one such excuse); Tr. 372 (a dog "funeral" and "dumping dog's ashes"); Tr. 373—Highly Confidential—Attorneys' Eyes Only (attending AA meetings).

- Depo. Tr. 301-08—Confidential ("possible" she had fabricated several meetings with the police to Jonathan Browne).

2

- HS_00011 (represents in the protection order application that she had to lock herself in bathroom on November 10 when her text messages with her friends reveal she was not present in the dorm at the time).

It does not appear that Dr. Peters or any of Ms. Shuster's treating providers have reviewed Ms. Shuster's testimony or much of the evidence that would reveal her exaggerations and misrepresentations.

f. The development of Ms. Shuster's allegations of stalking and sexual assault as the trigger for her PTSD symptoms include certain powerful motives for fabrication. The majority of Ms. Shuster's reporting regarding Mr. Levy's behavior occurred contemporaneously with Ms. Shuster's requests for academic accommodations or preferential treatment in her re-enrollment at Tulane University. Ms. Shuster also appears to have used her negative contact with Mr. Levy to gain sympathy from her family, friends and her boyfriend. For example, Ms. Shuster also acknowledges fabricating her contact with the police regarding Mr. Levy to Jonathan Browne, her then boyfriend.

g. Her therapists and others, including Tulane University officials and Ms. Shuster's family and friends, have accepted Ms. Shuster's description of being traumatized by Mr. Levy and reinforced her views. Ms. Gwenn Lowe, as part of her treatment reinforced Ms. Shuster's reports of sexual assault despite Ms. Shuster's lack of details and without factual or forensic verification. Ms. Lowe repeatedly advised Ms. Shuster that she was a victim of gaslighting and "intimate partner violence." (E.g., Lowe_00007, 000018, 000032, 000034— Highly Confidential—Attorneys' Eyes Only). "Gaslighting" is not a clinical diagnosis. While such reinforcing statements may be appropriate during treatment for rapport building purposes, it can compromise the reliability of the accuser's subsequent recollections especially in the event where the recall was weak or non-existent at the onset of reporting. When asked what evidence there was that Mr. Levy sexually assaulted her, Ms. Shuster pointed to her "therapy records" as corroboration that the sexual assaults in fact occurred. (Depo. Tr. 346-47).

h. Individuals with PTSD respond well to therapy, including methods of Eye Movement Desensitization and Reprocessing (EMDR), Cognitive Processing Therapy (CPT), Cognitive Therapy (CT-PTSD) and Prolonged Exposure (PE). (Forbes, Brisson et al., 2020; Gold, 2017). When an individual is not making progress in therapy, other diagnoses should be considered. In this case, after more than two years without any contact with Mr. Levy and numerous therapy sessions, Ms. Shuster is still not able to successfully attend school or hold a job. According to her treatment records, the EMDR sessions with Ms. Lowe focused on Ms. Shuster's alleged sexual assaults by Mr. Levy have resulted in "incomplete target[s]." This indicates Ms. Shuster is not able to access traumatic experience to reprocess it.

      i. Dr. Peters noted some testing scores that indicated more severe psychopathology and thus might be considered inconsistent with a PTSD diagnosis, but failed to explain those inconsistencies.

One or two of these discrepancies might be consistent with a PTSD diagnosis with a clear perpetrator. Here there are so many discrepancies.

In reviewing the evidence in this case, several alternate hypotheses should be considered. One hypothesis is that two young adults in the duress of leaving home and adjusting to college during a pandemic, form a relationship, an unhealthy and volatile but not assaultive one, and that both are upset and traumatized by its ending. Another hypothesis is that the etiology of Ms. Shuster's symptoms may be a different, undiagnosed mental health disorder. By way of example, evidence presented in the case suggests that Ms. Shuster may meet certain criteria for Borderline Personality Disorder, Histrionic Personality Disorder, Dependent Personality Disorder, and or Alcohol Use Disorder.

**Dr. Jens has reviewed the following materials in this case:**

- Protective Order dated 9/11/2023;

- First amended complaint dated 8/14/2023;

- Holly Shuster's Expert Disclosures (Redacted);

- Forensic evaluation report on Ms. Shuster by Donna Peters, Psy.D. dated 3/13/2024 and supporting documents;

- Treatment records for Ms. Shuster by:
    - Allison Taylor, Psy.D. (1/8/2018 to 8/1/2020);
    - Gwen Lowe, LCSW (9/28/22 to 6/28/2023);
    - Lori Evans, Ph.D. (1/16/2023 to 11/13/2023); and
    - Sarah Benito Figuero, MD (6/22/2023 to 9/20/23 ).

- Transcript of Deposition of Holly Shuster dated March 11, 2024
    - Deposition Exhibits of Holly Shuster:
        - Exhibit 24 (Tulane Transcript) (Confidential)
        - Exhibit 25 (Notice of Dismissal) (Confidential)
        - Exhibit 27 (Devin Ankeney Texts) (Highly Confidential—Attorneys' Eyes Only )
        - Exhibit 28 (1/28/21 Campus Reporting Form) (Highly Confidential—Attorneys' Eyes Only)
        - Exhibit 29 (5/4/21 Campus Reporting Form) (Highly Confidential—Attorneys' Eyes Only)
        - Exhibit 31 (Jacob Snap Chat History Download) (Confidential)
        - Exhibit 32 (Jacob scratch photo) (Highly Confidential—Attorneys' Eyes Only)

- - Exhibit 33 (3/26/21 Campus Reporting Form) (Confidential)
  - Exhibit 34 (4/3/21 Campus Reporting Form) (Confidential)
  - Exhibit 35 (4/8/21 Campus Reporting Form) (Confidential)
  - Exhibit 36 (10/21/21 Campus Reporting Form) (Highly Confidential—Attorneys' Eyes Only)
  - Exhibit 37 (11/10/21 Campus Reporting Form) (Confidential)
  - Exhibit 38 (11/21 Holly Shuster icloud note)
  - Exhibit 39 (12/17/21 Holly Police Transcript)
  - Exhibit 40 (1/6/21 Holly deleted Apple Notes) (Confidential)
  - Exhibit 42 (Jonathan Browne Texts) (Confidential)
  - Exhibit 43 (Holly texts with friends Clare Arnold and Liberty Morris) (Confidential)
  - Exhibit 44 (Holly statements to Tulane regarding texts) (Confidential)
  - Exhibit 45 (Clare Arnold's Texts with Holly and Liberty)
  - Exhibit 46 (Holly's texts with Deanna Robertson (Highly Confidential—Attorneys' Eyes Only)
  - Exhibit 47 (Holly's journal) (Highly Confidential—Attorneys' Eyes Only);

- HS_00004 – 12 (Petition for Protection from Abuse).

**REFERENCES**

Forbes, David, Bisson, Jonathon I., Monson, Candace M., & Berliner, Lucy. (2020). Effective treatments for P.T.S.D.: Practice guidelines from the International Society for Traumatic Stress Studies. NY, NY: Guilford.

Gold, Steven N. (Editor-in-Chief) (2017).  A.P.A. Handbook of Trauma Psychology, Volumes 1 and 2. Washington, D.C.: American Psychological Association.

O'Donohue, William T. & Fanetti, Matthew (Editors). (2016). Forensic interviews regarding child sexual abuse: A guide to evidence-based practice. Springer.

Steller, M., Raskin, David C., Esplin, Phillip W., and Boychuk, T.D. (1989). Child sexual abuse: Forensic interviews and assessment techniques. NY, NY: Springer.